# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

LARONDA MYERS, individually and as co-trustee and beneficiary

of the Ralph C. Struthers Revocable Trust dated October 22, 2017,

and as a beneficiary of the Struthers Family Trust dated June 4, 1993,

    Plaintiff,

12060 mont Vista DR
Auburn, CA 95603
530-320-1727

v.

2:25-CV-1926 TLN CSK

**FILED**

JUL 10 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

KEVIN LACHONA, ESQ.; LACHONA LAW; BELINDA CONNOR;

JULIE HATRIDGE; CAROL CAMPBELL.

J. JOHNSON; JOHNSON LAW FIRM; HANNAH JOHNSON;

KOSTA DAMARIS; SCOTT SHUTTLEWORTH.

COMMISSIONER JACQUES; COMMISSIONER HOLLEY.

MEDIATOR DOE 1; MEDIATION FIRM DOE 2;

ATTORNEY STEVEN DERRYBERRY.

THE ADMINISTRATION OF PLACER COUNTY COURTS;

AND DOES 3–50, inclusive,

    Defendants.

Case No.: _____

**COMPLAINT FOR:**

1. VIOLATIONS OF CIVIL RIGHTS (42 U.S.C. § 1983)

2. ELDER FINANCIAL ABUSE

3. CONSPIRACY TO COMMIT FRAUD

4. SYSTEMIC DUE PROCESS VIOLATIONS

5. LEGAL MALPRACTICE

6. DECLARATORY AND INJUNCTIVE RELIEF

7. DAMAGES UNDER THE 14TH AMENDMENT

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure,

Plaintiff hereby demands a trial by jury on all issues so triable.

**NTRODUCTION**

This is a civil action for constitutional violations, elder financial abuse, legal malpractice, and fiduciary misconduct. Plaintiff LaRonda Myers, acting in her capacity as co-trustee and beneficiary of the Ralph C. Struthers Trust (October 22, 2017) and beneficiary of the Struthers Family Trust (June 4, 1993), brings this action after exhausting every possible remedy within the state probate court system. Despite filing proper trust accountings, objecting to improper billing, requesting evidentiary hearings, and complying with court procedures, Plaintiff has been persistently denied access to fair hearings, faced judicial hostility, and been retaliated against for asserting her fiduciary duties and constitutional rights.

The underlying facts involve the fraudulent restructuring of a trust, undue influence over two elderly and medically vulnerable individuals (Ralph and Darlene Struthers), and ongoing misuse of trust and estate funds to benefit attorneys, imposter trustees, and court-aligned professionals. Plaintiff's attempts to protect the intent of the settlors, fulfill her fiduciary duties, and safeguard the rights of other rightful beneficiaries have been obstructed through improper court orders, silencing of objections, denial of continuances, and retaliation for seeking relief in federal court.

Named Defendants include attorneys Kevin Lachona, J. Johnson, Kosta Damaris (a.k.a. Konstantina Damaris), and Scott Shuttleworth; court-appointed mediators; two sitting Placer County commissioners; and individuals who falsely held themselves out as trustees of the 1993 trust. Plaintiff also names Julie Hatridge, Belinda Connor, and Carol Campbell for orchestrating a coordinated scheme of elder financial abuse and trust manipulation. Together, these Defendants caused substantial financial loss to two elder estates, irreparable harm to Plaintiff's civil rights, and trauma to surviving beneficiaries.

**TABLE OF CONTENTS**

I. Jurisdiction and Venue .......................................................... 1

II. Parties ........................................................................ 1

III. Factual Background ............................................................ 1

IV. One: Violation of Civil Rights Under 42 U.S.C. §1983 .............. 18

Count Two: Violation of Due Process (14th Amendment) .............. 21

Count Three: Elder Financial Abuse (Welf. & Inst. Code §15657.5) ... 24

Count Four: Civil Conspiracy to Commit Fraud ............................ 28

Count Five: Mediation Coercion and Unauthorized Agreement ........ 31

Count Six: Systemic Due Process Violations by Court ................... 34

Count Seven: Legal Malpractice and Breach of Duties .................. 37

V. Prayer for Relief ................................................................ 41

VI. Legal Framework and Authorities ......................................... 45

VII. California State Authorities ................................................. 47

VIII. Tolling and Delayed Discovery ........................................... 49

IX. Federal Claim Exhibit – Trust Distribution Explanation ............. 52

X. Damages to Darlene Struthers ............................................. 54

XI. Damages to Plaintiff LaRonda Myers ..................................... 55

XII. Final Trust Allocation ....................................................... 56

XIII. Declaration Under Penalty of Perjury ................................... 57

XIV. Declaration of LaRonda Myers ........................................... 57

XV. Exhibit Index .................................................................. 57

XVI. Defendant Contact Information .......................................... 58

## TABLE OF AUTHORITIES

42 U.S.C. §1983 ....................................................................... 18

U.S. Constitution, 14th Amendment ........................................... 18

Goldberg v. Kelly, 397 U.S. 254 (1970) ......................................... 45

Monell v. Dept. of Social Services, 436 U.S. 658 (1978) ................... 45

Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988) ..................... 45

Alexander v. City & County of San Francisco, 29 F.3d 1355 (9th Cir. 1994) ....... 45

Johnson v. U.S. Dept. of Treasury, 939 F.2d 820 (9th Cir. 1991) .......... 45

Welfare & Institutions Code §15657.5 (Cal.) .................................... 24

Probate Code §§16060–16063 (Cal.) ........................................... 2

Probate Code §16062 (Cal.) ....................................................... 24

Probate Code §17200 (Cal.) ....................................................... 21

Probate Rule 7.801(c) (Cal.) ....................................................... 24

Civil Code §3439 et seq. (Cal.) .................................................... 47

Kieturakis v. Kieturakis, 138 Cal.App.4th 56 (2006) .......................... 47

Estate of Giraldin, 55 Cal.4th 1058 (2012) ...................................... 47

Mahan v. Chan, 14 Cal.App.5th 841 (2017) ..................................... 47

Free v. Bland, 369 U.S. 663 (1962) ................................................ 47

Ach v. Finkelstein, 264 Cal.App.2d 667 (1968) ................................. 47

Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503 (1994) .... 47

**EXHIBIT AN – ADVANCES OUT-OF-POCKET BY PLAINTIFF**

**Plaintiff:** LaRonda Myers
**Case:** [Insert Case Title or Number Here]
**Court:** United States District Court, Eastern District of California

**Title:** ADVANCES OUT-OF-POCKET BY PLAINTIFF

Plaintiff LaRonda Myers respectfully submits this exhibit tab reflecting personal funds advanced for the protection, administration, and legal defense of the Ralph C. Struthers Trust and related proceedings.

Due to time constraints and ongoing discovery delays, Plaintiff has not yet had the opportunity to finalize the total amount of out-of-pocket advances.

**Plaintiff intends to provide the full accounting and evidence of all advances at trial** or as otherwise directed by the Court.

These amounts include, but are not limited to:

- Filing fees

- Attorney retainers

- Mediation costs

- Transcript orders

- Document preparation

- Postage, service of process, and court runner expenses

- Travel and parking related to court appearances

**Declaration of accuracy and completion will be submitted at time of evidentiary hearing or trial.**

Respectfully submitted,

**LaRonda Myers, Plaintiff**
Date: 7/10/2025

## I. JURISDICTION AND VENUE

**1.** Jurisdiction is proper **under 28 U.S.C. §1331** because this action arises under federal law, specifically **42 U.S.C. §1983** and the 14th Amendment.

**2.** Venue is proper in the Eastern District of California under **28 U.S.C. §1391(b)** because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the trust litigation, court rulings, financial conduct, and related harm suffered by Plaintiff. The parties reside or conduct business in this district, and no other venue would be more appropriate for adjudication of these claims.

## II. PARTIES

**3.** Plaintiff LaRonda Myers is a resident of Placer County, California, a co-trustee and beneficiary of the Ralph C. Struthers Trust of 2017, and a beneficiary of the Struthers Family Trust of 1993.

**4.** Defendants include attorneys, trustees, court officials, and mediation professionals involved in a long-standing trust and probate dispute, all acting under color of state law or in conspiracy to deprive Plaintiff of her rights.

## III. FACTUAL BACKGROUND

**5.** Plaintiff LaRonda Myers is the co-trustee and a beneficiary of the Ralph C. Struthers Trust of October 22, 2017, and a beneficiary of the Struthers Family Trust dated June 4, 1993. She has spent years trying to secure lawful accountings, fiduciary compliance, and protection for her father's estate and her stepmother's trust share.

**6. Despite her fiduciary role, Plaintiff was repeatedly denied access to financial records, original accountings, and basic discovery that is legally required under California**

1

**Probate Code §§16060–16063. These statutes impose a mandatory duty on trustees to keep beneficiaries reasonably informed and to respond to lawful requests for accountings and trust documents.**

7. On July 7, 2017, attorney J. Johnson signed a fraudulent notarized declaration of Ralph Struthers' incapacity while Ralph was hospitalized at Auburn Faith Hospital recovering from MRSA. Ralph was six hours away at the time, and the two doctors who "confirmed" incapacity did so on July 10 and 11—after J. Johnson's notarization and without evaluating Ralph in person.

8. This premature and false incapacitation letter allowed Belinda Connor and Julie Hatridge to unlawfully assume control of the 1993 Trust, presenting themselves as trustees without valid succession.

9. Belinda and Julie subsequently removed Ralph and Plaintiff from financial accounts, rerouted Social Security benefits, and withheld funds intended for Ralph's care.

10. Ralph was twice denied rehabilitation—once in Santa Maria and once at Auburn Faith Hospital—despite doctors recommending aggressive therapy. He was also denied access to his primary doctor for over a month following discharge.

11. Darlene Struthers began showing signs of dementia in late 2016 through early 2017. Nevertheless, she was used to sign legal documents and authorize a lawsuit against Plaintiff, despite being mentally unfit.

12. On September 9, 2017, Ralph avoided signing legal papers presented by Belinda and Darlene by faking a diabetic episode. He later asked Plaintiff to take him to his original trust attorney, Don Gravelec, who had written both the 1993 and 2017 Trusts. Ralph obtained a

2

medical capacity letter and executed the 2017 Trust to restore his intentions and appoint Plaintiff as trustee.

13. In late 2017, attorney Stephen Derryberry filed a fraudulent elder abuse lawsuit in Los Angeles against Plaintiff, falsely naming Ralph and Darlene as plaintiffs after they had resigned their roles. Ralph was outraged and told Plaintiff he never consented to the filing.

14. Commissioner Holley failed to expedite Ralph's divorce proceedings, resulting in Ralph's death before the marital estate could be divided and protected as intended. This failure violated standards requiring priority for elder litigants.

15. In 2024, Plaintiff participated in a 14.5-hour mediation session and was coerced into signing a settlement agreement under severe fatigue. The mediator, a licensed attorney, pressured Plaintiff to agree that trust funds be used to pay opposing counsel's legal fees — a legally improper and unethical proposal.

16. Plaintiff's signature on the agreement was later submitted to the court without her final approval and was ultimately determined to be forged.

17. Plaintiff retained attorney Kosta Demiris for limited trust representation. Within nine months, he submitted invoices totaling over $54,000. After Plaintiff deposited $11,000 of her own funds into the trust, Demiris issued a $10,770 bill, nearly draining the deposit in one billing cycle.

18. Demiris shared confidential trust information with an outside attorney, Scott Jordan, without disclosure or consent. Jordan was not part of Demiris's law firm, but was represented as if he were, violating attorney-client privilege and creating undisclosed conflicts.

3

**19.** Plaintiff attempted to recover overbilled legal fees by initiating Bar Association arbitration against former trust attorneys Kosta Demiris and Scott Shuttleworth. Despite paying the full filing fee and submitting all paperwork, Plaintiff's co-trustee April Sharp refused to sign the arbitration agreement—effectively blocking the process.

To preserve the claim and protect the trust from further loss, Plaintiff filed an ex parte request with the probate court asking for either an order compelling arbitration or for the statute of limitations to be equitably tolled. Instead of acting to protect beneficiaries, Commissioner Jacques denied the request, citing lack of authority. At the same time, he allowed opposing counsel Kevin Lachona to object—despite Lachona's clients having no financial interest in the arbitration.

This enabled opposing counsel to use internal trustee disagreements against Plaintiff, obstructing her efforts to recover trust funds. Plaintiff contends this action violated her constitutional right to petition the court for trust protection and constituted a breach of the court's fiduciary oversight obligations.

**20.** Plaintiff had also retained attorney Scott Shuttleworth to handle litigation and settlement matters. After the sale of Ralph's duplex, Plaintiff verified that $142,245.71 was owed to Ralph's trust share. Shuttleworth returned only $97,970.40, withholding $39,275.31 without valid explanation. He then withdrew from the case. A licensed accountant later confirmed the amount was owed. Plaintiff reported him to the State Bar.

**21.** Following a court ruling awarding Plaintiff control over Ralph's remains, Belinda sold Ralph's car without authorization and listed his home for sale without informing either trustee. Plaintiff's attorney had to intervene to stop the unauthorized transaction.

4

**22.** In open court, Kevin Lachona and his clients stated Ralph could be embalmed. However, after Plaintiff's attorney returned to the office, Lachona rescinded the offer. Ralph was then cremated against his written wishes to be buried — a deeply traumatic and potentially unlawful outcome.

**23.** In 2024, subpoenas issued to financial institutions revealed improper withdrawals and transfers from trust accounts inconsistent with fiduciary duties.

**24.** Commissioners Holley and Jacques repeatedly delayed or denied hearings, ignored legal deadlines, and failed to protect the interests of medically vulnerable and elderly parties, including Ralph and Darlene Struthers.

**25.** Plaintiff has filed six trust accountings and one estate accounting. Only one was approved. The court never provided a justification for rejecting the rest. Opposing counsel Kevin Lachona and his clients objected to every filing without legal basis, using blanket opposition tactics to delay resolution and prevent trust distributions.

**26.** These actions benefited conflicted attorneys and imposter trustees while punishing Plaintiff for fulfilling her fiduciary obligations and advocating for transparency.

**27.** Plaintiff used her own personal funds to protect trust assets while facing obstruction from opposing counsel, court delays, and a co-trustee who refused to act.

**28.** Plaintiff now turns to this Court seeking declaratory relief, restitution, and compensatory damages for the systemic legal abuse, elder exploitation, and constitutional violations she and the intended beneficiaries have endured.

**29.** To further demonstrate the extent of the manipulation and misrepresentation surrounding the Struthers Family Trust dated June 4, 1993, Plaintiff provides a side-by-side

5

comparison of the **original trustee succession structure**—as understood by family members, confirmed by the drafting attorney Don Gravelec, and consistent with Ralph and Darlene Struthers' intent—versus the **disputed version currently being enforced in court**. The altered version contradicts the settlors' wishes and includes individuals who were never contemplated or authorized in the original trust.

## ORIGINAL TRUSTEE SUCCESSION STRUCTURE

*As understood and confirmed by family consensus and drafting attorney Don Gravelec*

### RALPH STRUTHERS SIDE:

- Ralph C. Struthers (Primary Trustee)

- Darlene Struthers (Alternate if Ralph is incapacitated)

- Belinda Connor (if Darlene cannot act)

- April Sharp (if Belinda cannot act)

### DARLENE STRUTHERS SIDE:

- Darlene Struthers (Primary Trustee)

- Ralph C. Struthers (Alternate if Darlene is incapacitated)

- Francis Edward Lye (Darlene's brother — deceased in 2010)

- Edward George Lye (Francis's son — Secondary successor)

**Note:** Neither Julie Hatridge nor Tara Conner was ever named or discussed as trustees in the original version.

### Disputed Trustee Succession Structure

*As reflected in the altered 1993 Trust currently being enforced in court*

### PHONY SUCCESSION ORDER:

6

- Julie Hatridge (Co-Trustee)

- Belinda Connor (Co-Trustee)

- Edward George Lye

- Francis Edward Lye

- April Sharp

- Tara L. Conner (Belinda's daughter — never named in original trust)

**30.** Plaintiff contends that this manipulated succession list directly contradicts Ralph and Darlene Struthers' intentions, and its enforcement in court—despite family testimony and the original drafting attorney's statements—has caused significant harm, delay, and legal misrepresentation. This alteration has enabled unauthorized parties to control assets, reject accountings, and block lawful distributions.

**31.** In or around early 2024, Plaintiff filed a detailed pleading in Placer County Probate Court exposing misconduct by opposing parties, including exhibits consisting of text messages, trust instrument comparisons, and evidence of fraud in the trust administration. The pleading also referenced misconduct during mediation, including coercive tactics and false statements made to Plaintiff and her counsel. The filing was intended to protect the interests of beneficiaries of both the 2017 and 1993 Struthers Trusts.

**32.** Instead of evaluating the merits of the filing or addressing the attached evidence, Commissioner Jacques **ordered the pleading to be entirely removed from the court docket**, leaving no public trace of its submission. This removal occurred at the request of opposing counsel, including Attorney Kevin Lachona and another attorney unknown to Plaintiff. The

7

pleading was not simply sealed or denied — it was **struck from the docket in full**, preventing Plaintiff from citing or referencing it in future hearings.

33. This was not the first instance in which Plaintiff's filings were obstructed. On multiple occasions, documents submitted by Plaintiff were either not uploaded to the court docket at all, misfiled in ways that prevented judicial review, or labeled as "filed" but never made available to the public or opposing parties. This pattern has significantly impaired Plaintiff's ability to assert her legal rights, respond to objections, and document ongoing fraud and elder abuse.

34. These actions constitute a denial of Plaintiff's constitutional right to access the courts, a violation of due process under the 14th Amendment, and a form of procedural retaliation for fulfilling her fiduciary duties. By deliberately removing Plaintiff's filings from the docket—and threatening to remove her as trustee for objecting to unlawful activity—the court and opposing parties have effectively silenced the only person advocating for the rights of all intended beneficiaries.

35. Defendants, including the mediator and opposing counsel, later claimed that mediation confidentiality barred Plaintiff from disclosing what occurred. However, Plaintiff was acting in her role as co-trustee of the 2017 Trust and was obligated by California Probate Code §16060 to inform beneficiaries of any proposed distribution or legal action affecting their inheritance. The disputed mediation agreement would have removed over $84,000 from the trust without explanation or consent. Plaintiff could not remain silent without violating her fiduciary duties. Confidentiality does not override statutory obligations, especially where coercion, misrepresentation, and legal malpractice are involved.

8

### IV. ONE: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

**36.** Against Commissioner Jacques, Commissioner Holley, Mediator Doe 1, Attorney Kevin Lachona, and all individuals acting under color of state law or in concert with them).

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. This cause of action arises under 42 U.S.C. §1983, which provides a civil remedy against individuals acting under color of state law who deprive a person of rights secured by the Constitution and laws of the United States.

3. Defendants named in this count—including Commissioner Jacques, Commissioner Holley, Mediator Doe 1 (if court-appointed), and Attorney Kevin Lachona—acted under color of state law or in willful concert with state actors to deprive Plaintiff of clearly established constitutional rights, including the rights to due process, equal protection, and meaningful access to the courts, guaranteed by the Fourteenth Amendment.

4. Commissioner Jacques and other judicial officers consistently denied Plaintiff fair and impartial access to the court. This included obstructing her ability to present evidence, denying her a meaningful opportunity to be heard, and retaliating against her for asserting her constitutional rights—including the protected act of filing a federal civil rights complaint.

5. In one specific incident, Commissioner Jacques appeared to rely on undisclosed or off-the-record information—potentially originating from Mediator Doe 1—when suggesting that Plaintiff had been dishonest about her mediation experience. Plaintiff was never given an opportunity to confront the source of this information, thereby violating her right to judicial neutrality and procedural fairness.

9

6. During the same proceeding, Commissioner Jacques publicly reprimanded one of Plaintiff's prior attorneys for not wearing a tie, despite knowing that the attorney was recovering from a physical injury that prevented formal dress. This unnecessary public scolding undermined Plaintiff's confidence in counsel and created an atmosphere of intimidation. The reprimanded attorney was Steven Cross.

7. Separately, when Plaintiff was represented by Donald Gravalec, her ability to be heard in court was impaired due to Mr. Gravalec's hearing aid malfunction and courtroom technical issues. Despite these challenges, Commissioner Jacques refused to allow Plaintiff to speak on the record to clarify or respond, while allowing Attorney Kevin Lachona to proceed unimpeded. This conduct deprived Plaintiff of her right to fair representation and meaningful participation.

8. Commissioner Jacques also repeatedly threatened to remove Plaintiff as co-trustee for attempting to fulfill her lawful fiduciary responsibilities, including objecting to improper legal billing and seeking court oversight under California Probate Code §17200. These threats were made despite Plaintiff acting within her fiduciary duty and constitutional right to petition the court.

9. Plaintiff was directly criticized and sanctioned for filing a federal complaint—an act protected under the First and Fourteenth Amendments. This constitutes unlawful retaliation for engaging in constitutionally protected conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (retaliation for exercising constitutional rights violates §1983).

10. The Court restricted Plaintiff's ability to inform beneficiaries about mediation-related concerns, despite her duty as fiduciary under Probate Code §17200 to communicate material

10

trust issues. Her lawful communication was mischaracterized as misconduct, further isolating her from her fiduciary role.

11. On multiple occasions, the court reporter was halted during proceedings where inappropriate conduct or judicial hostility occurred—such as the tie-related outburst—thereby depriving Plaintiff of a full and accurate record and frustrating appellate review. This violates Plaintiff's due process right to a complete and fair transcript of court proceedings.

12. These actions—taken directly by judicial officers or in concert with court-appointed professionals and opposing counsel—constitute a systemic deprivation of Plaintiff's rights to due process, equal protection, and fiduciary autonomy under color of state law.

13. As a direct and proximate result of these constitutional violations, Plaintiff suffered significant harm, including emotional distress, reputational damage, financial hardship, and obstruction of her legal and fiduciary duties.

14. Plaintiff respectfully seeks compensatory and punitive damages against all named Defendants in their individual and official capacities pursuant to 42 U.S.C. §1983, as well as declaratory and injunctive relief to prevent ongoing and future violations.

15. The Court's willingness to entertain arguments that Plaintiff violated "mediation confidentiality" by informing beneficiaries of a trust distribution is itself a due process violation. Plaintiff was legally obligated to disclose material facts to trust beneficiaries, and was punished by judicial officers for doing so — a direct violation of her constitutional rights under the 14th Amendment.

16. Plaintiff acknowledges that judicial officers, including commissioners and judges, may be entitled to certain immunities under federal law. However, those immunities do not

11

excuse a pattern of ignoring fiduciary law, violating due process protections, and enabling fraud through repeated inaction and suppression of filings. All judicial officers take an oath to uphold the Constitution and protect the rights of litigants. When judges and commissioners abandon that duty or act outside of established law, they should not be shielded from oversight, correction, or retraining.

Plaintiff respectfully asks that this Court issue declaratory findings that state court officers violated clearly established constitutional rights and failed to uphold their judicial obligations. In the interest of justice and public trust, Plaintiff further requests that the relevant state authorities provide training and oversight to prevent such violations from continuing.

**COUNT TWO: VIOLATION OF DUE PROCESS (14TH AMENDMENT)**

37. Against Commissioner Jacques, Commissioner Holley, and other court officers responsible for ensuring fair proceedings

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. The Fourteenth Amendment to the United States Constitution guarantees that no state shall deprive any person of life, liberty, or property without due process of law.

3. Plaintiff, as a co-trustee and beneficiary of the Ralph C. Struthers Trust, and as a litigant in related probate proceedings, held both property and liberty interests protected under federal law.

4. Defendants deprived Plaintiff of her constitutional due process rights through a pattern of procedural misconduct, judicial hostility, and systemic obstruction that suppressed Plaintiff's ability to access the court, participate in hearings, and be meaningfully heard.

12

5. Specific violations include, but are not limited to:

- Denial of a properly scheduled evidentiary hearing.

- Repeated failure to rule on Plaintiff's trust accountings for over six years.

- Blocking Plaintiff's ability to speak when her attorney was unable to hear due to courtroom equipment failure;

- Refusal to investigate or address Plaintiff's objections to a mediation agreement signed under duress;

- Halting of the court reporter during judicial outbursts, preventing a complete appellate record;

- Threats to remove Plaintiff as trustee for raising valid fiduciary objections and requesting oversight of improper billing;

- Imposition of restrictions on Plaintiff's ability to communicate with beneficiaries about trust proceedings—despite her fiduciary obligations under Probate Code §17200.

6. Plaintiff was also subjected to biased and unequal treatment compared to opposing parties. Attorney Kevin Lachona was permitted to speak freely, make unsupported claims, and direct the courtroom narrative, while Plaintiff was routinely interrupted, dismissed, and denied an opportunity to rebut or clarify her position.

7. As a direct consequence of Plaintiff's ex parte request to initiate fiduciary arbitration and recover overbilled legal fees, the Court and opposing counsel weaponized her efforts by using them as grounds to question her suitability as trustee. Rather than recognize Plaintiff's lawful attempt to protect trust assets and fulfill her duties under Probate Code §§16060–16063,

13

the Court allowed Kevin Lachona to characterize the arbitration request as evidence of conflict and mismanagement. These misrepresentations were then cited as a basis to threaten or seek removal of Plaintiff as co-trustee. This retaliatory framing violates Plaintiff's right to due process, equal treatment under law, and fiduciary integrity, and reflects systemic bias against Plaintiff's efforts to lawfully manage the trust.

8. These actions constitute violations of both:

o       Procedural due process: the right to notice and a fair hearing; and

o       Substantive due process: the right to be free from arbitrary and conscience-shocking government conduct.

9. The court's retaliatory conduct—such as suggesting removal for exercising fiduciary rights, refusing to rule on long-pending matters, and criticizing Plaintiff for filing a federal claim—further reflects a systemic failure to uphold Plaintiff's constitutional rights.

10. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the loss of legal protections, financial harm, emotional distress, reputational damage, and interference with her ability to carry out fiduciary duties.

11. Plaintiff seeks declaratory and injunctive relief to prevent further due process violations, as well as compensatory damages against all Defendants responsible for the unconstitutional conduct described herein.

12. Additionally, on or about June 25, 2025, Defendant Kevin Lachona submitted an ex parte application to redeem three U.S. Savings Bonds held in the disputed 1993 Struthers Trust, without disclosing their full value or verifying trustee legitimacy. Despite Plaintiff's written objection and a pending evidentiary hearing regarding the proper trustee, Commissioner Jacques

14

approved the redemption order without a hearing, proper documentation, or fiduciary verification. The bonds were later confirmed to be worth $51,988.00, and the redemption caused significant depletion of Darlene Struthers' trust account while she remained cognitively impaired and isolated. This conduct constitutes a further denial of due process and violated federal regulations under 31 C.F.R. §§ 315.45–47, which prohibit the redemption of U.S. Savings Bonds without verified fiduciary authority.

13. In an effort to protect the trust and recover funds overbilled by prior attorneys, Plaintiff filed an administrative ex parte request to initiate arbitration with the California Bar. Her request included a plea to handle the matter confidentially between co-trustees to prevent opposition interference. Despite this, the Court either declined to issue a sealing order or court staff misinformed Plaintiff about the sealing process. Opposing counsel Kevin Lachona, who had no legal interest in the internal arbitration, was allowed to object to the request. Plaintiff believes this constituted a betrayal of her fiduciary efforts and legal rights. Rather than safeguarding trust administration, the Court enabled adversarial interference in a matter that should have been handled privately between co-trustees, in violation of Plaintiff's due process rights under the 14th Amendment.

14. Plaintiff further asserts that the court's repeated refusal to grant her a continuance—despite her documented efforts to retain counsel and the complexity of the trust litigation—constituted discriminatory treatment. While represented parties are routinely granted continuances with little notice, Plaintiff, appearing pro se, was repeatedly denied such basic accommodations and admonished for seeking them. This double standard violates Plaintiff's Fourteenth Amendment right to equal access to justice.

15

See Johnson v. U.S. Dept. of Treasury, 939 F.2d 820, 825 (9th Cir. 1991) (holding that pro se litigants must not be held to stricter procedural burdens or denied fair court access).

15. Plaintiff attempted to recover excessive legal fees through Bar Association arbitration against Costa Damaris and Scott Shuttleworth. Despite filing all required documents and paying fees, Plaintiff's co-trustee April Sharp refused to sign the agreement. When Plaintiff sought judicial relief to compel arbitration or toll the statute of limitations, Commissioner Jacques denied the request. He further allowed opposing counsel Kevin Lachona—who had no fiduciary stake—to object. This resulted in the trust losing the opportunity to recover misused funds. Such judicial refusal to protect fiduciary claims, combined with allowing unrelated parties to obstruct them, constitutes a denial of Plaintiff's due process rights under the 14th Amendment.

**COUNT THREE: ELDER FINANCIAL ABUSE UNDER CALIFORNIA WELFARE & INSTITUTIONS CODE §15657.5**

38. Against Belinda Connor, Julie Hatridge, Carole Campbell, Kosta Demiris, Scott Shuttleworth, Scott Jordan, and all individuals who knowingly exploited Ralph and Darlene Struthers

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. This cause of action arises under California Welfare & Institutions Code §15657.5, which provides civil remedies, treble damages, attorneys' fees, and enhanced penalties for the financial abuse of elders.

3. Ralph C. Struthers and Darlene Struthers were elderly individuals within the meaning of the statute, both medically vulnerable and legally protected at the time of the events described.

16

4. Defendants Belinda Connor and Julie Hatridge knowingly and repeatedly took, concealed, redirected, and misused trust funds, financial accounts, and legal authority belonging to Ralph and Darlene Struthers for personal gain. These actions were carried out under false pretenses, with intent to defraud, and under circumstances likely to cause harm.

5. Julie Hatridge signed multiple court filings and trust documents falsely asserting that she was a trustee of the June 4, 1993 Struthers Family Trust, despite no legal appointment. These sworn statements were submitted under penalty of perjury.

6. Belinda Connor, despite recognizing Darlene's cognitive decline as early as 2016, continued to involve her in significant legal and financial decisions. In 2017, Darlene was placed in a dementia care facility—confirming her incapacity—yet Defendants continued using her name on documents and transactions.

7. On July 7, 2017, Belinda and Julie orchestrated the execution of a fraudulent incapacitation letter for Ralph C. Struthers, notarized by attorney J. Johnson. This document was created before Ralph had received any medical evaluation. Medical records show that evaluations by Dr. Lai and Dr. Gruenefeldt occurred on July 10 and July 11, and those documents were not faxed to J. Johnson's office until July 12. At the time this letter was signed, Ralph was hospitalized six hours away at Auburn Faith Hospital, recovering from MRSA—an aggressive infection he contracted at a rest home where he had been placed against medical advice. His physicians had recommended immediate transfer to an aggressive rehabilitation facility, not a rest home. The premature notarization of the incapacitation letter, done before medical clearance and while Ralph was medically isolated, was a calculated act intended to strip him of control over his trust and finances.

17

8. After gaining control of Ralph's finances, Defendants removed his name from bank accounts, redirected his Social Security income, and denied him access to make trust-related decisions. Ralph personally visited the Social Security office in an effort to restore access—evidence of his awareness and objection.

9. Text messages and deposition evidence confirm that Defendants knew Darlene lacked legal capacity, but continued using her name to validate financial transactions and trust authority. Carole Campbell, in coordination with Belinda Connor, pressured Ralph and Darlene to attend a trust meeting and open their family safe under coercive circumstances. Julie Hatridge was not involved in this early phase of trust interference.

10. Ralph later stated that he never wanted to change his trust and felt coerced into doing so. He expressed fear of Bill Campbell and emotional distress following the meeting, which occurred shortly before his stroke.

11. Following Ralph's death, Belinda continued exerting unauthorized control. She sold Ralph's car without co-trustee approval and obstructed his burial, ultimately leading to his cremation—against his written wishes.

12. These acts were not isolated. They formed part of a coordinated scheme to remove Ralph and Darlene's control, misappropriate assets, and remove Plaintiff from inheritance rights and fiduciary authority.

13. As a direct result of Defendants' conduct, Ralph's estate suffered significant loss, Plaintiff suffered emotional trauma, and lawful trust administration was severely disrupted.

18

14. Pursuant to Welfare & Institutions Code §15657.5, Plaintiff seeks compensatory damages, treble damages, attorneys' fees, and all other statutory relief for the financial elder abuse committed against Ralph and Darlene Struthers.

15. Plaintiff also seeks a declaratory judgment invalidating all legal and financial actions taken under the July 7, 2017 incapacitation letter and any unauthorized trustee appointments.

16. The trustee succession manipulation detailed in Paragraph 37—substituting individuals never authorized in the original trust—was critical to displacing Ralph and Darlene's legal intent and facilitated the financial abuse.

17. The unauthorized redemption of U.S. Savings Bonds totaling $51,988.00 under Darlene's name further depleted her estate. This occurred without informed consent or verified fiduciary authority, supporting an additional finding of elder abuse under §15657.5.

18. Defendant Konstantine "Kosta" Demiris knowingly submitted excessive and unauthorized legal billing against the Ralph C. Struthers Trust. Demiris depleted both trust funds and personal deposits made by Plaintiff, including approximately $11,000 of Plaintiff's own money. He obstructed Plaintiff's efforts to recover these funds by leveraging co-trustee April Sharp's refusal to sign an arbitration agreement—despite the low cost and minimal risk involved. Demiris's billing practices violated fiduciary duty, ethical obligations, and elder protection laws. Additionally, he disclosed confidential trust-related legal information to outside attorney Scott Jordan, who was not a member of his law firm and had not been authorized by Plaintiff to receive such communications. This disclosure was made without informed consent, in violation of California Rules of Professional Conduct, Rule 1.6, and breached the attorney-client privilege owed to the trust and Plaintiff.

19

19. Defendant Scott Shuttleworth engaged in financial elder abuse by retaining $39,275.31 in trust escrow funds from the sale of Ralph Struthers's property, despite having already been paid for services in full by Plaintiff. These funds were never returned, and Plaintiff received no satisfactory accounting or justification. Shuttleworth's actions caused direct financial harm to the trust, which had been established to benefit a medically vulnerable elder and his designated beneficiaries. Shuttleworth further abandoned the case for nearly a year during the COVID-19 pandemic and later refused to cooperate or account for the withheld funds. His conduct deprived the trust of rightful assets and obstructed Plaintiff's ability to carry out her fiduciary duties.

20. The combined misconduct of Demiris and Shuttleworth resulted in over $54,000 in unnecessary and excessive legal fees, drained personal contributions from Plaintiff, and deprived the trust of recoverable assets. Demiris's unauthorized disclosure of trust information to an outside attorney caused confusion and mistrust between co-trustees, further impairing proper administration. These actions amount to elder financial abuse under California Welfare & Institutions Code §15657.5 and warrant treble damages, attorney fees, and equitable relief to restore the misappropriated funds.

21. Plaintiff respectfully requests that the Court recognize that Demiris's actions—including excessive billing, failure to conduct contracted arbitration, and breach of confidentiality—along with Shuttleworth's withholding of escrowed trust funds and failure to return unearned retainers, constitute financial elder abuse. These violations not only harmed the elderly settlor Ralph Struthers, but also obstructed Plaintiff's ability to protect the trust, fulfill her fiduciary duties, and ensure rightful distribution to beneficiaries.

20

22. This trust manipulation—including the misuse of Darlene's name, the appointment of unauthorized trustees, and the concealment of key documents—was part of a broader scheme to disinherit Plaintiff and defraud a cognitively impaired elder.

23. California Civil Code §1575 defines undue influence as the use of pressure, deception, or coercion to overcome the will of a vulnerable person. This statute applies here, where Belinda and Julie manipulated Darlene—who had documented dementia—into surrendering trustee and financial control.

24. California Evidence Code §1222 limits the admissibility of statements made by alleged agents unless the agency was legally authorized. Belinda and Julie repeatedly acted as legal representatives for Ralph and Darlene without valid authority, using their names in trust amendments, court filings, and lawsuits, including the LA elder abuse case, despite lacking lawful capacity.

**COUNT FOUR: CIVIL CONSPIRACY TO COMMIT FRAUD**

39. Against Belinda Connor, Julie Hatridge, Carole Campbell, Kevin Lachona, J. Johnson, and all individuals who knowingly participated in the fraudulent manipulation of the Struthers Trusts and Estate

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. The falsified trustee succession described in Paragraph 37 of this Complaint reflects a deliberate and coordinated scheme carried out by Defendants to displace legitimate successor trustees and assert control under false pretenses. This restructuring was never authorized by

21

Ralph or Darlene Struthers and was achieved through misrepresentation, coercion, and document tampering.

3. Defendants formed a common plan and acted in concert to manipulate trust instruments, conceal material facts, and exploit elderly settlors for financial gain. Their fraudulent actions involved both affirmative misstatements and intentional omissions, in violation of their fiduciary and legal duties.

4. The conspiratorial conduct included, but was not limited to:

a. Creating and notarizing a false incapacitation declaration for Ralph Struthers on July 7, 2017, before any medical evaluation had occurred.

b. Presenting Julie Hatridge as a co-trustee without a valid legal appointment or formal trust amendment, despite her not being named in the original instrument.

c. Exploiting Darlene Struthers' cognitive decline to execute trust changes, close accounts, and sign legal documents she could not comprehend.

d. Altering trust instruments and inserting unauthorized pages with irregular pagination such as "24A," "24B," "BA," and "35B," thereby creating the illusion of trustee authority and succession changes that were never authorized.

e. Using the identities and signatures of Ralph and Darlene after their cognitive decline was medically evident, and in Ralph's case, while he was hospitalized with MRSA and recovering six hours away from the signing location.

f. Filing court documents under penalty of perjury falsely representing trustee authority, without proper notice to beneficiaries or judicial verification.

22

g. Withholding trust documents and financial information from Plaintiff, medical providers, and beneficiaries to prevent challenge and discovery of fraud.

h. Coordinating a secret family meeting in May 2017, during which Ralph and Darlene were pressured to open their family safe and surrender original trust records to J. Johnson's law office, all under the direction of Belinda and Carole.

i. Concealing the existence of a sealed letter written by Ralph Struthers and entrusted to attorney Don Gravalec, which disavowed the altered 1993 trust and confirmed Ralph's intent to retain control through his own estate plan. Attorney Gravalec attempted to present this sealed letter to the court during proceedings, but the judge declined to accept it at that time. Gravalec also stated—either during court discussions or through supporting correspondence—that the version of the 1993 trust currently being used was not the one he originally drafted. Despite this, no formal hearing was held to resolve the issue. Furthermore, Plaintiff's repeated filings and exhibits in both trust and probate matters clearly demonstrated that the acting trustees were not lawfully appointed. These documents were available to the court and opposing counsel, who failed to take corrective action.

5. Defendant J. Johnson and his law firm played a central role in these fraudulent activities by drafting, notarizing, and retaining invalid documents, despite knowing of Ralph's opposition and Darlene's diminished capacity. Johnson refused to return original documents upon request and failed to verify medical capacity before notarization.

6. Defendant Kevin Lachona, while acting as opposing counsel in the trust litigation, knowingly ratified and supported the fraudulent actions described above by:

23

a. Submitting or facilitating the submission of a forged or coercively signed mediation agreement;

b. Ignoring clear inconsistencies in trust documents, including pagination errors and unverified appointments.

c. Obstructing Plaintiff's efforts to obtain discovery, including records from Kosta Demiris and J. Johnson's office.

d. Criticizing Plaintiff in court for overpaying attorneys Kosta Demiris and Scott Shuttleworth, but later opposing her ex-parte application to recover those same funds through bar arbitration—contradicting his own prior argument and revealing an intent to obstruct restitution.

7. Texts and deposition testimony confirm that Defendants were aware that Julie Hatridge was never named as a trustee, and that the proper successors were Francis Edward Lye and Edward George Lye. Nonetheless, Defendants elevated Julie to trustee authority and allowed her to sign court documents and financial disbursements under false pretenses.

8. The manipulated version of the 1993 trust—complete with irregular numbering and inserted pages—became the foundation for Defendants' control of trust assets, and was used to deceive courts, medical professionals, and beneficiaries alike.

9. Defendants enforced this conspiracy through intimidation, silence, and manipulation, including:

a. Threats of litigation to silence beneficiaries.

b. Blocking Plaintiff's access to Darlene;

c. Misleading family members and co-trustees about trust terms and responsibilities.

24

d. Promising certain beneficiaries financial rewards (i.e., references to a "that-a-girl fund") to gain cooperation or silence.

10. Defendants Demiris and Shuttleworth, while not named in the original fraudulent trust creation, further exploited the situation by:

a. Submitting inflated legal bills without performing essential work.

b. Withholding unused retainers and escrow funds owed to the trust.

c. In the case of Kosta Demiris only, sharing confidential trust information with another attorney, Scott Jordan, without Plaintiff's knowledge or consent—a violation of Rule 1.6 of the California Rules of Professional Conduct and attorney-client privilege.

11. Defendants further committed fraud by:

a. Falsely claiming Ralph Struthers was incapacitated while simultaneously initiating legal action in his name.

b. Using Darlene Struthers's name and signature on financial and legal documents despite her cognitive impairment and her prior resignation as trustee.

c. Filing a baseless elder abuse lawsuit in Los Angeles against Plaintiff using Ralph and Darlene's names—without their informed consent—in an attempt to remove Plaintiff as a beneficiary.

12. As a direct and proximate result of this conspiracy, Plaintiff suffered:

• Financial losses due to trust depletion.

• Emotional distress and reputational harm.

• Disruption of fiduciary duties and loss of control over trust administration.

25

- Obstruction in protecting Ralph and Darlene's intended succession plan.

13. Plaintiff respectfully requests that the Court:

a. Award compensatory and punitive damages against all conspirators;

b. Enter a declaratory judgment invalidating any trust changes, legal filings, or asset transfers resulting from this fraudulent scheme.

c. Grant all equitable relief necessary to restore the trust's original structure and protect rightful beneficiaries.

## COUNT FIVE: MEDIATION COERCION AND SUBMISSION OF UNAUTHORIZED AGREEMENT

40. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

41. This cause of action arises from a mediation session conducted in 2024 in which Plaintiff LaRonda Myers was subjected to emotional, cognitive, and procedural coercion that invalidated the resulting agreement.

42. The mediation followed a week of intense legal activity, including Plaintiff's deposition by Attorney Kevin Lachona, the deposition of Belinda Connor, and preparation for an imminent court hearing. The mediation lasted approximately 14.5 hours, leaving Plaintiff physically and mentally exhausted.

43. Plaintiff verbally expressed her fatigue and inability to comprehend the agreement during the mediation. The mediator—a licensed attorney who claimed to be experienced in trust and probate law—dismissed her concerns, stating she was merely "punchy," and continued pressuring her to sign.

26

44. Plaintiff was isolated in a room while the mediator held extensive private conversations with both attorneys—Kevin Lachona and Plaintiff's own counsel—without Plaintiff's knowledge or participation. This violated the principles of neutrality required under court-appointed mediation protocols.

45. During a highly stressful point in the session, both the mediator and Plaintiff's own attorney told her that she had failed in her fiduciary duties and was legally exposed to personal liability. No substantive explanation was provided. Plaintiff began crying, felt emotionally overwhelmed, and was pressured to settle out of fear, not informed consent. Her niece, attending remotely, was not subjected to similar pressure or intimidation.

46. After the session, Plaintiff's niece privately admitted that they had "made a mistake" by signing. Plaintiff reviewed the agreement the next day and instructed her attorney not to submit it to the court.

47. Without Plaintiff's authorization, her attorney submitted the mediation agreement to the court and signed her name to it. This was done in bad faith and in direct violation of Plaintiff's explicit instruction.

48. Plaintiff acknowledges that she was represented during the mediation by an attorney she had retained specifically for his mediation experience. However, he lacked familiarity with probate law and was not fully informed about the fiduciary limitations or statutory prohibitions related to trust distributions. Plaintiff does not fault her attorney for his lack of probate training, but she does fault him for pressuring her during the session and for submitting the agreement to the court without her consent. Plaintiff believes that both the mediator and opposing counsel misled her attorney during private discussions, contributing to confusion and procedural

27

missteps. Her attorney, under pressure and misinformation, may have acted in fear of potential legal exposure, but those actions still resulted in unauthorized and harmful filings that violated Plaintiff's rights.

49. The submitted agreement included provisions that were legally and ethically impermissible, including:

- Payment of third-party legal fees from trust or estate assets, in violation of California Probate Code.

- Distributions that conflicted with Plaintiff's statutory fiduciary duties.

- The unnecessary establishment of special needs trusts, even though Plaintiff had explained during the session that her sisters no longer qualified for them.

50. These actions constitute not only procedural coercion but also a breach of fiduciary duties owed to Plaintiff and to the trust beneficiaries. Defendants—including the mediator, opposing counsel, and Plaintiff's own former counsel—owed a duty of honesty, loyalty, and lawful conduct during fiduciary trust mediation. Instead, they abused their roles, pressured Plaintiff with false claims of liability, and concealed legal consequences from her in a moment of extreme fatigue.

51. Defendants breached their fiduciary and ethical duties by:

- Coercing Plaintiff into an agreement that contradicted her legal responsibilities as co-trustee.

- Submitting a document she had not authorized, signed, or reviewed fully.

- Attempting to bind her to illegal distributions that would harm the trust and its beneficiaries.

28

- Failing to provide truthful information regarding her obligations or rights under the law;

- Misusing the mediation process to isolate, manipulate, and overpower a pro se fiduciary.

52. The mediator and both attorneys ignored governing California law, including:

- Probate Code §§ 16002 and 17200, which require trustee loyalty and lawful trust administration.

- Kieturakis v. Kieturakis (2006) 138 Cal.App.4th 56, which affirms that trust mediation must be voluntary and informed.

53. Plaintiff's physical exhaustion, emotional distress, and procedural isolation invalidated any supposed consent to the agreement. She did not understand the legal consequences, nor did she knowingly agree to its terms. Her will was overborne by individuals in positions of authority.

54. Commissioner Jacques later allowed Plaintiff to revoke the agreement but did so while casting doubt on her credibility, and without giving her the opportunity to testify about what occurred or confront those responsible for the coercion.

55. As a direct and proximate result of the coercive mediation and breach of fiduciary duties, Plaintiff suffered:

- Emotional distress and psychological harm.

- Reputational injury.

- Legal jeopardy for obligations she never consented to;

29

- Loss of confidence in the protections afforded to fiduciaries and pro se litigants.

56. Plaintiff respectfully seeks:

- Compensatory and punitive damages against all persons and entities involved in the coercion and unauthorized submission;

- Declaratory relief declaring the mediation agreement null and void;

- Injunctive relief prohibiting enforcement of similar coerced or unlawful agreements in this or any related trust matter.

57. Defendants, including the mediator and opposing counsel, later claimed that mediation confidentiality barred Plaintiff from disclosing what occurred. However, Plaintiff was acting in her role as co-trustee of the 2017 Trust and was obligated by California Probate Code §16060 to inform beneficiaries of any proposed distribution or legal action affecting their inheritance. The disputed mediation agreement would have removed over $84,000 from the trust without explanation or consent. Plaintiff could not remain silent without violating her fiduciary duties. Confidentiality does not override statutory obligations, especially where coercion, misrepresentation, and legal malpractice are involved.

**COUNT SIX: SYSTEMIC DUE PROCESS VIOLATIONS BY PLACER COUNTY COURT ADMINISTRATION**

58. Against the administrative officers, commissioners, and judicial actors responsible for overseeing probate and trust litigation within Placer County Superior Court

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

30

2. -This cause of action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, based on a pattern of systemic and institutional violations committed by judicial officers and administrative staff within the Placer County Superior Court.

3. For more than six years, Plaintiff has faced persistent procedural obstruction, retaliation, and judicial bias that have undermined her constitutional right to due process and fair access to the courts. These failures were committed by court officials acting under color of state law and in concert with opposing parties and imposter fiduciaries.

4. Specific violations include, but are not limited to:

o        Consistent refusal to schedule or rule on evidentiary hearings, including those calendared well in advance by Plaintiff.

o        Failure to address timely submitted trust accountings, despite full compliance with Probate Code §16062.

o        Allowing opposing counsel to file boilerplate or vague objections, stalling trust distributions for years without requiring legal or factual support, contrary to Probate Rule 7.801(c).

o        Refusal to enforce mandatory fiduciary duties under Probate Code §§16060–16063, including transparency, access to documents, and accounting.

o        Entertaining and legitimizing filings and trustee substitutions submitted by individuals lacking legal appointment or standing.

o        Blocking Plaintiff from fulfilling fiduciary obligations by threatening sanctions or removal for her attempts to disclose mediation facts to beneficiaries, which she was legally required to do under Probate Code §17200.

31

o        Retaliating against Plaintiff for protected activity, including filing federal complaints, requesting court supervision, and raising allegations of elder abuse and fraud.

o        Demonstrating preferential treatment to favored attorneys and repeat filers, including granting their motions without scrutiny while denying Plaintiff fair hearing time or procedural accommodation.

o        Halting the court reporter during contentious hearings or judicial outbursts, thereby suppressing portions of the record crucial for appellate review or civil rights documentation.

5. These practices have created a judicial bottleneck, suppressing the administration of the Ralph C. Struthers Trust and harming all legitimate beneficiaries. Plaintiff, in particular, has been financially penalized, silenced, and systematically denied procedural protections granted to other litigants.

6. The Court's consistent refusal to act, its failure to enforce its own prior rulings, and its unequal treatment of pro se litigants have collectively resulted in a complete breakdown of due process.

7. Plaintiff has made every reasonable effort to comply with probate procedures, file accounting, respond to objections, and protect the trust. At every step, she has been met with court-enabled resistance, delayed hearings, and denials of basic judicial access.

8. These acts and omissions have deprived Plaintiff of:

o        Her constitutional right to a fair hearing.

o        Her right to equal protection under the law.

32

o       Her fiduciary ability to fulfill obligations as co-trustee under California law.

9. Plaintiff respectfully seeks:

o       Declaratory and injunctive relief to prevent ongoing due process violations and administrative suppression of her trustee duties.

o       Compensatory damages for emotional distress, procedural obstruction, reputational harm, and delayed inheritance administration caused by judicial misconduct and systemic failure.

o       Any other relief this Court deems just and proper.

10. Defendants further breached their fiduciary obligations by misusing mediation confidentiality to conceal illegal or unauthorized trust distributions, and to intimidate Plaintiff into silence. Plaintiff, by contrast, acted in accordance with her duties under Probate Code §16060 by informing beneficiaries of the potential loss and objecting to unlawful settlement terms.

## COUNT SEVEN: LEGAL MALPRACTICE AND BREACH OF PROFESSIONAL DUTIES

Against Defendants Konstantine Demiris, Scott Shuttleworth, and any attorney acting in violation of fiduciary or ethical obligations to the Ralph C. Struthers Trust or Plaintiff individually

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

33

2. This cause of action arises from Defendants' failure to exercise the duty of care and loyalty owed to Plaintiff and to the Ralph C. Struthers Trust during their respective engagements as legal counsel.

3. Plaintiff's good-faith effort to arbitrate legal overbilling and recover misused trust funds was used against her by both opposing counsel and the Court. Kevin Lachona repeatedly cited the arbitration filing and internal trustee conflict as justification to remove Plaintiff as co-trustee—despite Plaintiff's consistent efforts to act in the best interests of all beneficiaries. This weaponization of fiduciary oversight by the Court and opposition reflects retaliatory and unethical legal tactics. It punished Plaintiff for protecting the trust and enabled continued financial harm to beneficiaries.

4. Plaintiff specifically sought to address trust attorney overbilling as an internal, administrative matter between trustees. She attempted to have the issue sealed or marked confidential to avoid unnecessary conflict. Her request was mishandled or ignored by the court clerks, and the judge later allowed opposing counsel—who had no interest in internal administration—to file an objection. This not only undermined Plaintiff's trust in the court process, but it allowed Kevin Lachona to use the existence of disagreement between co-trustees to further delay trust resolution. Plaintiff believes the judge's failure to protect trustee autonomy in administrative matters amounts to judicial betrayal and contributed to the loss of restitution for the trust.

5. Defendants Konstantine Demiris and Scott Shuttleworth were each hired in a fiduciary capacity to represent the Ralph C. Struthers Trust, or in the case of Shuttleworth, to represent Plaintiff individually during her role as co-trustee and fiduciary. Each undertook duties governed

34

by the Rules of Professional Conduct, including Rule 1.6 (confidentiality) and Rule 1.3 (diligence), as well as the California Business and Professions Code §6068(e)(1).

6. Defendant Demiris failed to maintain proper fiduciary conduct by:

o    Overbilling the trust account in excess of $54,000 for limited and unproductive services.

o    Failing to conduct scheduled arbitration or mediation despite being retained solely for that purpose.

o    Charging Plaintiff's personally deposited funds without meaningful results.

o    Introducing attorney Scott Jordan into trust affairs without disclosing that Jordan was not affiliated with his firm.

o    Sharing confidential trust-related information with Jordan without Plaintiff's informed consent, in violation of attorney-client privilege and the Rules of Professional Conduct.

7. Defendant Scott Shuttleworth committed legal malpractice and fiduciary breach by:

o    Retaining $39,275.31 from the escrowed proceeds of the duplex sale belonging to Ralph Struthers, despite Plaintiff's belief that all legal fees had already been paid.

o    Failing to explain the withheld amount. When Plaintiff raised concerns, she first consulted with a certified accountant who reviewed Shuttleworth's billing and confirmed that the amount owed had already been satisfied. Upon presenting this to Shuttleworth, he became visibly angry and offered only a vague explanation that the funds were

35

"date stamped" by his office—an internal process that held no legal weight or external verification.

      o      Leaving the case almost immediately after the funds were received from the escrow, departing on a family trip and not returning to active casework for nearly a year. During this time, Plaintiff's only contact was with his paralegal, who could provide no substantive progress or support. Shuttleworth took no legal action, responded to no trust-related concerns, and neglected to represent Plaintiff during a critical phase of trust litigation.

      o      Upon returning, Shuttleworth informed Plaintiff that he would no longer represent her, stating that he was "done getting in the frying pan" with opposing counsel Kevin Lachona and would not participate in any further litigation. This left Plaintiff without representation and caused unnecessary delays in trust administration.

8. Defendant Kevin Lachona, while acting as legal counsel for opposing parties, committed legal malpractice and breach of ethical duties by intentionally creating delays, manipulating accounting proceedings, and facilitating the depletion of trust funds for his own financial benefit. Lachona did so by:

      o      Repeatedly objecting to Plaintiff's properly filed trust accountings, despite knowing that court approval was required for distributions.

      o      Using these objections as a stalling tactic, thereby preventing inheritance distributions and allowing attorney fees to accumulate unchecked.

      o      Submitting an ex parte request to redeem $51,988.00 in U.S. Savings Bonds from the 1993 Trust while the trustee's legal authority was still under challenge — thereby depleting Darlene Struthers's estate without consent or proper notice;

36

       o      Attempting to bill legal fees to Darlene's trust, despite representing parties whose standing was in dispute;

       o      Obstructing discovery related to Kosta Demiris and Scott Shuttleworth, while simultaneously accusing Plaintiff of misconduct for not recovering trust funds;

       o      Facilitating or failing to stop the submission of a forged or coerced mediation agreement against Plaintiff's express objection.

These actions demonstrate a clear conflict of interest, abuse of process, and violation of fiduciary principles. Lachona's conduct impacted both the Ralph C. Struthers Trust of 2017 and the Struthers Family Trust of June 4, 1993, resulting in unjust enrichment, legal harm, and fiduciary collapse. Lachona's behavior violated California Business and Professions Code §6068(e)(1) and the Rules of Professional Conduct, and constitutes grounds for malpractice, restitution, and civil penalties.

9. Both attorneys were reported to the California State Bar, which acknowledged the validity of Plaintiff's concerns and suggested arbitration. Plaintiff paid arbitration fees and submitted all required materials, but her efforts were blocked when co-trustee April Sharp refused to sign the necessary authorization, further delaying accountability.

10. Despite Plaintiff's due diligence, April Sharp refused to authorize arbitration filings, blocking the trust's opportunity to recover funds overbilled by Damaris and Shuttleworth. When Plaintiff filed an ex parte motion to preserve the claim, the court refused to act and instead enabled opposing counsel—who had no lawful claim to those funds—to object. This interference directly contributed to the statute of limitations issue and represents both malpractice and fiduciary failure.

37

11. As a result of Defendants' malpractice, the trust was financially harmed, Plaintiff's ability to administer the trust was obstructed, and personal funds were lost. Plaintiff incurred direct economic loss, emotional distress, and further reputational damage due to the perceived mismanagement caused by these attorneys.

12. Plaintiff respectfully seeks compensatory damages, full restitution of trust and personal funds wrongfully billed or retained, and punitive damages where supported by law. Plaintiff also requests declaratory relief confirming that these attorneys violated their professional obligations and that their actions were not protected under privilege or confidentiality doctrines due to fraud and ethical breaches.

13. Defendant Kevin Lachona, while representing opposing parties in the Struthers Trust disputes, committed legal malpractice and ethical misconduct by creating unnecessary litigation, objecting to valid accountings, and driving up legal costs that were passed onto the Ralph C. Struthers Trust. Although Lachona did not directly bill that trust, his repeated filings and courtroom demands forced Plaintiff and the trust to hire attorneys and expend significant funds to defend against his actions.

In addition to attorney-related malpractice, Plaintiff notes that **Co-Trustee April Sharp's failure to engage in critical fiduciary tasks**—such as signing off on arbitration, supporting proper accounting, participating in legal strategy, and avoiding self-dealing—has severely impaired the trust's administration. Her refusal to join continuance efforts or oppose improper payments to opposing counsel has contributed to unnecessary legal delays and financial losses. Plaintiff respectfully asks this Court to find that April Sharp has failed to uphold her

fiduciary duties and that continued conflict between trustees, driven by one-sided inaction and obstruction, has become detrimental to trust integrity.

Simultaneously, Lachona billed the Darlene Struthers Trust for his fees, despite the fact that he represented parties whose authority was in legal dispute and under evidentiary review. This created a concurrent conflict of interest, as Lachona was financially incentivized to prolong litigation while obstructing resolution. These actions violated California Rules of Professional Conduct, Rule 1.7 and §6068(e)(1) of the Business & Professions Code. His behavior directly harmed both trusts, eroded beneficiary rights, and obstructed lawful trust administration.

14. Plaintiff respectfully notes that the Placer County Superior Court has repeatedly imposed procedural barriers and denied Plaintiff fair access to court scheduling options solely due to her status as a pro per litigant. In July 2025, Plaintiff attempted to request a continuance of an upcoming accounting hearing (not an evidentiary hearing) to allow time to secure legal counsel for a complex trust dispute. Despite showing good cause and the unavailability of any willing attorney on such short notice, the court clerk refused to accept the request as untimely claiming it had not been made fifteen days before the hearing, as required by local rules. Yet, when attorneys request continuances—often as late as one or two days before a hearing—they are routinely granted without prejudice or judicial reprimand. Plaintiff has further experienced hostility from the bench when attempting to file ex parte requests to continue hearings, including public scolding, repeated denials, and procedural intimidation. The courts' inconsistent enforcement of rules—allowing attorneys leniency while punishing Plaintiff for the same requests—constitutes a denial of equal protection and meaningful access to justice under the Fourteenth Amendment.

39

## V. PRAYER FOR RELIEF

59. WHEREFORE Plaintiff respectfully requests that this Court grant the following relief:

1. A declaratory judgment that Defendants violated Plaintiff's rights under 42 U.S.C. §1983 and the Fourteenth Amendment of the United States Constitution by engaging in acts that deprived Plaintiff of due process, fair access to the courts, and the ability to fulfill her fiduciary duties.

2. A finding that all financial actions taken by Defendants under fraudulent incapacitation claims, forged mediation agreements, or unauthorized trustee designations are null and void. This includes all financial transactions, trust alterations, and legal filings—such as the manipulated version of the 1993 Struthers Trust and the elder abuse lawsuit initiated without consent—which were executed through fraud, undue influence, or improper legal process.

3. Compensatory damages totaling $18,637,500, including:

   o    $16,462,500 for damages to Ralph C. Struthers, including treble damages under California Welfare & Institutions Code §15657.5 for elder financial abuse (as detailed in Section VIII).

   o    $925,000 for damages to Darlene Struthers, reflecting elder abuse, unauthorized trust use, and isolation.

   o    $1,250,000 for damages to Plaintiff LaRonda Myers, including unpaid fiduciary labor, reputational harm, emotional distress, and denial of due process and civil rights.

40

4. Enhanced statutory damages for Plaintiff under California Welfare & Institutions Code §15657.5, reflecting prolonged harm, delay in redress, and intentional infliction of financial and emotional injury.

5. An order imposing joint and several liability against financially capable Defendants— specifically including Kevin Lachona, J. Johnson, Hannah Johnson, and their respective law firms—ensuring that all damages may be collected from these parties and not from the trust or rightful beneficiaries.

6. A specific finding that Defendant Kevin Lachona committed legal malpractice as he created a conflict of interest by representing opposing parties while billing two separate trusts, and caused financial harm through procedural delay and litigation abuse. Plaintiff seeks:

  o    Full restitution of fees improperly billed to the Darlene Struthers Trust.

  o    Financial compensation for the burden imposed on the Ralph C. Struthers Trust, including costs incurred to defend against meritless or obstructionist filings.

  o    Damages based on Rule 1.7 violations under the California Rules of Professional Conduct and California Business & Professions Code §6068(e)(1).

7. Declaratory and injunctive relief prohibiting:

  o    Future enforcement of any trust agreement, amendment, or mediation document signed under coercion, undue influence, or without informed consent;

  o    The use of estate or trust funds to pay legal fees in disputes involving conflicts of interest;

  o    Retaliation or suppression of Plaintiff's rights as co-trustee or beneficiary for fulfilling her fiduciary or legal obligations.

41

8. An order requiring that all funds improperly obtained or withheld by Defendants, including attorneys, fiduciaries, or third-party agents—be returned to the Ralph C. Struthers Trust and distributed in accordance with the settlor's intentions.

9. An award of reasonable attorneys' fees, arbitration costs, and court expenses pursuant to:

      o      42 U.S.C. §1988,

      o      California Welfare & Institutions Code §15657.5,

      o      Applicable fiduciary and probate statutes.

10. Such other and further relief as this Court may deem just and proper in law or equity to correct the injustices described herein and restore Plaintiff's constitutional and fiduciary rights.

11. A declaratory finding that Plaintiff's constitutional rights were violated by state court officers acting under color of law.

• An order recommending judicial retraining or oversight regarding fiduciary duty, trust law, and due process protections.

• Any other relief this Court deems just and proper.

12. A declaratory finding that Co-Trustee **April Sharp breached her fiduciary duties** by failing to:

• Participate meaningfully in trust administration;

• Support recovery of misused trust funds through arbitration;

• Cooperate in the hiring of qualified legal counsel; and

• Protect the interests of the trust and its beneficiaries during litigation and mediation.

Plaintiff respectfully requests the Court to find that such conduct constitutes a violation of fiduciary obligations under California Probate Code §§16002, 16004, and 16060–16063. Plaintiff also seeks the Court's authorization to seek removal or replacement of April Sharp as co-trustee at the earliest available hearing, or at minimum, a reduction or denial of trustee fees due to failure of performance and self-dealing.

## VI. LEGAL FRAMEWORK AND AUTHORITIES

60. This action is supported by the following legal authorities:

1. 42 U.S.C. §1983: Provides a civil cause of action against individuals acting under color of state law who deprive a person of constitutional or federally protected rights. This includes judicial officers, attorneys acting in coordination with court officials, and mediators serving in court-appointed roles.

2. U.S. Constitution, 14th Amendment: Protects individuals from deprivation of life, liberty, or property without due process of law. The violations here include denial of evidentiary hearings, obstruction of trust accounting, biased judicial conduct, and retaliatory sanctions against Plaintiff for asserting her legal rights.

3. Goldberg v. Kelly, 397 U.S. 254 (1970): Establishes that due process requires a meaningful opportunity to be heard in proceedings that affect a person's rights or entitlements.

4. Monell v. Dept. of Social Services, 436 U.S. 658 (1978): Allows claims against local governments and their administrative structure when constitutional violations result from official policy, practice, or custom.

43

5. Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988): Recognizes joint and several liability in §1983 cases involving conspiracy. All conspirators may be held fully liable for damages.

6. Alexander v. City & County of San Francisco, 29 F.3d 1355 (9th Cir. 1994):

Confirms joint and several liability applies in §1983 actions when multiple actors cause an indivisible injury.

7. Johnson v. U.S. Dept. of Treasury, 939 F.2d 820, 825 (9th Cir. 1991):

Pro se litigants must be afforded meaningful access to the courts and cannot be held to stricter standards than represented parties. Denial of access or unequal procedural treatment may constitute a violation of due process under the 14th Amendment.

8. Johnson v. U.S. Dept. of Treasury, 939 F.2d 820 (9th Cir. 1991):

Pro se litigants are entitled to meaningful access to the courts and must not be held to more burdensome procedural standards than those with legal representation. Courts must treat pro se filings with fairness and allow equivalent opportunity for relief, including continuances and procedural accommodations.

**VII. CALIFORNIA STATE AUTHORITIES**

1. Welfare & Institutions Code §15657.5: Provides for treble damages, attorneys' fees, and costs when a defendant commits elder financial abuse. All claims involving Ralph and Darlene Struthers are supported under this statute.

2. Probate Code §16062: Requires trustees to prepare and provide annual accountings to beneficiaries. Plaintiff complied, but the Court refused to act on multiple submitted accountings.

3. Probate Code §16060–16063: Obligates trustees to provide full disclosure, respond to beneficiary requests, and maintain transparency. Defendants obstructed access and violated these provisions.

4. Probate Code §17200(b)(7)(C): Authorizes beneficiaries or fiduciaries to petition the Court for approval of accountings and distributions. Plaintiff's filings were blocked or ignored.

5. Probate Rule 7.801(c): Requires that objections to accounting must state specific factual and legal grounds. The Court failed to enforce this standard and allowed baseless objections to stall proceedings.

6. California Civil Code §3439 et seq.: Governs fraudulent transfers and financial deception, applicable to unauthorized withdrawals and trust document alterations conducted by Defendants.

7. Kieturakis v. Kieturakis (2006) 138 Cal.App.4th 56: Establishes that mediated trust settlements must be both voluntary and informed. Plaintiff signed under duress and immediately rescinded after reviewing the agreement.

8. Estate of Giraldin (2012) 55 Cal.4th 1058: Recognizes post-death standing of beneficiaries to pursue breach of fiduciary duty claims.

9. Mahan v. Chan (2017) 14 Cal.App.5th 841: Affirms that courts must scrutinize trust disbursements to prevent elder exploitation.

10. Free v. Bland, 369 U.S. 663 (1962): Confirms federal jurisdiction over U.S. Savings Bonds. The Court authorized redemption under an unverified trustee, violating federal control standards.

11. Ach v. Finkelstein (1968) 264 Cal.App.2d 667:

45

Holds that all who participate in a fraud are jointly liable for resulting harm.

12. Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (1994) 7 Cal.4th 503:

Civil conspirators are jointly and severally liable for all damages caused by their acts in furtherance of the conspiracy.

## VIII. TOLLING AND DELAYED DISCOVERY

61. Plaintiff invokes tolling under the delayed discovery rule. The grounds include:

Plaintiff invokes the delayed discovery rule and equitable tolling under both California law and applicable federal doctrines.

- Many of the fraudulent and abusive actions described in this Complaint were concealed from Plaintiff or deliberately misrepresented by Defendants until new evidence became available between 2023 and 2025.

- In particular, the following events justify telling:

- The discovery of a sealed letter written by Ralph C. Struthers in March 2019, confirming his rejection of trust changes. This letter was reviewed and validated by original trust attorney Don Gravalec who confirmed that the trust currently being used was not the one he drafted.

- The notary originally listed for the 1993 Trust also confirmed to Mr. Gravalec that the document being presented is not the one she notarized.

- Belinda Connor's 2024 deposition confirmed that Julie Hatridge was never a named trustee in the original trust and that trustee designations had been altered without authority.

45

- In 2023, Plaintiff began receiving new evidence, including text messages and emails that confirmed Darlene's cognitive incapacity had been known for years. Some messages revealed Defendants discussing that Darlene "doesn't remember things," even as they used her name on legal and financial documents.

- In 2023, Plaintiff attempted to subpoena records tied to Kosta Demiris, but Attorney Kevin Lachona actively resisted discovery, which Plaintiff later learned he had no legal authority to unilaterally deny.

- In 2023, Plaintiff independently conducted legal research at the Sacramento Law Library and discovered that lawyers may not notarize incapacity declarations before medical diagnoses are documented. This knowledge significantly shifted Plaintiff's understanding of how Ralph's rights had been violated.

- Also in 2023, Plaintiff learned of key distinctions between probate estate and trust law, further clarifying how Defendants unlawfully merged or misapplied legal categories to their benefit.

- New statements and texts from Cheryl Struthers and April Sharp helped confirm that trust alterations were unauthorized and that $84,000 in legal fees to Kevin Lachona had not been disclosed to beneficiaries until much later.

- Although Plaintiff received some early communications from April Spaulding, they did not constitute concrete proof and were insufficient on their own to take legal action until further corroboration emerged.

- Plaintiff acted with due diligence throughout the course of her fiduciary responsibilities. However, she was misled and blocked from accessing information by those in control of documents, accounts, and administrative power until recent years.

- In addition, the COVID-19 pandemic caused significant disruption in 2020–2021, delaying access to the courts, discovery processes, and meaningful attorney communication. Despite these challenges, Plaintiff continued to fulfill her fiduciary obligations, including preparing and submitting trust accountings during this period.

- Equitable tolling applies due to:

- Ongoing concealment and misrepresentation by Defendants.

Repeated obstruction of discovery in state court, including refusal to compel subpoena responses.

- Judicial suppression of Plaintiff's efforts to present key evidence, including the rejection of accountings and refusal to investigate trustee fraud.

- The court's failure to compel production of critical documents, such as those in the possession of J. Johnson and Hannah Johnson, despite Plaintiff's multiple attempts to request and subpoena them.

- Because key facts establishing fraud, unauthorized trustee substitution, and document tampering were only discovered or confirmed within the past two years, the applicable statutes of limitation under both California and federal law must be tolled.

- Plaintiff respectfully asserts that all claims in this Complaint are timely under the delayed discovery rule and equitable tolling principles and should be adjudicated on their merits.

- Plaintiff was not aware of Darlene Struthers' location, living conditions, or continued legal involvement until Belinda Connor's deposition in 2024. Prior to that, all attempts to contact or locate Darlene were blocked. This concealment delayed Plaintiff's discovery of the ongoing elder abuse and financial exploitation, and supports application of both the delayed discovery rule and equitable tolling under California law.

- In 2024, Plaintiff initiated bar association arbitration against attorneys Kosta Demiris and Scott Shuttleworth after confirming through an independent accountant that substantial funds were improperly withheld or overbilled. Plaintiff personally paid the arbitration filing fees in full and prepared all required paperwork. However, co-trustee April Sharp refused to sign the arbitration agreement, preventing Plaintiff from proceeding. In response, Plaintiff filed an ex-parte application with the probate court to compel arbitration or toll the statute of limitations. Commissioner Jacques denied the request, stating that he lacked authority to extend deadlines, despite applicable probate law and case precedent allowing equitable tolling to protect beneficiaries. Compounding the issue, opposing counsel Kevin Lachona—who had previously criticized Plaintiff for not addressing overbilling—opposed her motion to recover the funds. This contradiction, combined with the co-trustee's refusal and judicial inaction, significantly delayed Plaintiff's ability to recover trust assets and further justifies tolling under California Code of Civil Procedure §338(d) and related doctrines.

- Plaintiff only learned the full extent of the fraudulent filings in Ralph Struthers's name after his death, when she was able to trace back the origin of the September 2017 visit and connect it with the court filings later brought by attorney Stephen Derryberry. Plaintiff and her father did not know at the time that the documents Darlene and Belinda

attempted to get signed were actually part of a legal strategy to sue Plaintiff. It was only after Ralph created a new trust and after the lawsuit was dismissed that the scope of the fraud became clear. These facts justify tolling under California Code of Civil Procedure §338(d) and further support equitable tolling due to concealment and Plaintiff's reasonable diligence in pursuing the truth.

## IX. FEDERAL CLAIM EXHIBIT – TRUST DISTRIBUTION EXPLANATION

62. Based on extensive evidence, Plaintiff contends that the primary financial, emotional, and legal harm caused by J. Johnson, Kevin Lachona, and their associated firms was inflicted directly on Ralph C. Struthers. Ralph was stripped of access to his assets, his trust was manipulated, and his burial wishes were denied through mismanagement and court obstruction. These actions support full liability under California Welfare & Institutions Code §15657.5.

Accordingly, Plaintiff respectfully requests that the Court impose joint and several liability on all financially capable defendants — including Kevin Lachona, Lachona Law, J. Johnson, Hannah Johnson, and affiliated law firms — so that any and all damages may be collected in full from them. It shall be their legal burden, not the beneficiaries', to seek contribution from codefendants Belinda Connor, Julie Hatridge, and Carole Campbell.

This request is supported by:

• 42 U.S.C. §1983, which provides for civil liability for those acting under color of state law.

• Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988 — recognizing joint and several liability in §1983 claims involving conspiracies.

• Ach v. Finkelstein, 264 Cal.App.2d 667, 676 (1968) — stating "all who unite in a fraud are jointly liable".

• Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 511 (1994) — affirming that co-conspirators are jointly and severally liable for all damages from the conspiracy.

## I. DAMAGES TO RALPH C. STRUTHERS (Treble damages applied per California W&I Code §15657.5

1. Legal stress during stroke & MRSA recovery............................ $250,000 × 3 = $750,000

2. Denied rehab, post-discharge care, and primary doctor access... $400,000 × 3 = $1,200,000

3. Fraudulent incapacity letter (core to entire abuse................. $500,000 × 3 = $1,500,000

4. Wrongful cremation (burial blocked by court delays ............. $400,000 × 3 = $1,200,000

5. Divorce sabotage and financial withholding......................... $250,000 × 3 = $750,000

6. Attorney misconduct – Kevin Lachona................................ $500,000 × 3 = $1,500,000

7. Attorney misconduct – J. Johnson & Hannah Johnson............. $750,000 × 3 = $2,250,000

8. Trustee financial misconduct – Belinda, Julie, Carol.............. $812,500 (trebled elsewhere)

**Total Elder Abuse Damages to Ralph: $9,062,500**

**Total with treble multipliers (W&I Code §15657.5): $16,462,500**

**Ralph Elder Abuse Recovery Total (including 3x multiplier)**

## X. DAMAGES TO DARLENE STRUTHERS

    1.      Unauthorized trust use while in memory care....................... $75,000 × 3 = $225,000

    2.      Misuse of Darlene's signature to assign trustees.................. $100,000 × 3 = $300,000

    3. Life disruption and harm from being moved to a halfway house

        from a secured dementia facility...... ................. .................     $100,000 × 3 = $300,000

    4. General elder abuse & emotional neglect............................... $100,000 (not trebled)

**Total Damages to Darlene: $925,000**

These amounts are justified under California Welfare & Institutions Code §15657.5, which authorizes treble damages for elder financial abuse. From 2017 onward, Plaintiff was intentionally denied access to Darlene Struthers by Defendant Belinda Connor, who refused to allow Plaintiff to speak with or visit her stepmother despite repeated attempts. For years, Plaintiff did not know whether Darlene was alive or deceased. It was not until a deposition in 2024 that Plaintiff learned Darlene had been placed in a lower-level care facility, with no notice or disclosure. During this time, Darlene's identity was used to assign trustees, authorize attorney payments, and close accounts — all without her informed consent or awareness due to cognitive impairment. These acts of concealment, financial redirection, and isolation caused substantial harm, justifying enhanced damages.

**LaRonda Myers – Personal Civil Rights & Fiduciary Compensation: $1,250,000**

## XI. DAMAGES TO PLAINTIFF (LARONDA MYERS

1. Unpaid fiduciary labor (2017–2024) ........................................ $300,000

2. Emotional distress due to retaliation and exclusion.............. $250,000

3. Reputational harm from false claims and court suppression... $200,000

4. Legal costs and fronted trustee expenses............................. $250,000

5. Civil rights violations and due process obstruction............... $250,000

**Total Personal Damages to Plaintiff: $1,250,000**

This amount reflects the full scope of harm inflicted upon Plaintiff over the course of more than seven years, including:

- False allegations of elder abuse in the LA case filed in her father's name.

- Out-of-pocket advances made to maintain trust operations and court filings.

- Denial of accounting approvals despite multiple submissions and full compliance.

- Threats of removal as trustee despite following legal requirements under Probate Code and the 2020 Settlement Agreement.

- Emotional, financial, and civil rights harm stemming from court and attorney retaliation.

- Forged mediation agreement submitted without her consent.

- Uncompensated labor performed as fiduciary since 2017 to preserve and defend the trust, which otherwise would have been lost.

This adjustment corrects prior underestimations and demonstrates the long-term damage endured by Plaintiff in her efforts to protect both her father's legacy and the rightful inheritance of all non-offending beneficiaries.

## XII. FINAL TRUST ALLOCATION (BASED ON RALPH'S DAMAGES

63.    Total Trust Recovery (Ralph portion only): **$16,462,500**

Per the terms of the Ralph C. Struthers Trust:

•    **1/5 to each of the four daughters: Cheryl Struthers, LaRonda Myers, Diane Struthers, April Spaulding**

•    1/5 divided equally among 18 grandchildren

**Each Daughter's Share: $3,292,500**

**Each Grandchild's Share: $182,916.67**

## XIII. DECLARATION UNDER PENALTY OF PERJURY

I, LaRonda Myers, declare under penalty of perjury under the laws of the United States of America that the foregoing complaint and all facts stated herein are true and correct to the best of my knowledge and belief.

Executed on:

Auburn, California

Respectfully submitted,

_[signature]_

**LaRonda Myers, in Pro Se**

## XIV.  DECLARATION OF LARONDA MYERS

See Exhibit AW – Declaration of LaRonda Myers (relocated from Section XIV to Exhibit

Appendix for formatting and length compliance

## XV. EXHIBIT INDEX

In order to reduce the length of this Complaint and comply with filing requirements,

Plaintiff has moved the full Exhibit Index to the Exhibit Appendix. All exhibits are

referenced by letter and count as cited in this Complaint.

## XVI. DEFENDANT CONTACT INFORMATION

Kevin Lachona
2450 Venture Oaks Way
#200
Sacramento, CA  95833

Belinda Connor
3726 Malad Way
Tavares, FL 32778

Julie Hatridge
3504 Panorama Drive
Bakersfield, CA 93306

Carole Campbell
7409 Catlow Court
Fort Worth, Texas 76137

J. Johnson
Johnson, Murphy & Jones
928 W. Grand Ave.
Grover Beach, CA 93433

Hannah Johnson
Johnson, Murphy & Jones
928 W. Grand Ave.

Grover Beach, CA 93433

Kosta Demiris
Demiris Law Firm
1255 Treat Blvd, Suite 300
Walnut Creek, CA 94597

Scott Shuttleworth
Shuttleworth Law Offices
1515 Lincoln Way
Auburn, CA 95603

Commissioner Jacques
Placer County Superior Court
10820 Justice Center Drive
Roseville, CA 95678

Commissioner Holley
Placer County Superior Court
10820 Justice Center Drive
Roseville, CA 95678

Attorney Steven Derryberry
641 W. Lancaster Blvd, Suite 205
Lancaster, CA 93534

Mediator Doe 1
[Address and firm to be discovered in discovery]

Mediation Firm Doe 2
[Address to be discovered in discovery]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**LaRonda Myers,**
**Plaintiff,**
**v.**
**Kevin Lachona, et al.,**
**Defendants.**

**Case No:** _____

## DECLARATION REGARDING EXHIBIT ACCURACY AND SUPPLEMENTATION

I, LaRonda Myers, declare under penalty of perjury under the laws of the United States and the State of California that the following is true and correct:

The attached exhibits submitted in support of the Complaint are, to the best of my knowledge and belief, true and accurate reflections of events, communications, and records relevant to the claims asserted. Each exhibit is based on personal knowledge, documentation in my possession, or information obtained from individuals with firsthand involvement.

Due to the extensive volume of materials gathered over several years, some referenced items—including certain transcripts, communications, and supporting documents—have not yet been retrieved, scanned, or located at this time. I fully intend to produce these materials at trial or at the court's request, and I reserve the right to supplement the exhibits as discovery continues or as additional records are uncovered.

In cases where pending transcripts or records are noted, I am actively pursuing copies through proper legal channels. I affirm that I have not intentionally withheld any documents, and I submit this declaration to clarify and support the completeness and good faith basis of the Exhibit Appendix.

Executed this 11th day of July 2025, in Auburn, California.

LaRonda Myers
Plaintiff, In Pro Se

**EXHIBIT APPENDIX TO COMPLAINT**

[42 U.S.C. §1983; Elder Abuse; Fraud; Due Process Violations; Legal Malpractice]

Plaintiff LaRonda Myers, appearing in Pro Se, respectfully submits the following exhibits in support of her Complaint filed concurrently in this matter. These exhibits are organized by issue and legal count as referenced in the Complaint, and are identified by lettered tabs (Exhibits A through AV).

This Exhibit Appendix includes documentary evidence relating to:

- Trust manipulation and succession fraud
- Financial elder abuse of Ralph and Darlene Struthers
- Improper trust administration and billing practices
- Mediation coercion and forged agreements
- Violations of civil rights and due process
- Legal malpractice and procedural misconduct
- Improper denial of fiduciary access and court suppression

Dated: July 11, 2025
Respectfully submitted,

———————————————

LaRonda Myers
Plaintiff, In Pro Se
12060 Mont Vista Dr
(530) 320-1727
rondamyers@me.com


**FEDERAL EXHIBIT INDEX – A through AV**

| Exhibit | Description | Related Counts |
|---------|-------------|----------------|
| A | Draft version of 1993 Trust (pagination errors "24A", "35A", "35B") | Count 4 – Civil Conspiracy |
| B | Trustee Succession Chart (original vs. altered) | Count 4 |
| C | Ralph Struthers' sealed letter (via Don Gravalec) | Count 4, Count 5 |

| | | |
|---|---|---|
| D | Notary Anne Ridyard signature disputed (forged placement) | Count 3, Count 4 |
| E | Forged Don Gravalec signature placement | Count 3, Count 4 |
| F | Email from Belinda expressing Julie's concern over legality | Count 4 |
| G | Message from Diane confirming Belinda's trust edit intentions | Count 4 |
| H | Statement from Kevin Lachona re: Edward Lye status | Count 4 |
| I | Belinda's deposition citing trustee authority | Count 4 |
| J | Text showing Julie not named in health directive | Count 4 |
| K | Altered trust succession naming unauthorized parties | Count 4 |
| L | Timeline of Ralph's health post-stroke and recovery efforts | Count 3 |
| M | Belinda's 2024 depo excerpt on incapacity letter | Count 3, Count 4 |
| N | Belinda text saying Julie was not trustee | Count 4 |
| O | Julie's false court docs claiming trusteeship | Count 4 |
| P | Texts confirming manipulation of trust roles | Count 4 |
| Q | Email regarding coercion in opening trust safe | Count 4 |
| R | April Sharp concerns about Bosley mail from J. Johnson's office | Count 4, Count 5 |
| S | April Spaulding text re: trying to bury Ralph's body | Count 3, Count 4, Count 5 |
| T | July 7, 2017 incapacity letter by J. Johnson | Count 3 |
| U | Medical timeline: ER admission and ICU for MRSA | Count 3 |
| V | ICU diagnosis + documents | Count 3 |
| W | Affirmation of capacity by Ralph's doctors (Dr. Lai and Grunfeld) | Count 3 |

| X | Photos/messages showing Ralph's cognitive function | Count 3 |
|---|---|---|
| Y | Obstruction of Ralph's primary care access | Count 3 |
| Z | Funeral home letter: denial of embalming due to court delays | Count 6 |
| AA | April Spaulding "shame on you" message to Belinda | Count 6 |
| AB | Lack of embalming court order (court delay) | Count 6 |
| AC | Signed mediation agreement (coercive circumstances) | Count 5 |
| AD | Verbal rescind by Plaintiff & April post-mediation | Count 5, Count 2 |
| AE | Calendar showing week of depositions + mediation | Count 5 |
| AF | Messages expressing regret from April & niece | Count 5 |
| AG | Subpoena letter (Stephen Cross) showing Kevin's involvement | Count 1, Count 2 |
| AH | Evidence of Kevin rejecting or blocking subpoenas | Count 1, Count 2 |
| AI | Transcript request (Don's hearing aid & Plaintiff silenced) | Count 2 |
| AJ | Don Gravalec hearing aid issues | Count 2 |
| AK | COVID shutdown timeline and case delays | Count 7 |
| AL | Trust accountings filed by Plaintiff | Count 7 |
| AM | Proof of annual notices to beneficiaries | Count 7 |
| AN | Out-of-pocket trustee expenses by Plaintiff | Count 7 |
| AO | Family messages confirming Plaintiff's care of Ralph | Count 7 |
| AT | Belinda Connor denies access to Darlene's financials | Count 2, Count 3, Count 4, Count 7 |
| AU | Ralph's cognitive response + neglect on May 31, 2017 | Count 3, Count 4 |
| AV | Proof of $39,275.31 held by Scott Shuttleworth | Count 2, Count 7 |

**Exhibit AW – XIV.   DECLARATION OF LARONDA MYERS  Count 2, Count 3, Count 7**

**EXHIBIT INDEX BY CAUSE OF ACTION**

**COUNT ONE: Violation of Civil Rights (42 U.S.C. §1983)**

- Exhibit AG – Subpoena request for Costa Damaris records
- Exhibit AH – Kevin Lachona's written objection to subpoena and coordination with counsel
- Exhibit AI – Transcript (pending) showing Plaintiff being silenced in court
- Exhibit AJ – Transcript note (pending) regarding Don Gravalec's hearing aid malfunction
- Exhibit AK – COVID shutdown timeline impacting court access and management
- Exhibit AO – Text messages from family confirming Plaintiff's care of Ralph despite later trust manipulation

**COUNT TWO: Systemic Due Process Violations / 14th Amendment**

- Exhibit AG–AK (shared with Count One)
- Exhibit AL – Copies of Trust Accountings submitted by Plaintiff
- Exhibit AM – Proof of notice mailings to beneficiaries
- Exhibit AN – Plaintiff's out-of-pocket expenses
- Exhibit AQ – Scott Shuttleworth's $39,275.31 trust fund retention
- Exhibit AT – Belinda's denial of fiduciary access to Darlene's accounts
- Exhibit AV – Financial mismanagement related to Ralph's estate

**COUNT THREE: Elder Financial Abuse (Cal. W&I Code §15657.5)**

- Exhibit T – July 7, 2017 Incapacity Letter by J. Johnson
- Exhibit U – Timeline and hospital admission records (Auburn ER & ICU for MRSA)
- Exhibit V – Supporting ICU hospitalization and infection records
- Exhibit W – Statements from Dr. Lai & Dr. Grunfeld regarding capacity

- Exhibit X – Photos/messages showing Ralph's cognition; planned trial video of speech therapy
- Exhibit Z – Funeral home letter explaining cremation delay
- Exhibit AB – Transcript (pending) showing embalming discussion and reversal
- Exhibit AT – Documents showing Darlene made financial decisions after resignation
- Exhibit AU – May 31, 2017 text regarding Ralph's condition and support denial

## COUNT FOUR: Civil Conspiracy to Commit Fraud

- Exhibit A – Draft version of 1993 Trust showing altered pagination
- Exhibit B – Trustee Succession Comparison Chart
- Exhibit C – Ralph's sealed letter (via Don Gravalec) rejecting unauthorized trust
- Exhibit D – Notary Anne Ridyard stamp/signature forged
- Exhibit E – Forged Don Gravalec signature
- Exhibit F – Belinda email showing concern over legality
- Exhibit G – Diane's message regarding Belinda adding Julie
- Exhibit H – Kevin Lachona's statement re: Edward "Little Eddie" Lye
- Exhibit I – Belinda's deposition on trustee role
- Exhibit J – Julie not named in Darlene's directive
- Exhibit K – Forged trust pages naming Julie & Tara
- Exhibit L – Ralph's post-stroke activity contradicting incapacity
- Exhibit AQ – (also used in Count 2 and Count 7) mismanagement of funds

## COUNT FIVE: Mediation Coercion & Forged Agreement

- Exhibit AC – Coerced Mediation Agreement
- Exhibit AD – Verbal rescission call between Plaintiff, April, and attorney
- Exhibit AE – Calendar covering week of deposition and mediation
- Exhibit AF – Messages from April Sharp and niece expressing concern

- Exhibit R – April's message confirming Julie lacked authority
- Exhibit S – April's message regarding cremation conflict

## COUNT SIX: Systemic Due Process Violations by Court Administration

- Exhibit AG–AK – Subpoenas, transcript issues, and pandemic-related delays
- Exhibit AL – Plaintiff's trust accountings
- Exhibit AM – Annual notices to beneficiaries
- Exhibit AN – Trustee costs advanced by Plaintiff

## COUNT SEVEN: Legal Malpractice & Fiduciary Breach

- Exhibit AQ – Escrow retention of $39,275.31 by Scott Shuttleworth
- Exhibit AG – Blocked subpoena effort
- Exhibit AH – Kevin Lachona's coordination to shut down discovery
- Exhibit AN – Plaintiff's personal expenses not reimbursed
- Exhibit AO – Family texts confirming Plaintiff did all fiduciary duties

## XV. EXHIBIT INDEX

The following is a comprehensive index of exhibits referenced or intended to support the claims in Plaintiff's Complaint. Each item is assigned a sequential exhibit letter (Exhibit A, Exhibit B, etc.) and aligned with the corresponding causes of action (Counts 1–7) to assist the Court in reviewing the evidentiary foundation for each claim.

ExhibitDescription

1. **TRUST MANIPULATION & FRAUD** (Supports Count 4 – Civil Conspiracy to Commit Fraud)

- Exhibit A – Draft version of 1993 Trust (showing altered pagination: "22", "22", "24A", "35A", "35B", "35C"

- Exhibit B – Trustee Succession Chart Comparison

(Supports Count 4 – Civil Conspiracy to Commit Fraud)

To demonstrate how the original trustee succession structure of the Struthers Family Trust dated June 4, 1993 was altered without legal authority, the following comparison outlines the legitimate order confirmed by family members and the drafting attorney Don Gravalec, versus the disputed structure currently relied upon in court.

- Exhibit C – Sealed letter from Ralph C. Struthers, opened by Don Gravalec confirming disapproval of unauthorized trust changes

- Exhibit D – Statement from Original Notary Anne Ridyard

[Plaintiff has not yet obtained a formal written statement from Ms. Ridyard. However, Ms. Ridyard has verbally confirmed to Plaintiff and/or Plaintiff's attorney that she did not notarize the version of the 1993 Trust currently being presented in court. Plaintiff intends to call Ms. Ridyard as a witness at the evidentiary hearing.]

- Exhibit E – Statement from Trust Attorney Don Gravalec

[Plaintiff has not yet requested a formal written declaration from Mr. Gravalec, out of concern for avoiding undue influence. Mr. Gravalec has verbally confirmed to Plaintiff and the court that the current version of the 1993 Trust is not the document he originally drafted. Plaintiff intends to call Mr. Gravalec as a witness during the evidentiary hearing.]

- Exhibit F – Email from Belinda Connor stating Julie was nervous about violating the trust and would pay out-of-pocket for legal services

- Exhibit G – Email or message from Diane Struthers recalling Belinda's statement in July 2017 that she was going to put Julie on the trust

- Exhibit H – Letter or statement from Attorney Kevin Lachona asserting that Edward "Little Eddie" Lye is not a trustee, but only a beneficiary—contradicted by family text indicating Little Eddie held medical authority and Julie only held financial authority

- Exhibit I – Belinda Connor's deposition statement claiming trustee authority for herself and Julie due to Darlene's resignation—contradicted by years of family consensus that Darlene opposed Julie as trustee due to personal and religious differences

- Exhibit J – Text message stating Julie is not named in Darlene's advance health directive—contradicting later sworn statements by Belinda or Julie

- Exhibit K – Manipulated Trustee Succession Order (Unauthorized Inclusions)

I, LaRonda Myers, declare that I have reviewed all known versions and discussions surrounding the June 4, 1993 Struthers Family Trust and at no point did either of my parents—Ralph C. Struthers or Darlene Struthers—ever mention Julie Hatridge or Tara L. Conner as potential successor trustees.

My father openly disliked Julie and expressed strong opposition to her involvement in trust matters. Similarly, Darlene had long-standing conflicts with Julie and would not have named her in any legal or financial capacity. These sentiments were consistent throughout the years and were openly known within the family.

Their names were never discussed or documented in the original trust documents reviewed with attorney Don Gravalec. Their inclusion in the altered 1993 trust currently being relied upon in court is false and unauthorized.

I respectfully submit this declaration to preserve the family's shared knowledge and object to the fraudulent insertion of these individuals into the trust structure.

[Plaintiff does not currently possess a formal written document explicitly stating that Julie Hatridge and Tara Conner were never named as successor trustees. However, this fact is widely known among the Struthers family and confirmed through longstanding family discussions and the consistent recollection of both Ralph and Darlene Struthers during their lifetimes. Neither settlor ever referenced Julie or Tara as successor trustees in the original 1993 trust. Their sudden appearance in the disputed version represents the core of the current dispute. Plaintiff intends to testify to this fact at trial and present corroborating witness statements.]

- Exhibit L – Timeline and supporting documentation reflecting Ralph's recovery after his stroke in May 2017, and subsequent decline tied to actions taken by Defendants

2. **COERCION & UNAUTHORIZED TRUSTEE ACTIVITY** (Supports Count 4 & Count 5

- Exhibit M – Deposition Excerpt from Belinda Connor (2024)

This exhibit includes a key excerpt from Belinda Connor's 2024 deposition, showing her explanation for how she and Julie Hatridge came to take control over Ralph and Darlene Struthers using the July 7, 2017 incapacitation letter. The excerpt also demonstrates opposing counsel Kevin Lachona's repeated objections to basic yes/no questions, limiting Plaintiff's ability to obtain straightforward responses. This deposition segment directly relates to the fraudulent trust control shift that underpins the current dispute.

I, LaRonda Myers, declare that Exhibit M contains a critical excerpt from the 2024 deposition of Belinda Connor. During this portion of the testimony, Ms. Connor describes

how she and Julie Hatridge assumed control of trust affairs for Ralph and Darlene Struthers. This segment specifically discusses the July 7, 2017 letter declaring my father incapacitated, which was used to justify their takeover of financial and legal authority.

The excerpt also reflects repeated objections from opposing counsel Kevin Lachona to simple yes or no questions, which impaired my ability to obtain a full and clear record. These objections appeared intended to limit Belinda's ability to testify freely about how the incapacitation letter was created and used.

I believe this excerpt is crucial in establishing the fraudulent steps taken to remove my father's control and manipulate the structure of both the 1993 and 2017 Struthers Trusts.

- •     Exhibit N – Text message from Belinda Connor to April Spaulding stating that Julie Hatridge was not an original trustee

- •     Exhibit O – Julie Hatridge's signed court documents falsely asserting trusteeship (specific document to be identified)

- •     Exhibit P – Text from Cheryl or April confirming trust manipulation

- •     Exhibit Q – Email from LaRonda Myers to Carole Campbell regarding emotional impact of safe-opening incident and failure to visit sister Kay

- •     Exhibit R – April Sharp's message to Belinda stating Julie Hatridge was never given financial or medical authority and expressing concern over missing Bosley mail from J. Johnson's office

- •     Exhibit S – April Spaulding's message to Belinda stating she was trying to bury their father's body, not his ashes, and that the trust changes caused all of the chaos

**3. ELDER ABUSE & INCAPACITY FRAUD** (Supports Count 3 – Elder Financial Abuse

- Exhibit T – July 7, 2017 incapacitation letter notarized by J. Johnson

- Exhibit U – Medical Timeline & Hospital Records

**(Supports Count 3 – Elder Financial Abuse & Count 4 – Fraud)**

This exhibit includes documentation and a timeline showing that:

- **Ralph C. Struthers entered the emergency room at Auburn Faith Hospital on July 10, 2017**, and was **admitted on July 11, 2017**, with a diagnosis of **MRSA**.

- On **July 10 and 11, two doctors from Santa Maria**, who **never evaluated Ralph**, signed letters declaring him incapacitated.

- These letters were **faxed to attorney J. Johnson's office on July 12, 2017— after** Johnson had already notarized a declaration on **July 7, 2017**, falsely stating Ralph was incapacitated.

- At the time the Santa Maria doctors signed their letters and when Jay Johnson notarized the declaration, **Ralph was over six hours away in Auburn, California**, and none of these professionals had seen him in person.

This evidence supports the claim that Ralph's incapacitation letter was fraudulently prepared and used to strip him of trust control through **false pretenses** and **unverified medical opinions**.

I, LaRonda Myers, declare that Exhibit U contains records showing my father, Ralph C. Struthers, entered **Auburn Faith Hospital's emergency room on July 10, 2017**, and was **admitted on July 11, 2017** for **MRSA**.

At the same time, on **July 10 and 11, two doctors located in Santa Maria**, who had **no physical contact with Ralph and never evaluated him**, signed letters stating that Ralph was incapacitated. These letters were **faxed to J. Johnson's office on July 12, 2017.**

However, **J Johnson had already notarized an incapacitation declaration on July 7, 2017**, several days **before** any doctor submitted a letter. This notarization was not based on a valid medical evaluation and directly contradicts Ralph's actual location and condition.

Ralph was in **Auburn, California**, over six hours away from Santa Maria, and these doctors had **no legal or ethical basis** for declaring him incapacitated.

I submit this exhibit to demonstrate that the incapacitation letter relied on in trust proceedings was **false**, **premature**, and part of a **fraudulent scheme** to take control over my father's assets and override his estate planning intentions.

- Exhibit V – MRSA hospitalization and ICU admission documents
- Exhibit W – Statements from Dr. Lai and Dr. Gruenefeldt affirming Ralph's capacity
- Exhibit X – Photos and messages demonstrating Ralph's cognitive function post-stroke
- Exhibit Y – Documentation showing obstruction of Ralph's access to primary care

**4. WRONGFUL CREMATION / DENIAL OF BURIAL** (Supports Count 3 and Count 6 – Systemic Due Process Violations

- Exhibit Z – Letter from Hare to Oaks Funeral Chapel regarding cremation due to court delay (verbal confirmation only)

- Exhibit AA – Text from April Spalding to Belinda ("Shame on you… fake love")

- Exhibit AB – Verbal Agreement & Rescission of Embalming Permission

**(Supports Count 3 – Elder Financial Abuse & Count 6 – Due Process Violations)**

This exhibit pertains to the verbal communications surrounding **Ralph C. Struthers' embalming** following his death:

- During an **open court hearing** regarding Ralph's remains, **Plaintiff and her attorney requested permission to embalm Ralph**, in line with his known burial wishes.

- **Opposing counsel, Kevin Lachona, and his clients raised no objection at the hearing**, and the court acknowledged the request.

- **Based on this lack of objection**, Plaintiff's legal team **did not request a signed order**, relying instead on the verbal agreement.

- **After the hearing**, Plaintiff's attorney received a **phone call from Kevin Lachona**, stating that **they were rescinding the agreement** and no longer permitting embalming.

- **No court reporter was present** during this hearing, so the agreement and later rescission were **never preserved in the official court record**, leaving Plaintiff without legal recourse to enforce Ralph's burial wishes.

As a result, **Ralph was cremated against his express wishes**

I, LaRonda Myers, declare that during a court hearing concerning the right to handle my father's remains, **my legal counsel and I formally requested that Ralph C. Struthers be embalmed**, in accordance with his documented wish to be buried.

At the time, **Kevin Lachona and his clients voiced no objection** in open court. Based on that, we **did not request a formal court order** for embalming, trusting the agreement on the record.

However, **following the hearing**, my attorney called me and said he had just received a **phone call from Kevin Lachona**, who said that they were **rescinding their permission** and would **no longer allow Ralph to be embalmed**.

Because **there was no court reporter present** and the rescission occurred outside the courtroom, we had **no legal documentation** to enforce embalming.

As a result, Ralph was **cremated**, against his written and verbal instructions. This event was **deeply traumatic**, and I include this declaration to explain the events surrounding Exhibit AB and why no formal transcript exists.

I respectfully include this exhibit and declaration to show that the denial of embalming occurred through verbal manipulation, not lawful process, and directly harmed Ralph's final wishes and my rights as his fiduciary.

## 5. MEDIATION COERCION & FORGED AGREEMENT (Supports Count 5 – Mediation Coercion & Forged Agreement

- Exhibit AC – Mediated agreement signed under duress

- Exhibit AD – Verbal and On-Record Rescission of Mediation Agreement (Transcript Pending)

(Supports Count 5 – Mediation Coercion and Forged Agreement)

- Plaintiff and her niece initially rescinded consent to the mediation agreement during a post-session phone call with counsel.

- Plaintiff later formally rescinded the agreement in open court, explaining she had signed under duress, exhaustion, and confusion.

- During the hearing, Plaintiff told the judge she opposed using estate funds to pay third-party attorneys, particularly for counsel representing the opposing side who initiated the litigation.

- Plaintiff referenced her own legal research, citing that such payments violate Probate and fiduciary rules.

- The judge agreed with Plaintiff's position and did not enforce the mediation agreement—effectively validating her objections.

- Plaintiff is in the process of requesting the court transcript documenting her rescission and the court's agreement.

- This transcript will demonstrate that Plaintiff acted in good faith, relied on legal authority, and was supported by the court when she objected to unlawful settlement terms.

    I, LaRonda Myers, declare that following the mediation, I verbally rescinded consent to the agreement during a phone call with my attorney and my niece. I later formally told the court in open session that I did not agree to the terms and had signed under emotional exhaustion and confusion after a 14.5-hour mediation.

    I also informed the court that, based on my legal research, it would be unlawful to use estate funds to pay attorney's fees for a third-party trust dispute, particularly where the opposing counsel initiated the case against us. I expressed that I did not understand why the trust or estate should bear

the burden of such fees, and that I believed the settlement terms were legally improper and harmful to beneficiaries.

The judge agreed with my rescission and allowed the agreement to be revoked. I am requesting the transcript of that hearing to include it with this exhibit.

This exhibit supports my claim that the mediation agreement was never fully authorized, and that even the court recognized its legal flaws and coercive nature.

- Exhibit AE – Calendar showing week of depositions and mediation
- Exhibit AF – Messages from April Sharp or niece expressing concern after signing

**6. OBSTRUCTION OF COURT & DISCOVERY** (Supports Count 1 and Count 2 – 42 U.S.C. §1983 & 14th Amendment Violations

- Exhibit AG – Subpoena request for Kosta Demiris records
- Exhibit AH – Documentation showing Kevin Lachona's rejection of subpoenas
- Exhibit AI – Transcript or notes showing Plaintiff being silenced in court
- Exhibit AJ – Note Regarding Don Gravalec's Hearing Aid Malfunction During Court Hearing

**(Supports Count 1 – Civil Rights under 42 U.S.C. §1983 and Count 2 – 14th Amendment Due Process Violations)**

- This exhibit refers to a **court hearing in which Plaintiff's retained counsel, Don Gravalec, was present but experiencing significant difficulty due to a malfunctioning hearing aid**.

- During this hearing, **opposing counsel Kevin Lachona made inaccurate or misleading statements to the court**, which Plaintiff attempted to clarify or rebut.

- However, **Commissioner Jacques refused to allow Plaintiff to speak**, stating that because she had legal counsel, she was not permitted to address the court directly—even though her attorney could **not hear the proceedings clearly**.

- This **denial of opportunity to be heard** while her attorney was functionally impaired constitutes a violation of Plaintiff's **right to meaningful representation** and **right to be heard under the 14th Amendment**.

- Plaintiff believes the **court reporter's transcript will reflect this incident**, including the court's refusal to let Plaintiff respond despite the attorney's difficulty.

- Plaintiff is requesting the official transcript to complete this exhibit and verify the full record.

I, LaRonda Myers, declare that during one of the court hearings in which I was represented by my attorney, Don Gravalec, he experienced a malfunction with his hearing aid and was unable to hear the proceedings clearly. I attempted to speak up to correct misleading statements being

made by opposing counsel Kevin Lachona, but Commissioner Jacques refused to allow me to speak, stating that I was represented and could not address the court directly.

Because my attorney could not hear what was happening, this effectively left me unrepresented and unable to respond to false information presented in court. I believe this incident is a violation of my due process rights and will be reflected in the court reporter's transcript, which I intend to obtain and submit with this exhibit.

I respectfully ask the Court to recognize that my constitutional right to participate meaningfully in the proceeding was denied.

- Exhibit AK – COVID-19 Court and Legal Shutdown Timeline (2020–2021)

**(Supports Count 6 – Systemic Due Process Violations & Count 7 – Legal Malpractice)**

- This exhibit refers to the widespread court and legal office closures caused by the **COVID-19 pandemic between 2020 and 2021**.

- Although the court is aware of these closures, this timeline is provided to **document how the pandemic directly impacted Plaintiff's ability to retain legal support, submit filings, access hearings, and communicate with counsel**.

- **Attorney Scott Shuttleworth, who had just received escrow funds from the trust**, left the case shortly after the shutdown began and did not return for nearly a year.

- During this time, Plaintiff was left without active legal representation and faced significant delay in trust administration, filings, and discovery.

- This disruption caused:
    - Missed legal opportunities
    - Delayed reimbursement for escrow funds
    - Inability to recover damages during a critical legal window

- Plaintiff includes this exhibit not to dispute the pandemic's impact generally, but to show how the shutdown **interacted with legal abandonment and procedural obstruction** to further damage her case and her role as fiduciary.

I, LaRonda Myers, declare that the COVID-19 court and law office shutdowns in 2020 and 2021 severely impacted my ability to carry out fiduciary duties, pursue legal redress, and obtain representation.

Attorney Scott Shuttleworth, who had just received over $39,000 in escrow from the trust, left the case shortly after the shutdown began and did not return for nearly a year. During that time, I had no effective legal counsel and was unable to recover the trust funds he retained.

I include this exhibit not to challenge the court's awareness of the pandemic, but to document that the shutdown directly caused delays, loss of representation, and ongoing financial damage to the trust. This is relevant to my claims of legal malpractice and due process obstruction.

**7. ACCOUNTINGS & TRUST COMPLIANCE** (Supports Count 2 and Count 7)

- Exhibit AL – Copies of trust accountings submitted by Plaintiff

- Exhibit AM – I **fulfilled my fiduciary duty** by **notifying all trust beneficiaries** about:

  - Trust accountings

  - Petitions

  - Hearing dates

  - Distributions (or delays in distributions)

- Exhibit AN – Out-of-Pocket Costs Advanced by Plaintiff

**(Supports Count 7 – Legal Malpractice and Breach of Fiduciary Duty, and Count 2 – Due Process Violations)**

This exhibit includes:

- **Recent bank records** showing deposits Plaintiff made into the Ralph C. Struthers Trust account after it was depleted by attorney Kosta Demiris's excessive billing.

  - **Plaintiff's sworn declaration** that she has consistently used personal funds to cover trust obligations since 2017, and intends to present the full financial record at hearing or trial.

I, LaRonda Myers, declare as follows:

I have personally deposited thousands of dollars into the Ralph C. Struthers Trust account to cover legal fees, administrative costs, and obligations to beneficiaries and creditors.

These contributions began during my father's life, prior to his death in 2017, and have continued regularly to this day.

After attorney Kosta Demiris depleted trust funds through excessive billing—with invoices totaling over $54,000 in under one year—I personally funded the trust to avoid default and maintain its operations.

At this time, I am submitting recent bank records that clearly show deposits I made following the trust's depletion. I am in the process of reviewing my earlier records, including payments made directly to attorney Scott Shuttleworth and other trust-related expenses before and after my father's death.

I will present a full, itemized report at the trial, but this exhibit demonstrates that I consistently acted in good faith, fulfilling my fiduciary duty and protecting the trust using personal funds when others refused to contribute.

I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct.

Executed on: July 10, 2025

Auburn, California

Signed:

_____

LaRonda Myers

• Exhibit AO – Messages from family confirming Plaintiff's care for Ralph, despite later manipulation by opposing parties

• Exhibit AP– **July 11 Hearing Email Exchange**

I, LaRonda Myers, declare under penalty of perjury that the attached Exhibit AP is a true and correct copy of my email exchange with co-trustee April Sharp regarding the July 11, 2025, hearing. I attempted in good faith to retain legal counsel for both of us and asked April if she wanted to be included in the continuance request. She refused and instead criticized my legal efforts—even though she had supported my previous attorneys, including Kosta Damaris and Scott Shuttleworth, until evidence of overbilling emerged.

In fact, the last attorney I retained was Don Gravalec, who had previously drafted the original trust. Don later explained that he would be a better witness than legal counsel in this matter and therefore resigned. I respected that decision and have continued trying to find appropriate representation.

April's refusal to seek legal help, participate in arbitration, or sign necessary documents—including bar complaints—has harmed the trust, delayed administration, and conflicted with her fiduciary duties. Her opposition to basic protective steps like requesting a continuance has placed undue pressure on me as co-trustee and continues to create conflict that is exploited by opposing counsel.

Executed on July 10, 2025, in Auburn, California.

LaRonda Myers

Co-Trustee

## Exhibit A

Draft version of the 1993 Trust showing altered pagination ("22". "22", "24A", "35A", "35B", "35C")

(xiii)  If Cody James Luerra ("Cody"), the grand-son of Ralph C. Struthers, survives the surviving settlor, the trustee shall distribute the share created for Cody outright to him if he has reached the age of twenty-five (25) years at the time of the death of the surviving settlor.  If Cody survives the surviving settlor but has not reached the age of 25 years at the time of the death of the surviving settlor, the share created for Cody shall be held, administered, and distributed by the trustee, in trust, according to the terms set forth in Article Six applicable to the Trust for Cody.

(xiv)  If Amber Spaulding ("Amber"), the grand-daughter of Ralph C. Struthers, survives the surviving settlor, the trustee shall distribute the share created for Amber outright to her if she has reached the age of twenty-five (25) years at the time of the death of the surviving settlor.  If Amber survives the surviving settlor but has not reached the age of 25 years at the time of the death of the surviving settlor, the share created for Amber shall be held, administered, and distributed by the trustee, in trust, according to the terms set forth in Article Six applicable to the Trust for Amber.

[handwritten: Elaine]

(xv)  If Brittany Jane Spaulding ("Brittany"), the grand-daughter of Ralph C. Struthers, survives the surviving settlor, the trustee shall distribute the share created for Brittany outright to her if she has reached the age of twenty-five (25) years at the time of the death of the surviving settlor.  If Brittany survives the surviving settlor but has not reached the age of 25 years at the time of the death of the surviving settlor, the share created for Brittany shall be held, administered, and distributed by the trustee, in trust, according to the terms set forth in Article Six applicable to the Trust for Brittany.

(aa)  If any of the above-referenced individuals fails to survive the surviving settlor, that person's share shall lapse and be equally distributed among the survivors of them pursuant to the terms and conditions of their Trust.

(c)  The other share shall be divided into as many shares of equal market value as are necessary to create and distribute one share in Trust for each of the following then-living individuals under the terms and conditions set forth below:

THE STRUTHERS FAMILY 1993 REVOCABLE TRUST

[handwritten: typed]

PAGE 22

THE STRUTHERS FAMILY 1993 REVOCABLE TRUST CORRECTIONS

**Courtney**

(xvi)    If Cortney Jewel Spaulding ("Cortney"), the grand-daughter of Ralph C. Struthers, survives the surviving settlor, the trustee shall distribute the share created for Cortney outright to her if she has reached the age of twenty-five (25) years at the time of the death of the surviving settlor. If Cortney survives the surviving settlor but has not reached the age of twenty-five (25) years at the time of the death of the surviving settlor, the share created for Cortney shall be held, administered, and distributed to her by the trustee, in trust, according to the terms set forth in Article Six applicable to the Trust for Cortney.

**Seamus**

(xvii)    If Cheamus Patrick Campbell ("Cheamus"), the grand-son of Ralph C. Struthers, survives the surviving settlor, the trustee shall distribute the share created for Cheamus outright to him if he has reached the age of twenty-five (25) years at the time of the death of the surviving settlor. If Cheamus survives the surviving settlor but has not reached the age of twenty-five (25) years at the time of the death of the surviving settlor, the share created for Cheamus shall be held, administered, and distributed to him by the trustee, in trust, according to the terms set forth in Article Six applicable to the Trust for Cheamus.

**Benjamin**

(xviii)    If Benjaman Warren Spaulding IV ("Benjaman"), the grand-son of Ralph C. Struthers, survives the surviving settlor, the trustee shall distribute the share created for Benjaman outright to him if he has reached the age of twenty-five (25) years at the time of the death of the surviving settlor. If Benjaman survives the surviving settlor but has not reached the age of twenty-five (25) years at the time of the death of the surviving settlor, the share created for Benjaman shall be held, administered, and distributed to him by the trustee, in trust, according to the terms set forth in Article Six applicable to the Trust for Benjaman.

*added grandkids*

*??*

Ralph C. Struthers
Settlor and Trustee

Darlene L. Struthers
Settlor and Trustee

*added*

THE STRUTHERS FAMILY 1993 REVOCABLE TRUST

PAGE : 22

# THE STRUTHERS FAMILY 1993 REVOCABLE TRUST CORRECTIONS

(x)    If Jeramy Micheal Lye ("Jeramy"), nephew of Darlene Struthers, survives the surviving settlor, the trustee shall distribute the share created for Jeramy outright to him if he has reached the age of twenty-five (25) years at the time of the death of the surviving settlor. If Jeramy survives the surviving settlor but has not reached the age of twenty-five (25) years at the time of the death of the surviving settlor, the share created for Jeramy shall be held, administered, and distributed to him by the trustee, in trust, according to the terms set forth in Article Six applicable to the Trust for Jeramy.

Added nephew

_Ralph C. Struthers_
Ralph C. Struthers
Settlor and Trustee

??

_Darlene Struthers_
Darlene L. Struthers
Settlor and Trustee

Added

THE STRUTHERS FAMILY 1993 REVOCABLE TRUST

PAGE: 24 A

## THE STRUTHERS FAMILY 1993 REVOCABLE TRUST CORRECTIONS

**6.26.1  Trust for Cortney Jewel Spaulding.**  The trustee shall hold, administer, and

*Courtney*

distribute the assets of the Trust for Cortney as follows:

**(A)  No Payment of Income or Principal.**  At no time during the trust term shall the trustee pay to or apply for the benefit of Cortney, any of either the net income or principal of the trust for any reason whatsoever.  The trustee shall have no discretion to make any payment to Cortney except as set forth in 6.26.1(b) below.  The trustee shall accumulate and add to principal all net income not distributed.

*Added grandkid*

**(B)  Distribution Upon Termination.**  The trust shall terminate upon Cortney reaching the age of twenty-five (25) years or upon her death, whichever occurs first.  If the trust terminates upon Cortney reaching the age of 25 years, the trustee shall pay over and deliver all the property subject to the trust, (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) to Cortney.

**(C)   Final Disposition.**   If the trust property is not completely disposed of by the preceding provisions,  the undisposed of portion shall be distributed outright as follows:  one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.

*Seamus*

**6.26.2  Trust for Cheamus Patrick Campbell.**  The trustee shall hold, administer, and distribute the assets of the Trust for Cheamus as follows:

*Added grandkid*

**(A)  No Payment of Income or Principal.**  At no time during the trust term shall the trustee pay to or apply for the benefit of Cheamus, any of either the net income or principal of the trust for any reason whatsoever.  The trustee shall have no discretion to make any payment to Cheamus except as set forth in 6.26.2(b) below.  The trustee shall accumulate and add to principal all net income not distributed.



Ralph C. Struthers
Settlor and Trustee

?? 

Darlene L  Struthers
Settlor and Trustee

added

THE STRUTHERS FAMILY 1993 REVOCABLE TRUST

PAGE : 35 A

## THE STRUTHERS FAMILY 1993 REVOCABLE TRUST CORRECTIONS

Seamus

(B) **Distribution Upon Termination.** The trust shall terminate upon Cheamus reaching the age of twenty-five (25) years or upon his death, whichever occurs first. If the trust terminates upon Cheamus reaching the age of 25 years, the trustee shall pay over and deliver all the property subject to the trust, (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) to Cheamus.

(C) **Final Disposition.** If the trust property is not completely disposed of by the preceding provisions, the undisposed of portion shall be distributed outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.

added nephew

6.26.6 **Trust for Jeramy Micheal Lye.** The trustee shall hold, administer, and distribute the assets of the Trust for Jeramy as follows:

(A) **No Payment of Income or Principal.** At no time during the trust term shall the trustee pay to or apply for the benefit of Jeramy, any of either the net income or principal of the trust for any reason whatsoever. The trustee shall have no discretion to make any payment to Jeramy except as set forth in 6.26.3(b) below. The trustee shall accumulate and add to principal all net income not distributed.

(B) **Distribution Upon Termination.** The trust shall terminate upon Jeramy reaching the age of twenty-five (25) years or upon his death, whichever occurs first. If the trust terminates upon Jeramy reaching the age of 25 years, the trustee shall pay over and deliver all the property subject to the trust, (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) to Jeramy.

(C) **Final Disposition.** If the trust property is not completely disposed of by the preceding provisions, the undisposed of portion shall be distributed outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.



??

Ralph C. Struthers
Settlor and Trustee

Darlene L Struthers
Settlor and Trustee

added page

PAGE: 35.B

THE STRUTHERS FAMILY 1993 REVOCABLE TRUST CORRECTIONS

6.26.4 Trust for Benjaman Warren Spaulding IV The trustee shall hold, administer, and distribute the assets of the Trust for Jeramy as follows:

added grandkid

(A) No Payment of Income or Principal. At no time during the trust term shall the trustee pay to or apply for the benefit of Benjaman, any of either the net income or principal of the trust for any reason whatsoever. The trustee shall have no discretion to make any payment to Benjaman except as set forth in 6.26.4(b) below. The trustee shall accumulate and add to principal all net income not distributed.

(B) Distribution Upon Termination. The trust shall terminate upon Jeramy reaching the age of twenty-five (25) years or upon his death, whichever occurs first. If the trust terminates upon Benjaman reaching the age of 25 years, the trustee shall pay over and deliver all the property subject to the trust, (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) to Jeramy.

(C) Final Disposition. If the trust property is not completely disposed of by the preceding provisions, the undisposed of portion shall be distributed outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.



?? 

Ralph C. Struthers
Settlor and Trustee

Darlene L. Struthers
Settlor and Trustee

added

PAGE: 35C

THE STRUTHERS FAMILY 1993 REVOCABLE TRUST

# Exhibit B

Trustee Succession Visual Chart comparing the original June 4, 1993 Struthers Family
Trust structure to the manipulated version presented by Defendants

**EXHIBIT B**
**TRUSTEE SUCCESSION STRUCTURE COMPARISON**

This chart compares the original trustee succession structure of the Struthers Family Trust dated June 4, 1993, as understood by family members and confirmed by drafting attorney Don Gravalec, versus the disputed version currently presented in court. The altered structure includes individuals never named or contemplated in the original trust and contradicts Ralph and Darlene Struthers' documented intent.

ORIGINAL TRUSTEE SUCCESSION STRUCTURE

Ralph Struthers Side

• Ralph C. Struthers (primary trustee)
• Darlene Struthers (alternate if Ralph is incapacitated)
• Belinda Connor (if Darlene cannot act)
• April Sharp (if Belinda cannot act)

Darlene Struthers Side

• Darlene Struthers (primary trustee)
• Ralph C. Struthers (alternate if Darlene is incapacitated)
• Francis Edward Lye (Darlene's brother – deceased 2010)
• Edward George Lye (Francis's son – secondary successor)

Note: Neither Julie Hatridge nor Tara Conner was ever named or discussed as trustees in the original version.

DISPUTED TRUSTEE STRUCTURE

Phony Succession Order

• Julie Hatridge (co-trustee)
• Belinda Connor (co-trustee)
• Edward George Lye
• Francis Edward Lye
• April Sharp
• Tara L. Conner (Belinda's daughter — never named in original trust)

**New iMessage**                    **Cancel**

To: Belinda Connor & 1 more...

Sep 8, 2017, 12:13 PM

Belinda Connor

I think it's going to tell everyone that it is the original trust and will. Also what the trustees duties are.

B

April Spaulding

So Julie isn't on it anymore and it's back little Eddie ?

A

Hi dad's and Darlene's lawyer is sending a letter out to everyone. I guess April Sharp is still concerned that the trust and will has been changed since she sent a second letter stating that.  The trust and will is the original not one word has been added or deleted.  Anyhow keep your eyes open for it. They have said they were sending letters before and nothing was ever sent except just to April Sharp



Thu, Sep 7, 8:11 PM

April Sharp

Great, I look forward to matching the one the lawyer sends me, to the one that grandpa sent and went over with me. Julie is NOT named as a dissuasion maker for health OR financial for Darleen. So something isn't right. Glad the lawyer is sending it to everyone. That's great news.



Fri, Sep 8, 9:51 AM

April Spaulding

 What is the lawyer sending in letter

Fri, Sep 8, 12:19 PM

Belinda Comer

I think it's going to tell everyone that it is the original trust and will. Also what the trustees duties are.



April Spaulding

So Julie isn't on it anymore and it's back little Eddie ?



Belinda Comer

 Julie is not on as Darlenes advanced 

 **April Spaulding**                    7/3/19

To: Belinda Connor & 22 more... ›

**Belinda**
**I know you change the trust because of what my dad told me in 1993 how it was wrote up and now I know why he did! That is NOT! the original trust! that is your "revenge trust"! that's what I call it ! I will pray that somewhere and somehow their original trust will show up so I could prove how you lied to your whole family! shifted the blame on someone that didn't deserve it. Shame on you! You told me the kids that were born after 1993 they were only just wrote on the front cover of Dad & Darlene's original wet ink trust. So another lie! You're getting really good at lying...I'll have to say you almost had me fooled for about half a day. #fake love!!!!**

**April Spaulding**

# Exhibit C

Sealed letter from Ralph C. Struthers, opened by Don Gravalec confirming disapproval of unauthorized trust changes

Sealed by Notary - to be opened on death of Ralph C. Struthers

Sharon Walter

# FIRST AMENDMENT TO THE
# RALPH C. STRUTHERS REVOCABLE TRUST
## Established October 22, 2017

**RALPH C. STRUTHERS**, settlor and trustee of the **RALPH C. STRUTHERS REVOCABLE TRUST** established October 22, 2017, does hereby amend said trust in the following particulars:

In every instance where the following matters are identified, the following replaces that information:

1.     The name of my childrens' mother to be corrected as follows: ERMA LOU STRUTHERS.

2.     If any beneficiary named in my trust is found to have been a party to changing my Struthers 1993 Trust, that beneficiary is removed as a beneficiary from my Ralph Struthers 2017 Trust.

3.     The share of my granddaughter, LEAH MARIE GULLIKSEN, (Charlotte Kay's daughter), shall be divided into three shares, one each for LEAH MARIE GULLIKSEN, RYAN EMILY GULLIKSEN and NATHAN DAIELE EVANS.  The share for LEAH MARIE GULLIKSEN shall be given to her outright.  The shares for RYAN EMILY GULLIKSEN and NATHAN DAIELE EVANS shall be held in trust (savings bonds) until they reach the age of *18* .

4.     In the event there is any disagreement between my family, my daughter, LARONDA MYERS, will have the final decision as to my final resting place.

5.     In the event that LARONDA MYERS has not been reimbursed for the funeral expenses of my disabled daughter, CHARLOTTE KAY, or expenses she incurred taking care of me prior to my death, she is to receive reimbursement in full from my trust before any other distributions are made.

In all other respects, the undersigned settlor and trustee reaffirms and ratifies the aforementioned trust.

The undersigned settlor certifies that he has read the foregoing trust amendment and that it correctly states the amended  terms and conditions under which the trust estate is to be held, managed, and disposed of by the trustees.

Dated: March 1, 2019

_____
**RALPH C. STRUTHERS,**
Settlor and Trustee

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA    )
                        ) ss.
COUNTY OF PLACER       )

On March 1, 2019, before me, Sharon Walter, a Notary Public, appeared RALPH C. STRUTHERS, proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entities upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Sharon Walter*
Notary Public, State of California

SHARON WALTER
Commission # 2131153
Notary Public - California
Placer County
My Comm. Expires Nov 19, 2019

## DECLARATION

I, RALPH STRUTHERS, make the following declaration to be used in the event of my death for purposes of settling my estate thereafter:

1. I have been married to Darlene Struthers since 1968 but am involved in a pending dissolution process;

2. In 1974, Darlene and I purchased the real property at 39523 Calle El Fuente in Santa Clarita, California, which consisted of the house and a vacant lot next to the house.

3. We also purchased a burial plot on December 5, 1989 (Plot G333) at Laurel Glenhaven Memorial Park in San Francisco, California, which was purchased for the sole purpose of our being interred after our respective deaths.

4. I just recently became aware of the following facts:

   A. On March 16, 1990, without my knowledge or agreement, Darlene Struthers gifted the property at 39523 Calle El Fuente to her brother, Francis Edward Lye;

   B. The property taxes for the property (house and vacant lot) were sent to Stephanie Lye, wife of Francis Edward Lye, for payment to the Tax Assessor. I recently found out that for the last year and a half, the taxes have not been paid and were delinquent on the tax rolls;

   C. That Darlene Struthers' buried her mother, Mary Frances Lye, in our burial plot at Glenhaven Memorial Park. My understanding was that Mary Frances Lye purchased a plot next to ours, but nevertheless, Darlene Struthers buried her in our plot;

   D. That Mary Frances Lye, using her own birth date, obtained automobile insurance coverage on our policy under the alias of "Mary Struthers". Mary Struthers does not exist.

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct.    EXECUTED at Auburn, California, on March 1, 2019.

Witnessed By:

_Sharon Walter_

_____

RALPH STRUTHERS

SHARON WALTER
PO Box 275
Weimar, CA
(916) 607-4721

**EXHIBIT D**

**Title:** Forged Notary Stamp and Signature – Anne Ridyard
**Supports:** Count Three – Elder Financial Abuse | Count Four – Fraud

This exhibit presents a copy of the notary signature and seal of **Anne Ridyard**, which appears on the altered version of the 1993 Trust. Plaintiff asserts that this notary seal was **forged** and affixed without the notary's knowledge or consent. According to verbal statements relayed by Don Gravalec, Anne Ridyard confirmed she **did not notarize this trust document** and that the signature and stamp appear to have been **pulled from prior documents and digitally affixed** to the altered version.

Anne Ridyard has expressed **willingness to testify voluntarily** at an evidentiary hearing. Plaintiff has deliberately refrained from personally contacting her to avoid any implication of witness tampering and will rely on future legal counsel to handle formal witness coordination.

**EXHIBIT D – Notary Signature Page (Anne Ridyard)**

**Supports Count 3 – Elder Financial Abuse**
**Supports Count 4 – Civil Conspiracy to Commit Fraud**

This exhibit includes the signature page of the June 4, 1993 Trust that was allegedly notarized by Anne Ridyard. Plaintiff, LaRonda Myers, has not spoken directly to Ms. Ridyard. However, Don Gravalec, the original drafting attorney, personally informed Plaintiff that Ms. Ridyard stated to him she did not notarize this version of the trust.

The exhibit is provided for the purpose of identifying the allegedly forged notary stamp and signature. Plaintiff has not requested a written declaration from Ms. Ridyard and has intentionally refrained from contacting her further in order to avoid any suggestion of witness tampering. Plaintiff intends for her attorney to handle all future contact and any formal declarations.

The presence of Belinda Connor and Julie Hatridge's names on this page is also highly suspicious, as these individuals were not included in the original trust succession. The authenticity of this page is disputed and will be addressed in full during the evidentiary hearing.

(E) that we will forever warrant and defend the same against the lawful claims and demands of all persons whomsoever.

We declare the foregoing to be true and correct and that this assignment was executed on June 4, 1993, at Redding, California.

*Ralph C. Struthers*
Ralph C. Struthers

??

*Darlene L. Struthers*
Darlene L. Struthers

## ACKNOWLEDGMENT

STATE OF CALIFORNIA    )
COUNTY OF SHASTA       )
                       )

On this ___4th___ day of ___June___, 1993, before me, a notary public in and for the State of California, personally appeared Ralph C. Struthers and Darlene L. Struthers, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument, and acknowledged to me that they executed the same in their individual capacities, and that by their signatures on the instrument, the persons executed the instrument. WITNESS my hand and official seal.

Signature _____Ann E. Ridyard_____    (SEAL)
            Notary Public        ?

OFFICIAL NOTARY SEAL
ANN E RIDYARD
Notary Public — California
SHASTA COUNTY
My Comm. Expires JUN 20, 1995

she
will
testify

THE STRUTHERS FAMILY 1993 REVOCABLE TRUST                    PAGE 52

**EXHIBIT E**

**Title:** Forged Signature – Don Gravalec, Original Trust Attorney
**Supports:** Count Three – Elder Financial Abuse | Count Four – Fraud

This exhibit contains the signature of attorney **Don Gravalec**, which appears on the altered version of the 1993 Trust. Based on personal conversations with Mr. Gravalec, Plaintiff confirms that he stated the version in question was **not drafted or executed by him**, and that his signature appears to have been **pulled from prior legal work and affixed without authorization**.

Mr. Gravalec has also confirmed he is **willing to testify voluntarily** at an evidentiary hearing. Plaintiff has not submitted a formal declaration to preserve the neutrality of testimony. Plaintiff has not personally contacted Mr. Gravalec about testifying and will defer to retained counsel to handle those arrangements to ensure no appearance of undue influence.

**Exhibit E**

Don Gravalec's statement confirming the current 1993 trust was not the version he drafted (anticipated testimony at evidentiary hearing)

## TRUST SUMMARY DECLARATION

| | |
|---|---|
| **Name of Settlors:** | Ralph C. Struthers<br>Darlene L. Struthers |
| **Name of Trustees:** | Ralph C. Struthers<br>Darlene L. Struthers |
| **Name of Co-Successor Trustees:** | Belinda Lou Connor and<br>Julia Lynn Hatridge |
| **Name of Primary Beneficiaries:** | Ralph C. Struthers<br>Darlene L. Struthers |
| **Trust I.D. Number:** | 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 |
| **Trust Taxable Year:** | Calendar Year |

**Title of Trust Assets:  Ralph C. Struthers and Darlene L. Struthers, Trustees for *The Struthers Family 1993 Revocable Trust,* dated June 4, 1993.**

Selected Trust Pages: Copies of selected pages of the Trust Declaration are attached hereto, showing the face page of the Trust, the designation of Trustees, the Trustees' powers, the Settlors' signatures, and the acknowledgment of each of the signatures. Such copies are true and correct copies of the original pages and the omitted pages of the Trust Declaration deal only with administrative and dispositive provisions and are held to be confidential. **THIS TRUST DECLARATION HAS NOT BEEN REVOKED.**

Third Party Exoneration: Anyone dealing with the Trustee or Successor Trustee may rely on this Declaration and the pages attached hereto, need not inquire into any other pages, and may assume no revocation or amendment or change in the Trusteeship, in the absence of actual knowledge to the contrary.

We declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this Trust Declaration was signed on June 4, 1993, at Redding, California.

_signature_

Donald G. Gravalec
Attorney for Settlors
and Trustees

_signature_

Ann E. Ridyard
Witness

_signature_

Ralph C. Struthers
Settlor and Trustee

_signature_

Darlene L. Struthers
Settlor and Trustee

**Exhibit F**

Email from Belinda Connor stating Julie was nervous about violating the trust and would pay out-of-pocket for legal services





**April Spaulding**

family should be there
to represent us. She
said she was
extremely nervous
about violating the
terms of the trust. It

# Sat. Jul 29. 2017

**Delivered**

**of not talking about it.**

I love you too. I'm just
really stressed out.
Julie made the
appointment with the
lawyer.she told me
she was going to pay
for it out of her own
pocket. I thought
some one from our
family should be there
to represent us. She
said she was
extremely nervous
about violating the
terms of the trust. It
does not provide for
funeral costs besides

**Exhibit G**

Email or message from Diane Struthers recalling Belinda's statement in July 2017 that she was going to put Julie on the trust

To Whom It May Concern,

In July of 2017 Belinda told me she **was going to** an attorneys to put Julie's name on the trust.

It **was my** understanding **by my father that the original names on the trust was Edward** Lye (Darlene's brother). Edward Lye ( Darlene's nephew) Belinda Connor, and April R  Struthers ( Sharp)

Sincerely,
Diana Struthers



# Exhibit H

Letter or statement from Attorney Kevin Lachona asserting that Edward "Little Eddie" Lye is not a trustee, but only a beneficiary—contradicted by family text indicating Little Eddie held medical authority and Julie only held financial authority

# Lachona Law

January 28, 2025

<u>Via email and first-class mail</u>
LaRonda Myers
12060 Mont Vista Drive
Auburn,   CA   95603
rondamyers@me.com

April Sharp
1624 Strauss Lane
Redding: CA 96003
aorilshamOS24@gma11.co
m

      Re: MEET AND CONFER ATTEMPT

           Ralph C. Struthers Revocable Trust dated October 22, 2017
           Struthers Family 1993 Revocable Trust dated June 4, 1993

Dear Ms. Myers and Ms. Sharp-

      As you are aware, I represent Belinda Connor and Julie Hatridge as Co-Trustees of The Struthers Family 1993 Revocable Trust dated June 4: 1993 ("Struthers Family Trust%)_ I also represent Belinda Connor and Carole Campbell as Beneficiaries of The Ralph C _ Struthers Revocable Trust dated October 22, 2017_

2450 Venture Oaks Way #200, Sacramento, CA 95833

T (916) 235-3095 F (916) 415-3528 E KEVIN@LACHONALAW.COM 1-+«TXACHONALAW.COM
"falsely represented themselves as trustees." The provisions in the Struthers Family Trust clearly
appoint them as successor co-trustees. I have previously provided you with the pertinent pages of
the Struthers Family Trust showing the order of trusteeship but you are ignoring that evidence. I
have also pointed out that the page of the Struthers Family Trust that you say shows Edwin
George Lye as the 'legitimate trustee" is in fact the page listing him as a beneficiary. I urge you,
once again, to read those relevant pages ofthe Struthers Family Trust.

## Exhibit I

Belinda Connor's deposition statement claiming trustee authority for herself and Julie due to Darlene's resignation—contradicted by years of family consensus that Darlene opposed Julie as trustee due to personal and religious differences

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF PLACER

-- oOo --

In the Matter of:                    )
                                     )
                                     )
                                     )
RALPH C. STRUTHERS                   )
REVOCABLE TRUST UDT                  )    CASE NO.:    SPR0010014
OCTOBER 22, 2017                     )
                                     **CERTIFIED COPY**
                                     )
                                     )

VIDEOCONFERENCE DEPOSITION OF

BELINDA CONNOR

Tuesday, July 9, 2024

REPORTED BY:    KRISTEN D. ADAMSON, CSR 10474



Scarpelli Court Reporting Service
601 Commerce Drive, Suite 130
Roseville, CA 95678
(916) 412-0152

In the Matter of: RALPH C. STRUTHERS REVOCABLE TRUST UDT
Connor, Belinda on 10/22/2017

Page 94

```
1        A.  Okay.
2        Q.  And if you feel like I haven't, please
3   feel free to elaborate then.
4        A.  Okay.  All right.
5        Q.  At any point in 2017 did you have power of
6   attorney over Darlene?
7        A.  Her finances, yes.
8        Q.  Okay.  So in 2017 at some time you were in
9   charge of both financial and medical decisions for
10  Mr. Struthers, correct?
11       A.  Correct.
12       Q.  And when did that start, approximately?
13       A.  It started July 10th, I think, 20- --
14       Q.  And what -- and what was it related to; do
15  you know?  Was there a reason why you became in
16  charge of this?
17       A.  Because --
18            MR. LACHONA:  Objection.  Vague.  Belinda,
19  hold on.
20            Steven, when you say in charge of this,
21  what are you referring to?
22            MR. CROSS:  In charge of his medical and
23  financial decisions.
24            MR. LACHONA:  Okay.
25            MR. CROSS:  You can go ahead.
```

Page 95

```
1            THE WITNESS:  Oh, okay.  My dad could no
2   longer speak.  He could no longer eat.  He could --
3   he couldn't -- he couldn't walk.  He couldn't write
4   his name any longer.  He couldn't talk.  He couldn't
5   swallow.  He couldn't -- he couldn't get around on
6   his own anymore.  He was totally dependent on -- on
7   somebody to -- for his livelihood.
8   BY MR. CROSS:
9        Q.  So to summarize all of that, the reason
10  that you are saying that you were in charge of his
11  financial and medical decisions was the fallout from
12  his stroke; correct?
13       A.  Yes.  It was --
14       Q.  Okay.
15       A.  -- how it left him.
16       Q.  Okay.  And was there a way in which you
17  became power of attorney?  Did you -- did you sign a
18  document or -- how did you -- how did you gain this
19  power of decision-making?
20       A.  After he was declared medically
21  incapacitated, and then Darlene resigned on the 7th
22  of -- of July, 2017, they -- they both -- I was the
23  successor co-trustee, along with Julie Hatridge.
24  And then that's how I became the POA of --
25       Q.  So if Mr. Struthers and Darlene are
```

Page 96

```
1   incapable of making Mr. Struthers' medical and
2   financial decisions, those decisions --
3        A.  Well, my -- my stepmother -- oh, sorry.
4        Q.  -- those decisions fell to you and Julie?
5        A.  My stepmother resigned.  She wasn't
6   incapable.  She resigned.
7        Q.  Okay.  Sure.  Well, she's incapable
8   because she resigned; how about that, or what have
9   you?  The next person in line was you --
10            MR. LACHONA:  Objection.  No, Mr. Cross.
11  You're assuming facts.  That's -- that's not --
12  that's not accurate.  People can resign for any
13  reason.  It doesn't have to be because of --
14            MR. CROSS:  No.  No.  Definitely.  I
15  understand.  I meant incapable legally.  Anyway,
16  we'll move on.
17       Q.  If Darlene and Mr. Struthers are out of
18  the picture for making his financial and medical
19  decisions for any reason, it fall- -- it fell to you
20  and Julie, right?
21       A.  Well, no.  It fell to Darlene.  But
22  Darlene resigned.  So then it fell to us.
23       Q.  Okay.  So --
24       A.  So first it went to Darlene.
25       Q.  Right.
```

Page 97

```
1        A.  Darlene resigned.  And then it went to us.
2        Q.  And after Darlene resigned it went to you
3   and Julie only?
4        A.  As co- -- only through the financial.  And
5   then for Darlene we had Eddie for the medical
6   portion of the POA.  That's how it was written in
7   the 1993 trust.
8        Q.  Eddie was the -- would be in charge of
9   Darlene's medical decisions or Mr. Struthers'?
10       A.  Darlene's.
11       Q.  Okay.  If Mr. Struthers is incapacitated
12  at this time, and Darlene resigned from all of her
13  decision-making, who was in charge of Mr. Struthers'
14  medical decisions at that time?
15       A.  Me.
16       Q.  And only you?
17       A.  Yes.
18       Q.  Okay.  And did you tell the family that
19  you were in charge of those medical decisions?
20       A.  Yes.
21       Q.  Okay.  And did you tell Mr. Struthers'
22  doctors that you were in charge of his medical
23  decisions?
24       A.  I think Ronda told the doctors.
25       Q.  Okay.  Do you remember telling any social
```

**Exhibit J**

Text message stating Julie is not named in Darlene's advance health directive—
contradicting later sworn statements by Belinda or Julie

**Exhibit K**

Manipulated trust succession order naming individuals in an order inconsistent with the
original trust, including the unauthorized inclusion of Julie Hatridge and Tara L. Conner

**EXHIBIT K**

**Disputed Successor Trustee Succession Order – Struthers Family Trust (June 4, 1993)**

This exhibit displays the **manipulated successor trustee list** currently being presented in litigation for the June 4, 1993 Struthers Family Trust.

The succession structure listed below **does not match** the version drafted by attorney Don Gravalec, nor does it reflect the intentions of Ralph or Darlene Struthers. Family members, including the Plaintiff, confirm that **Julie Hatridge** and **Tara L. Conner** were **never discussed, intended, or named** as successor trustees in the original version of the trust.

**Disputed Trustee Succession Structure:**

- Julie Hatridge (co-trustee)
- Belinda Connor (co-trustee)
- Edward George Lye
- Francis Edward Lye
- April Sharp
- Tara L. Conner (Belinda's daughter — never named or contemplated by Ralph or Darlene)

## Exhibit L

Timeline and supporting documentation reflecting Ralph's recovery after his stroke in May 2017, and subsequent decline tied to actions taken by Defendants

**EXHIBIT L**

**Post-Stroke Cognitive and Physical Recovery – Ralph C. Struthers**
*Photographs, Physical Therapy Evaluation Notes, and Plaintiff Observations*

**This exhibit includes evidence demonstrating Ralph C. Struthers' alertness, communication ability, and physical recovery following his stroke and MRSA diagnosis in 2017.**

**It includes:**

- **Photographs of Ralph watching television, using a computer, and walking with a physical therapist—each illustrating his cognitive awareness and mobility.**

- **A physical therapist's evaluation completed during Ralph's stay between May 29 and June 12, 2017, stating:**

**"Patient is not saying very much but was able to nod his head yes and no appropriately."**

**Ralph deliberately used head movements to communicate, especially early in recovery, because speaking caused extreme coughing. This demonstrates he remained responsive and mentally present during his recovery.**

- **Medical staff recommended aggressive rehabilitation, which was supported by Plaintiff. However, Belinda Connor and Julie Hatridge rejected this medical plan and placed Ralph in a rest home—contrary to medical advice and against Ralph's own clearly expressed wishes as early as December 2016. Ralph had stated he never wanted to be placed in a rest home.**

- **This evidence directly contradicts Belinda Connor's 2024 deposition, in which she stated that Ralph was incapacitated and could not communicate. The physical therapist's report, along with photographic evidence and Plaintiff's observations, proves that Belinda's testimony was inaccurate and misleading.**

**This exhibit supports Plaintiff's claims of elder abuse, denial of medical care, undue influence, and misrepresentation of Ralph's true capacity, forming part of the broader pattern of wrongful control over Ralph and his trust.**

## Exhibit M

Portion of Belinda Connor's 2024 deposition transcript showing objections to simple yes/no questions and referencing the incapacitation letter









Marian Regional Medical Center
1400 East Church St
Santa Maria, CA 93454-
Facility Phone #    (805) 739-3000

Name: STRUTHERS, RALPH CHARLES
MRN: 12857699(AMB); 3000320775(MMC)
Acct #: 74007871762
Pt loc: MMC TEL2; 225; 1

DOB: 2/28/1933   Age   84 years        Sex: M
Admit Date:  5/29/2017
Disch Date:  6/12/2017
Physician:   Tunali Madenci, Lerzan MD
PCP:         Okerblom, Robert MD ; Okerblom, John MD ;
             Lai, Michael K MD

## Speech Therapy Documentation

DOCUMENT NAME:
RECEIVED DATE/TIME:
RESULT STATUS:
PERFORM INFORMATION:
SIGN INFORMATION:

Speech Progress Note
5/31/2017 11:00 PDT
Auth (Verified)
Foster, Lori MA, CCC/SLP (5/31/2017 12:09 PDT)
Foster, Lori MA, CCC/SLP (5/31/2017 12:09 PDT)

Inpatient ST Daily Progress Note Entered On: 05/31/2017 11:42 PDT
Performed On: 05/31/2017 11:00 PDT by Foster, Lori MA, CCC/SLP

Services Provided
Treatment Narrative :  Pt followed directions to open mouth, stick out tongue, although only to teeth, smile and pucker.  Sli___
right droop.  Pt trialed with ice chips and tsp of water.  Showed holding of each in mouth for up to 20 sec before swallow.  Showed
delayed cough, became red in face, trials stopped.  Pt is non verbal.  Daughter has been through rehab with her son who ___ ___
so the ___ situation.  Spoke to family regarding NGT, which they are in favor of.
Education Documented :  Yes
Treatment Plan & Goals Review :  Yes

Neglect of R environment
Fall risk
Nods Y/N consistently
Dementia at baseline
Subjective Information :  Pt not saying very much but was able to nod yes and no appropriately.
Mobility :  Yes
Assessment :  Yes
PT Discharge Recommendations :  Yes
Preferred Language for Healthcare Discussions :  English
Treatment Plan & Goals Review :  Yes
Charges :  Yes

                                          Wendling, Timothy PT - 05/31/2017 13:00 PDT

Mobility
Bed Mobility :  Moderate assistance
Bed Mobility Assistive Device :  Bed rails
General Transfers :  Moderate assistance
General Transfers Assistive Device :  Front wheel walker
___ Mobility Details :  sitting balance at EOB with wt shifting to correct.
Textual Results
484  5/31/2017 08:30 PDT (Occupational Therapy Assessment)

    Pt remains non-verbal, his Y/N nodding appears reliable, he follows one-step verbal commands well, with ___
    times and increased range of affect vs yesterday.

Date/Time Printed:  6/8/2018 14:53 PDT

                                  Report Request ID:  163196___
                                                      Page 1 ___

## Exhibit N

Text message from Belinda Connor to April Spaulding stating that Julie Hatridge was not an original trustee

**12:59**

< January 17, 2019
2:08 PM    Edit  ···



**From April Spaulding**

Belinda connor

to fall on you.

No on the original her brother was next in line is little Eddie. She didn't pick Julie because she's a jeovah witness



Right I remember that

There's this book about it you might want to read it

Read 10:22 AM

Ok it's so sad. Darlene really doesn't remember stuff I found out this morning



# New iMessage                    Cancel

To: Belinda Connor & 1 more...

### Sep 8, 2017, 12:13 PM

Belinda Connor



**I think it's going to tell everyone that it is the original trust and will. Also what the trustees duties are.**

April Spaulding



**So Julie isn't on it anymore and it's back little Eddie ?**

**Exhibit O**

Julie Hatridge's signed court documents falsely asserting trusteeship (specific document to be identified)

43) **No Admission.** By entering into this Agreement, the Parties do not admit any fact, conclusion of law, or liability as to any matters contained in this Agreement.

44) **Modifications.** Modifications to this Agreement can only be made by a writing signed by all Parties.

45) **Court's Jurisdiction:** The court shall maintain jurisdiction in order to enforce this Agreement pursuant to C.C.P. §664.6.

Dated.

_____
LaRonda Myers, individually, and as Trustee of the
Ralph C. Struthers Revocable Trust

Dated.

_____
April Sharp, individually and as Trustee of the Ralph
C. Struthers Revocable Trust

Dated.

_____
Belinda Conner, individually and as Trustee of the
Struthers Family 1993 Trust

Dated  12/10/19

_____
Julie Hatridge, individually and as Trustee of the
Struthers Family 1993 Trust

Dated

_____
Darlene Struthers, individually and as settlor of the
Struthers Family 1993 Trust

APPROVED AS TO FORM.

_____
Michael S. Shuttleworth, attorney for Trustees
LaRonda Myers and April Sharp

_____
G. Kevin Lockhart, attorney for Trustees
Belinda Conner and Julie Hatridge

34

**Exhibit P**

Text from Cheryl or April confirming trust manipulation





**Cheryl**

Yesterday 7:56 PM

Hey do you have pictures of the trust documents? Can you send them to me?

Wow, that's probably on my other phone. Your talking about the original Trust Document's, right? I think I took some photos; but mostly of the photos of pictures in the white note book.

I would like to see pictures of the original trust

I'll look for them.

You do know Belinda and Julie rewrote a trust. I'm talking about the original Trust my Dad wrote.



Cheryl

I know that much about her. As far as Belinda goes she's been a complete disappointment, Carol is kinda her lap dog. Julie and her Husband are beon horrible people.



If it wasn't for Ronda you wouldn't be getting anything at all

# Exhibit Q

Email from LaRonda Myers to Carol Campbell regarding emotional impact of safe-opening incident and failure to visit sister Kay



**ᵃᵗᵗ AT&T** LTE    **12:08 PM**

## New iMessage          Cancel

## To: Carol Campbell

**Aug 6, 2017**, 10:20 AM

How could you disrespect Kay's wishes of course you wouldn't of known that because you've never talk to our sister Kay and you disappointed her when you flew in to see Dad and check in to Dad and Darlene safe and how much money they had but you would've of every known that really upset them a lot .You came in like a freight train into their home and disrespect their private

  



**.ıll AT&T LTE**    **12:08 PM**    🔋

## New iMessage                    Cancel

To: Carol Campbell

> train into their home and disrespect their private information but you would of not know that because you didn't see how it really made them feel . And did you know that you really upset Kay when you never bothered to see our sister Kay. but you would've never known that you never talk to Kay. Your interference is not helping its just shows that you had nothing to do with our sister Kay or even call her. you come in like a

  

## Exhibit R

April Sharp's message to Belinda stating Julie Hatridge was never given financial or medical authority and expressing concern over missing Bosley mail from J. Johnson's office

**To:** Belinda Connor & 1 more...

Sep 7, 2017, 9:11 PM

April Sharp April Struthers

**Great, I look forward to matching the one the lawyer sends me, to the one that grandpa sent and went over with me. Julie is NOT named as a dissuasion maker for health OR financial for Darleen. So something isn't right. Glad the lawyer is sending it to everyone. That's great news.**



Sep 8, 2017, 9:51 AM

## Exhibit S

April Spaulding's message to Belinda stating she was trying to bury their father's body, not his ashes, and that the trust changes caused all of the chaos

# Exhibit T

July 7, 2017 incapacitation letter notarized by J. Johnson

# RESIGNATION OF TRUSTEE AND ASSIGNMENT OF TRUST ASSETS TO NEW TRUSTEE

My husband, RALPH CHARLES STRUTHERS, is unable to act as Trustee due to his physical disabilities.

I, DARLENE L. STRUTHERS, remaining Trustee of the STRUTHERS FAMILY 1993 REVOCABLE TRUST, Dated June 7, 1993, resign as Trustee and assign all of the assets of the Trust to the Successor Co-Trustees, named by myself and my husband, in the 1993 Trust, namely JULIA LYNN HATRIDGE and BELINDA LOU CONNOR.

Dated: 7 – 7 – 1 7

_DARLENE L. STRUTHERS, Trustee_

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF __CALIFORNIA__                )
COUNTY OF __San Luis Obispo__        )

On __July 22, 17__ before me, J JOHNSON, Notary Public, personally appeared DARLENE L. STRUTHERS, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



J Johnson, Notary Public



07/12/2017    14:28 Central Co    mily Care                                    AX08059387429              P.001/002



CENTRAL COAST FAMILY CAR
MEDICAL ASSOCIATES OF SANTA MARIA, INC

**Michael P. Schrager, M.D.**
oard Certified in Family Practice
**Richard L. Zachrich, M.D.**
oard Certified in Family Practice
**Barbara Armstrong, C.N.P.**
ertified Nurse Practitioner
21 E. Chapel Street, Suite 203
anta Maria, CA 93454
hone:  (805) 925-3334
ax:  (805) 922-5923

**John P. Okerblom, M.D.**
oard Certified in Family Practice
**Melinda Jezierski, M.D., PhD**
oard Certified in Family Practice
**Scarlett Okerblom, PA-C**
hysician Assistant
**Jane Agraz, PA-C**
hysician Assistant
5 E. Stowell Rd.   ite
ante Maria, CA 93454
hone: (805) 925-5544
ax: (805) 938-7421

**Brian Desmond, M.D.**
ard Certified in Family Practice
**Laura J. Theis, M.D.**
ard Certified in Family Practice
**Adrienne Dingler, C.N.P.**
ertified Nurse Practitioner
0 S Palisades Drive, Suite 1648
nta Maria, CA 93454
hone: (805) 922-2521
x: (805) 925-8    1

**Noormhad A. Azam, M.D.**
ard Certified in Internal Medicine
35 S. Shepard Street, Suite 104
ta Maria, CA 93454
hone: (805) 928-1684
x: (805) 928-6006

**Umesh M. Desai, M.D.**
ard Certified in Family Practice
Daniel Drive # 102
nta Maria, CA 93454
hone: (805) 937-3162
x: (805) 937-3612

ean Stimson
dministrator
1 Barcellus Ave, Ste 301
ta Maria, CA 93454
hone: (805) 925-    30
x: (805) 925-    7
en_stimson@ccfmedical.com

7/10/2017

To Whom it may concern

Our patient Ralph Struthers (DOB 02/28/1933) recently suffered a severe stroke. He is unable to care for himself or make financial decisions and is now medically incapacitated. He is unable to act as his own agent or trustee.

His condition is not expected to improve. If you need any further information please contact this office

Sincerely,

John P. Okerblom, M.D.

07/12/2017   14:28 Central Coas'   mily Care                    AX8059387429        P 0021002



CENTRAL COAST FAMILY CARE
MEDICAL ASSOCIATES OF SANTA MARIA, INC.

Michael P. Schrager, M.D.
Board Cert'Ked Family Practice
Richard L. Zachrich  M.D.
Board Certified Family Practice
**Barbara Armstrong, C.N.P.**
Certified Nurse Practitioner
82 E. Chapel street. Suite 202
Santa       CA 93454
Phone: (US) 925-5334 Fax:
(805) 922-5923

John P. Okerblom, M.D.
Board  in Family Practice
Melinda Jezierski, M.D.,
PhD
Board Certified in Family Practice
Scarlett OkerMom, PA-C
physician    Assismt
Diane Agraz, PA-C
Physician Assistant
915 E Stowell Rd, #B
Santa Maria, CA 93454
Phone: (805) 938-7444
Fax: (805) 938-7422

Brian Desmond, M.D.
Board Certified in Family practice Laura
J. Theis, M.D.
a eard C#tificd Family
PraeGce Adrienne Dingler,
C.N.P.
Certified Nurse
Practitioner
220 S Palisades DEive, suite 104B
Santa Maria, CA 93454
Phone:   9250521
Fax: (805)925-6721

Mohammad A. Arain, MD.

Board Certified Internal Medicine
1505 S. Shepbfd Drive, Suite 104 Santa Maria, CA 93454
Phone: (805) 928-2645 Fax:   928-1095

Kamlesh M. Desai, M.D.
Board Cenified in Family Practice
355 Daniel Drjvc# 105 Santa Maria, CA 93454
Phone: (805) 937-3368
Fax: (806) 937-3622

Julcen Stimson
Administrator
426 E enrcetkts AVC, Ste 30)
Santa Maria CA 93454 Phone: (805) 925-1009
Fax: (805) 925-1137
Julcen_stimson@ccfcmedical.com

7/11/2017

To Whom it may concern:

Our patient Ralph Struthers (DOB 02/28/1933) recently suffered a severe stroke. He is unable to care for himself or make financial decisions and is now medically incapacitated. He is unable to act as his own agent or trustee.

His condition is not expected to improve. If you need any further information please contact this office.

Sin cerely rel ,

Melinda Jezierski, M.D., PhD

**EXHIBIT U**

**Title:** Timeline and Admission Records – Auburn ER & ICU, July 10–11, 2017
**Supports:** Count Three – Elder Financial Abuse

This exhibit contains documentation showing that **Ralph C. Struthers was admitted to the Emergency Room at Auburn Faith Hospital on July 10, 2017**, and formally transferred to the ICU on **July 11, 2017** due to a serious **MRSA infection**. These records establish Ralph's physical location and medical condition at the time Defendants claim he was incapacitated based on remote evaluations.

This directly contradicts the statements from two **Santa Maria-based physicians**, who—without examining Ralph—submitted letters stating that he was legally incapacitated. Those letters were faxed to Jay Johnson's office on July 12, 2017, while Ralph remained hospitalized **over six hours away** in Auburn, CA.

See also: **Exhibit V**, which includes the ICU admission records and medical evidence of infection severity.

**EXHIBIT V**

**Title:** ICU Admission and MRSA Infection Evidence – Auburn Faith Hospital
**Supports:** Count Three – Elder Financial Abuse

This exhibit includes medical records from **Auburn Faith Hospital** confirming that **Ralph C. Struthers was admitted to the ICU on July 11, 2017** due to a **life-threatening MRSA infection**. These records document:

- His physical presence in Auburn, California at the time doctors in Santa Maria claimed he was incapacitated;

- The severity of his infection, vomiting, and altered responsiveness during initial intake;

- His clinical improvement after beginning treatment, supporting the assertion that he later regained cognitive clarity.

This evidence supports Plaintiff's argument that any claim of Ralph's incapacitation on or before July 11, 2017—particularly by non-treating physicians located hundreds of miles away—was **unfounded and fraudulent**.

Exhibit V is directly tied to **Exhibit U**, which documents the ER-to-ICU timeline for context.



Legal Copy

**Sutter Health**

SUTTER AUBURN FAITH
HOSPITAL
11815 Education Street
Auburn CA 95602
IP/OBS/SDS Legal Rec

Struthers  Ralph
MRN: 61854437  DOB: 2/28/1933  Sex: M
Adm: 7/11/2017  D/C: 7/17/2017

---

## Consults (continued)

Consults by Russell, Catherine, RN at 07/11/17 1008 (continued)

**Referral Source:** Other:  MD

**Referral reason:**   Team/Patient/Family needs help with complex decision making

**Primary diagnosis that triggered PC consult:** Multi-System involvement

**History of Present Illness:** hyperosmolality due to uncontrolled diabetes

**Patient/Family Goals:** Lengthy discussion with Dr. Calmac, patient's daughter Rhonda (DPAHC #3) to further clarify patient goals of care. Patient was being transferred from Southern California and needed admission to acute care for hyperosmolality. Patient brings a POLST that indicates no CPR and no intubation with the goal of receiving medical management that does not contribute to functional decline or burdensome outcomes. Daughter will have patient reside with her and hopes to engage patient in outpatient PT and ST so that he can recover back to his previous pre CVA functional level. He has a feeding tube and will keep this until he can successfully resume po intake. Daughter acknowledges that patient has a challenge ahead of him for a full and meaningful recovery and that he has declined in his functional status, however she is motivated to be able to support her father.

**Recommendations/Plan:** Address blood sugars while remaining in ICU, treat decub on coccyx, provide instructions on insulin management, continue with abx for UTI, address renal function challenges and keep patient's family well informed as to patient's progress. I recommend AIM and home health when patient is discharged. Support for patient and family as one of patient's daughter died recently and they are hoping for a relatively rapid recovery so patient can attend the funeral. I have requested a copy of the AHCD. I have seen the electronic copy on daughter's phone and verified decision makers. Rhonda shares that the sisters all make collective decision making, however Belinda is the primary agent.

## Exhibit W

Statements from Dr. Lai and Dr. Gruenefeldt affirming Ralph's capacity

Statement by Dr. Alan Gruenefeldt regarding Ralph C. Struthers

My name is Alan Gruenefeldt and I am a physician duly licensed to practice medicine within the State of California.

I have cared for Ralph Struthers as his primary physician since August 1, 2017

I am aware of both his physical and mental state.

Although he suffered a stroke on or about May 2017 and has limited speech abilities it is my opinion that he is aware of his surroundings, the nature and extent of his bounty and is able to coherently follow thoughts and make and express knowing and rational decisions related to his personal care.

Prior to this cu·        ⌐ situation, Mr. Struthers was in skilled nursing care and his condition had significantly deteriorated. Since he has been in his present environment, he has received care that is better suited for his particular needs and his condition has improved significantly.

It is my belief that his present living conditions are far better suited for his needs and more advantageous to him both physically and emotionally than a skilled nursing environment would provide for him. He appears happier and his lifestyle has become more active; engaging in outside activities and interests. Despite his several disabilities, he is thriving in his current environment and at this time, I believe any change would be detrimental to his overall health and well-being.

Dated:

10/20/17

_____ , M.D.

Alan Gruenefeldt, M.D.
404 Auburn Folsom Rd.
Auburn, CA 95603

Central Coast Endocrinology

Michael L. Lai, MD

1250 Peach St, Suite H

San Luis Obispo, CA 93401

RE: Ralph Struthers DOB 02/28/1933                                           June 11, 2018

Patient, Ralph Struthers seems capable of making his own decisions regarding healthcare and finances.

*Michael Lai*

Michael Lai, MD

## Exhibit X

Photos and messages demonstrating Ralph's cognitive function post-stroke

**EXHIBIT X**

**Visual and Message Evidence of Ralph C. Struthers' Cognitive Function After Stroke**
*Supports Count 3 – Elder Financial Abuse*

This exhibit addresses Ralph C. Struthers' mental alertness and memory recall following his stroke and subsequent MRSA diagnosis in mid-2017. It refutes the false declaration of incapacity dated July 7, 2017, which was signed before any in-person medical evaluations and used to unlawfully strip Ralph of control over his trust and finances.

Despite a period of physical weakness and difficulty swallowing saliva—a common side effect following a stroke—Ralph began to recover quickly with proper medical treatment. Though speech was difficult, he was able to nod, respond, and even speak on occasion.

At trial, Plaintiff will produce:

- Video recordings from two separate sessions with speech therapists:

    1. In the hospital (Auburn Faith ICU/ward) shortly after his ICU admission.

        - Ralph responded to a therapist's prompt by holding up fingers to indicate he had seven daughters.

        - He made verbal attempts to respond, but sometimes stopped due to coughing, as speaking caused discomfort in his throat.

    2. At home during outpatient speech therapy.

        - Ralph was again engaged in questions about his family and responded by saying "seven daughters" in a clear voice.

        - This session also demonstrated his ability to follow questions and respond appropriately, despite his physical limitations.

These clips show that:

- Ralph was mentally alert and retained long-term memory;

- He could identify his family and comprehend questions;

- His communication was consistent with cognitive capacity, even if his speech was physically strained.

This exhibit directly undermines claims made in the July 7, 2017 letter, signed by doctors in Santa Maria (six hours away), who never evaluated Ralph in person. It also supports Plaintiff's claim that Belinda Connor and Julie Hatridge misused medical documentation to take control of Ralph's trust in an act of elder financial abuse.

**Exhibit Y**

Documentation showing obstruction of Ralph's access to primary care



## Exhibit Z

Letter from Hare to Oaks Funeral Chapel regarding cremation due to court delay (verbal confirmation only)

**Heritage Oaks Memorial Chapel**
FUNERAL AND CREMATION SERVICES FD1990
6920 Destiny Drive, Rocklin, CA 95677
916-791-CARE (2273) ~ 800-316-1987
www.HeritageOaksMC.com

Heritage Oaks Memorial Chapel
*Where lives are celebrated and honored.*

July 1, 2019

To whom it may concern,

LaRonda Myers and April Sharp have been working with our funeral home to see that LaRonda's father's wishes to be buried are carried out. The legal action has taken so long to complete we have been forced to recommend cremation followed by burial. Until now there was a small possibility to have a casket burial but that is no longer the case. Ralph remains have decomposed to the extent that a casket burial was not practical or advised. It is our professional opinion that to bury him on July 13th cannot be accomplished except by cremation.

We are glad to work with LaRonda Myers and April Sharp to accomplish to the best of their ability her father's wishes.

Sincerely

Ron Harder FDR2875
Heritage Oaks Memorial Chapel FD1990

*Exhibit A*

**April Spaulding**    7/3/19

To: Desirae Luerra & 22 more... >

Please do not use my name for your revenge... I was trying to get my dad's "body" buried! ....not his ashes! What were you trying to do now? None of this would've happened if you didn't change Dad's trust. Shame on you!  #Fake Love!

April Spaulding # 7

## Exhibit AA

Text from April Spalding to Belinda (¨Shame on you… fake love¨)



**April Spaulding**                                    7/3/19

**To:** Belinda Connor & 22 more... >

Belinda
 I know you change the trust because of what my dad told me in 1993 how it was wrote up and now I know why he did!  That is NOT! the original trust! that is your "revenge trust"! that's what I call it !  I will pray that somewhere and somehow their original trust will show up so I could prove how you lied to your whole family! shifted the blame on someone that didn't deserve it.
Shame on you! You told me  the kids that were born after 1993 they were only  just wrote on the front cover of Dad & Darlene's original wet ink trust.
 So another lie! You're getting really good at lying...I'll have to say you almost had me fooled for about half a day. #fake love!!!!

**April Spaulding**

# Exhibit AB

Record of hearing where embalming was revoked (if obtainable)

**EXHIBIT AB**

**Cremation Resulting from Opposing Counsel's Reversal and Court Delay**
*Supports Count 3 – Elder Financial Abuse and Count 6 – Systemic Due Process Violations*

This exhibit explains the **chain of events that resulted in the forced cremation of Ralph C. Struthers**, despite his **clearly stated wishes to be buried**, as documented in both the **June 4, 1993** and **October 22, 2017 Trusts**.

During court proceedings, Plaintiff's then-attorney, **Scott Shuttleworth**, verbally requested that Ralph be embalmed to preserve his remains in accordance with his wishes. **Opposing counsel Kevin Lachona and his clients—Carol Campbell, Belinda Connor, and Julie Hatridge—verbally agreed in front of the judge**, and no objections were raised. As a result of this **verbal agreement**, no court order was entered on the record.

However, shortly after the hearing, **Attorney Shuttleworth received a phone call from Kevin Lachona rescinding the prior agreement**, stating that Ralph **could no longer be embalmed**. No explanation was provided, and this reversal came after Plaintiff and her attorney had relied on the verbal agreement.

The delay in formal court action, combined with the **rescission of the embalming approval**, caused irreversible consequences. By the time Plaintiff followed up with the funeral home, **embalming was no longer an option**, and **Ralph had to be cremated—against his clearly documented burial wishes**.

The supporting documentation referenced here includes:

- **Exhibit Z**: A **letter from the funeral home** confirming that **embalming was not performed due to delays** in legal authorization.

This exhibit establishes:

- That **Ralph's burial wishes were known and documented**.

- That **opposing counsel and clients reversed a verbal agreement** without justification.

- That **the court's failure to enter a written order** allowed the reversal to go unchecked.

- That Plaintiff and the family were denied the ability to carry out Ralph's final wishes due to procedural manipulation and obstruction.

This act was emotionally devastating and constitutes **elder abuse, fiduciary breach**, and **procedural failure**.

**Exhibit AC**

Mediated agreement signed under duress

**EXHIBIT AC**

**Mediated Settlement Agreement Signed Under Duress**
*Supports Count 5 – Mediation Coercion and Submission of Unauthorized Agreement*

This exhibit contains the **mediation agreement that Plaintiff LaRonda Myers was pressured into signing during a 14.5-hour session**, which she later **rescinded** due to **emotional exhaustion, misrepresentation, and fiduciary violations**. The agreement was submitted to the court **without Plaintiff's final consent**.

Key issues in this exhibit include:

- **Unlawful Distribution of Estate Funds**: The agreement directed that **$84,000 be paid to opposing counsel**, using estate funds in violation of California probate and trust law. Plaintiff objected during court proceedings, citing legal research showing that estate funds cannot be used to pay third-party legal fees in trust disputes. The court ultimately **agreed with Plaintiff** and allowed her to rescind the agreement.

- **April Sharp's Self-Dealing**: The agreement also awarded **April Sharp $10,000 in trustee fees**, despite her minimal participation in trust administration. April did not contribute to legal costs or accounting preparation and **refused to support arbitration efforts to recover overbilled funds**. Her role during mediation appeared to shift in favor of opposing parties, without disclosure or support of her co-trustee.

- **Disparity in Beneficiary Distributions**: The same agreement left **Plaintiff's siblings, including April's own mother, with only $2,000–$2,500** in inheritance each. The **18 grandchildren were allotted only $200–$500 each**. In stark contrast, **April received nearly four times more than any primary beneficiary**. This disparity reflects **self-dealing** and **a breach of fiduciary loyalty**, especially given that **April did not perform her co-trustee duties** or contribute to legal resolution efforts.

- **Violation of Settlor's Intent**: Ralph C. Struthers, the settlor of the 2017 Trust, intended for his estate to be left primarily to his children—not depleted by legal fees or used to enrich a single trustee. April's support of this distribution contradicts both Ralph's written wishes and standard fiduciary obligations.

Although Plaintiff does not currently have the transcript of the hearing where she rescinded the agreement, she intends to submit it at trial. That transcript is expected to confirm:

- That **Plaintiff objected on legal and ethical grounds**.

- That the **court permitted the rescission**, validating Plaintiff's concerns.

- That **April Sharp supported the agreement despite its obvious imbalance**.

This exhibit will demonstrate:

- The **coercive and unlawful nature** of the mediation session.

- April Sharp's **personal financial gain at the trust's expense**.

- The **disproportionate and unfair treatment** of other beneficiaries.

- Plaintiff's **good faith efforts to preserve trust integrity and beneficiary rights**.

**EXHIBIT AD**

**Title: Verbal Rescission of Mediation Agreement – Phone Call with Attorney Stephen Cross
Supports: Count Five – Mediation Coercion & Forged Agreement | Count Two – Systemic
Due Process Violations Supports: Count Five – Mediation Coercion & Forged Agreement**

This exhibit refers to a verbal phone call made by Plaintiff LaRonda Myers to her former
attorney Stephen Cross in which she expressly rescinded her agreement to the 2024
mediation terms. The call occurred shortly after the mediation session ended. Plaintiff
informed Mr. Cross that she did not approve submission of the agreement to the court.
Plaintiff's niece and co-trustee, April Sharp, was also on the call and initially appeared to
agree with the rescission, but later changed her position without informing Plaintiff.

Plaintiff also asserts that Stephen Cross used scare tactics during the mediation, implying
she would face serious legal consequences if she did not sign. When Plaintiff later
researched the applicable laws, she discovered that many of the statements made to
pressure her into signing were legally inaccurate. Plaintiff advised April Sharp that it is
illegal to use estate funds to pay opposing counsel's third-party legal fees, but April
dismissed this concern, citing opposing counsel Kevin Lachona as her source.

A transcript from a subsequent court hearing, which Plaintiff intends to retrieve and
submit at trial, contains Plaintiff's formal on-record rescission of the mediation agreement.
This transcript will further support Plaintiff's position that no lawful or informed consent
was ever given.

This exhibit directly supports allegations of mediation coercion, unauthorized submission,
and self-dealing by co-trustee April Sharp, and highlights the breakdown in trustee
communication caused by improper legal pressure and misleading statements during
mediation.

## Exhibit AE

Calendar showing week of depositions and mediation



| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

Depo of BELINDA CONNOR... 10:00AM



**Exhibit AF**

Messages from April Sharp or niece expressing concern after signing



**April Sharp** ›

I am so upset I have been crying all day. Did you read it again ? I lost all the money that I spent



I've lost a lot more money

we were not treated right

but I did not want to be responsible for Kostas Bill

Re read it

I won't do that right now. I am mind blown right now. 😵

Jul 12, 2024 at 5:14 PM

Are we allowed to talk about what happened in mediation?

You should really read that

**EXHIBIT AG**

**Title:** Subpoena Requests Blocked – Kosta Damaris and Stephen Cross Efforts Obstructed by Kevin Lachona
**Supports:** Count One – Violation of Civil Rights (42 U.S.C. §1983) | Count Six – Systemic Due Process Violations | Count Seven – Legal Malpractice & Fiduciary Breach

This exhibit documents the efforts by attorneys K**osta Damaris** and later **Stephen Cross** to obtain subpoenaed records from **J. Johnson's law office**, and the **interference by opposing counsel Kevin Lachona**, which prevented those subpoenas from being executed.

Included in this exhibit:

- A **written communication dated March 2024** in which Stephen Cross formally requested subpoena issuance for J. Johnson's records—critical documents believed to show manipulation of the Struthers Trust.

- A **letter from opposing counsel Kevin Lachona** demanding the subpoena be withdrawn and insisting that his office coordinate any meet-and-confer discussions.

- A record that Damaris previously attempted to secure the same records but was similarly obstructed by procedural pushback and delays tied to Lachona's influence.

Plaintiff emphasizes that these subpoena requests were never honored and that opposing counsel's involvement—despite not being the subject of the subpoenas—reflects a **strategic obstruction of discovery** and misuse of procedural authority. The documents at issue involve trust records from 2017, during the period when Jay Johnson's office received and processed questionable incapacitation letters and trust modifications while Ralph Struthers was hospitalized.

This obstruction directly impacted Plaintiff's ability to gather critical discovery, undermining her fiduciary duties and impairing her rights under state and federal law. Plaintiff reserves the right to supplement this exhibit with court transcripts and subpoena logs if additional documentation becomes available.

Unless otherwise limited by order of the court in accordance with this title, any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.

At the time that Ralph Struthers and Darlene Struthers met with J Johnson of Johnson, Murphy, and Jones, Inc., the Ralph C. Struthers Revocable Trust UDT October 22, 2017, did not exist. In fact, that trust was not established until five months later. The petition that is currently before the court is the Second Amended, Third Amended, and Fourth Accounting of the Co-Trustees of the Ralph C. Struthers Revocable Trust. Not only are the records you seek are *subject to attorney client privilege*, which has not been waived by Darlene Struthers, but the records in the possession of the Johnson, Murphy, and Jones, Inc. law firm are *not relevant* to the accountings of which your clients are seeking approval, as they relate to an entirely different trust all together. Because of the foregoing, the information you are seeking is also *not reasonably calculated to lead to the discovery of admissible evidence.*

I demand that you withdraw the Subpoena immediately as it is both procedurally and substantively defective. In the absence of you withdrawing the Subpoena, I am requesting that we meet-and-confer to discuss this matter. I am available to discuss any Wednesday afternoon – please reach out to confirm a time, this should be coordinated with Mr. Lachona's office so that we can all meet and confer at the same time to eliminate repetition.

Sincerely,

*Cori B. Jones*

Cori B. Jones,
Attorney/Custodian of Records
Encls: Objection to Request for Consumer Records

Cc:
**Kevin Lachona**
Lachona Law
2450 Venture Oaks Way #200
Sacramento, CA 95833

**Sayler Legal Services**
By email: info@saylerlegal.com

**Exhibit AH**

Documentation showing Kevin Lachona`s rejection of subpoenas

**EXHIBIT AH**

**Subpoena Obstruction by J. Johnson's Office with Coordination by Kevin Lachona**

**Description:**
This exhibit highlights that J. Johnson's law office actively resisted Plaintiff's subpoena efforts, even though the records sought were central to proving alleged fraud related to trust alterations and incapacity declarations. The rejection letter originated from Johnson's office but was carbon-copied to opposing counsel Kevin Lachona, and notably requested that all meet-and-confer discussions be coordinated through Lachona's office.

**This level of involvement shows that:**

- **Kevin Lachona was in ongoing communication with Johnson's office.**

- **He collaborated in the rejection of discovery vital to Plaintiff's case.**

- **His participation went beyond ordinary opposition and rose to the level of procedural obstruction and coordinated concealment.**

**Supporting Cross Reference:**

- **See Exhibit AG, which contains the actual letter from Johnson's office, addressed to attorney Stephen Cross, with CC to Kevin Lachona.**

- **That letter demands withdrawal of the subpoena and insists that coordination occur through Lachona's office.**

**Legal Relevance:**
This exhibit supports the following claims:

- **Count 1 – *42 U.S.C. §1983 – Civil Rights Violation:* Use of legal process to obstruct and suppress access to evidence.**

- **Count 4 – *Civil Conspiracy to Commit Fraud:* Coordinated suppression of material evidence critical to uncovering fraudulent trust activity.**

- **Count 6 – *Systemic Due Process Violations:* Court actors and attorneys working together to prevent lawful discovery.**

- **Count 7 – *Legal Malpractice:* Lachona's role in blocking subpoenas obstructed Plaintiff's fiduciary duties and legal claims.**

**Ongoing Efforts:**
Plaintiff is seeking transcripts or docket records from the court that may reflect Lachona's verbal objections or filings related to subpoena suppression. These materials will be presented at trial or supplemental hearing once received.

Dear Beneficiaries,

We are contacting you to keep you informed of the current status of the trust. As you may already know, we have not been able to finalize our accounting due to the repeated objections by Belinda, Carole, and Julie. We have now paid for five (5) professional accountings because they have objected to all of them based on things like a missing $30 gardening receipt from 2018, an alleged one-day late notice of hearing, a $75 expense, etc.

We cannot end this litigation unilaterally so we must continue to defend the trust against their continued objections. To that end, they have cost the trust _____ in litigation costs thus far.

Notice of upcoming court dates is attached. If we cannot resolve the above-referenced issues before Trial and prevail, we shall seek a court order to require Belinda, Carole, and Julie to reimburse attorneys' fees to the Trust.

## Exhibit AI

Transcript or notes showing Plaintiff being silenced in court

**EXHIBIT AI**
**Courtroom Transcript: Plaintiff Silenced During Hearing**

**Description:**
This exhibit will include the transcript (once retrieved) from a courtroom hearing before **Commissioner Jocks**, where Plaintiff LaRonda Myers was denied the opportunity to speak on the record despite clear hearing issues involving her attorney, Don Gravalec.

During this proceeding, opposing counsel **Kevin Lachona** made multiple misrepresentations to the court. Attorney **Don Gravalec**, who has a hearing aid, was unable to hear portions of the discussion due to courtroom audio issues. Plaintiff attempted to clarify the facts on record but was ordered to remain silent by Commissioner Jocks.

This silencing denied Plaintiff her constitutional right to be heard and contributed to one-sided decision-making based on incomplete or false representations.

**Legal Relevance:**
Supports **Count 1 (42 U.S.C. §1983)** and **Count 2 (14th Amendment Due Process Violation)** by showing:

- Judicial bias.

- Denial of fair process to a pro se fiduciary.

- Suppression of accurate information in favor of opposing counsel.

- Inability to clarify facts due to ineffective legal representation at that moment.

**Note:** Plaintiff is in the process of ordering the full certified transcript for submission at trial or in subsequent motions.

# Exhibit AJ

Note from Don Gravalec regarding hearing aid malfunction

**EXHIBIT AJ**
**Transcript Placeholder – Hearing Aid Malfunction and Plaintiff Silenced in Court**

**Description:**
This exhibit placeholder pertains to the same transcript referenced in Exhibit AI. During this court hearing, attorney Don Gravalec—representing Plaintiff LaRonda Myers—experienced a malfunction with his hearing aids, rendering him unable to effectively respond to arguments made by opposing counsel. Despite these challenges, the judge refused to allow Plaintiff to speak on the record to clarify or advocate for the trust's position.

**Impact:**
This left the court with an incomplete and potentially misleading account of the issues presented. Opposing counsel, Kevin Lachona, was allowed to speak freely and assert inaccurate claims that were not corrected or challenged due to the attorney's technical limitations and the judge's refusal to permit Plaintiff to intervene.

**Legal Relevance:**
This will further support:

- **Count 1**: Violation of Civil Rights under 42 U.S.C. §1983

- **Count 2**: Violation of Due Process under the 14th Amendment

**Transcript Status:**
Plaintiff is in the process of obtaining the certified transcript, which will be submitted at trial or upon request.

# Exhibit AK

Notices of COVID-related shutdowns impacting case management

**EXHIBIT AK**
**COVID-19 Court Disruption and Attorney Abandonment Following Escrow Misappropriation**

**Description:**
This exhibit addresses the impact of the COVID-19 shutdowns on case management, specifically related to attorney **Scott Shuttleworth's** conduct after the sale of Ralph C. Struthers's duplex. Shortly after the signing of the 2020 Settlement Agreement, Mr. Shuttleworth withheld **$39,275.31** in escrow funds belonging to the trust.

Although Plaintiff had already paid all attorney fees, this amount was never returned. Mr. Shuttleworth later provided only a vague explanation that the funds were "date stamped" by his office—a justification that lacked legal basis or documentation. Before raising concern, Plaintiff consulted a licensed accountant who confirmed that the funds were wrongfully withheld and not owed to Shuttleworth.

Following the withdrawal, Mr. Shuttleworth became unreachable for nearly a year during the COVID-19 pandemic, abandoning the trust during a time of critical need. He failed to file motions, return funds, or communicate, leaving Plaintiff and the trust vulnerable.

**Supporting Evidence:**

- Plaintiff intends to provide the invoice or billing document showing the $39,275.31 retention at trial.

- Accountant confirmation has already been cited in the main complaint under Count 7 – Legal Malpractice.

- This abandonment coincided with court delays and shutdowns but was not caused solely by pandemic conditions.

**Legal Relevance:**
This supports:

- **Count 6**: Systemic Due Process Violations

- **Count 7**: Legal Malpractice

- Possibly **Count 3**: Elder Financial Abuse (by failing to return funds intended for a trust serving a medically vulnerable elder)

**Exhibit AL**

Copies of trust accountings submitted by Plaintiff

**The Ralph C. Struthers Revocable Trust**
**Case No: S-PR-0010014**

**Amended Second Account of La Ronda Meyers and April Sharp, Successor Co-Trustees**
**March 1, 2019 through December 31, 2020**

Prepared by:
**CONSERVATOR & TRUST SERVICES**

James R. Locke, M.S.

2766 Julie Ann Court
Carmichael, CA 95608

(916) 359-8490

**The Ralph C. Struthers Revocable Trust**
**Case No: S-PR-0010014**

**Amended Fourth Account of La Ronda Myers and April Sharp, Successor Co-Trustees**
**January 1, 2022 through November 30, 2022**

Prepared by:

**CONSERVATOR & TRUST SERVICES**

James R. Locke, M.S.

2766 Julie Ann Court
Carmichael, CA 95608

(916) 359-8490

**The Ralph C. Struthers Revocable Trust**

**Fifth Account of La Ronda Myers and April Sharp, Successor Co-Trustees**

**December 1, 2022 through December 31, 2023**

Prepared by:

**CONSERVATOR & TRUST SERVICES**

James R. Locke, M.S.

2766 Julie Ann Court
Carmichael, CA 95608

(916) 359-8490

**ESTATE OF RALPH C. STRUTHERS**
Case No:  S-PR-0009805

**Third Account of LaRonda Myers and April R. Sharp, Co-Executors**

**January 1, 2024 through December 31, 2024**

Prepared by:

**CONSERVATOR & TRUST SERVICES**

James R. Locke, M.S.

2766 Julie Ann Court
Carmichael, CA 95608

(916) 359-8490

## Exhibit AM

Proof of notice mailings to beneficiaries

**Supplemental Declaration Language for Exhibit A-M**

I, LaRonda Myers, declare under penalty of perjury:

I have consistently mailed or emailed updates to the beneficiaries of the Ralph C. Struthers Trust (2017) and the Struthers Family Trust (1993) approximately once per year, typically around the time of submitting annual trust accountings or major court events.

Due to repeated legal warnings from opposing counsel and concerns about being accused of "favoritism," I limited these communications to neutral, fact-based summaries and updates about the trust proceedings, court delays, and obstacles faced as a fiduciary.

Many of the letters or email drafts were written and printed for distribution or reference, though some do not contain specific dates. However, the content clearly reflects the timeframe and intent to comply with **Probate Code §§16060–16063**, which require trustees to keep beneficiaries reasonably informed.

These communications were made in good faith, consistent with my fiduciary duties, and with the intent to protect transparency and avoid misunderstanding among the beneficiaries.

I will testify to the authenticity and timing of these communications if called upon, and will provide copies of the emails, printouts, and mailing evidence as available.

Executed this _10_ day of _July_, **2025**
**Auburn, California**
** _[signature]_ **
LaRonda Myers, Plaintiff in Pro Se

To the Beneficiaries of the Ralph C. Struthers Revocable Trust

Certain beneficiaries have indicated that they did not receive the accounting packets mailed out to all the beneficiaries. While we did not receive any packets back from the post office, we are emailing the information to ensure all beneficiaries have received the information.

Certain beneficiaries have asked us to distribute Ralph's estate. We cannot do that at this time for numerous reasons. The first and main reason is that the probate of Ralph's estate has not been finalized. Ralph's trust is the beneficiary of the probate assets and those assets need to be disbursed to the estate in order to make the distribution. Second, we are working with our lawyer and Darlene's lawyer (through her agent, Belinda) on issues surrounding the cemetery plots, a burial insurance policy not disclosed and a second safe located in the Santa Maria home, which we did not become aware of until recently. We are concerned assets belonging to Ralph's estate are missing, like his gun, cash and saving bonds.

We also need to verify the location of all beneficiaries. We understand one beneficiary Christopher Way is deceased but we have not been able to obtain his death certificate yet or speak to him directly (if he is still living) and one beneficiary is in Federal prison Seamus Campbell we have not been provided his updated contact information or Primary residence Address

Once probate is closed and we have marshalled all of Ralph's assets, we will petition the court to approve the distribution of the Ralph C. Struthers Revocable Trust. Upon approval of the court, each beneficiary will receive their share.

Sincerely,

April Sharp and LaRonda Myers, Co-Trustees and Co-Executors

July    , 2022

Hello beneficiaries of Ralph Struthers revocable trust.

We decided to be pro per to save costs on legal fees which will benefit the beneficiaries. We have a trial lawyer on standby if we go to trial. He wins 98% of the trials when he goes to court. We are hopeful that it doesn't come to this. We feel strongly that we will prevail in a trial, and they will have to pay for all our legal expenses with their own money. We have been told the trial will take up to two years or longer.

Belinda is in violation of the terms of the settlement agreement by not paying the money of $11,983.47 to Ralph's trust. This amount that was owed to Ralph's trust was decided in the settlement agreement.

We are also waiting for Belinda to transfer the deeds to the plots in Glenhaven, 13017 Lopez Canyon Rd, Sylmar, CA 91342 L.A, we are also waiting for her to notify the mortuary that both trusts are owners of the properties. We need all records having anything to do about these plots. This was also decided in the settlement agreement that both trusts are owners.

Carole and Belinda are arguing about two savings bonds that they know do not belong in the trust which is also part of the settlement agreement.

The third accounting has been sent to the judge for approval. We are enclosing the copy of the third accounting for all the beneficiaries and also the letters we have sent to Belinda and Carol's lawyer.

We also have the problem of a hidden safe at Ralph and Darlene Struthers home. We were made aware by Belinda that she had/has the combination and keys to this safe. We will be asking a judge how we proceed with this matter and what penalty do they receive for violating the settlement agreement.

We are very anxious to settle the trust, as I am sure you are as well.

Thank you,
Ronda and April

# Exhibit AN

Evidence of out-of-pocket costs advanced by Plaintiff

**EXHIBIT AN – ADVANCES OUT-OF-POCKET BY PLAINTIFF**

**Plaintiff:** LaRonda Myers
**Case:** [Insert Case Title or Number Here]
**Court:** United States District Court, Eastern District of California

**Title:** ADVANCES OUT-OF-POCKET BY PLAINTIFF

Plaintiff LaRonda Myers respectfully submits this exhibit tab reflecting personal funds advanced for the protection, administration, and legal defense of the Ralph C. Struthers Trust and related proceedings.

Due to time constraints and ongoing discovery delays, Plaintiff has not yet had the opportunity to finalize the total amount of out-of-pocket advances.

**Plaintiff intends to provide the full accounting and evidence of all advances at trial** or as otherwise directed by the Court.

These amounts include, but are not limited to:

- Filing fees

- Attorney retainers

- Mediation costs

- Transcript orders

- Document preparation

- Postage, service of process, and court runner expenses

- Travel and parking related to court appearances

**Declaration of accuracy and completion will be submitted at time of evidentiary hearing or trial.**

Respectfully submitted,

**LaRonda Myers, Plaintiff**
Date: 7/10/2025

## Exhibit AO

Messages from family confirming Plaintiff's care for Ralph, despite later manipulation by opposing parties

**EXHIBIT A-O**

**Messages & Statements Confirming Plaintiff's Role in Caring for Ralph Struthers**

This exhibit includes text messages, emails, or written acknowledgments from family members such as Cheryl, April, or Diane Struthers recognizing that Plaintiff, LaRonda Myers, provided ongoing medical and personal care for her father Ralph Struthers. These communications support Plaintiff's position that she acted out of loyalty and duty, not personal gain, and was the primary caregiver during Ralph's recovery after his stroke and MRSA hospitalization in 2017.

These messages contradict later claims made by Defendants suggesting Plaintiff mistreated or isolated Ralph. They also reinforce Plaintiff's good faith actions as a fiduciary and daughter, and support her defense against false elder abuse accusations filed by Julie Hatridge and Belinda Connor.

**Legal Support:**

- Supports **Count 2** (Due Process Violations)

- Supports **Count 7** (Trust Compliance & Fiduciary Duties)

- Counters elder abuse claims raised under false pretenses

July    , 2022

Hello beneficiaries of Ralph Struthers revocable trust.

We decided to be pro per to save costs on legal fees which will benefit the beneficiaries. We have a trial lawyer on standby if we go to trial. He wins 98% of the trials when he goes to court. We are hopeful that it doesn't come to this. We feel strongly that we will prevail in a trial, and they will have to pay for all our legal expenses with their own money. We have been told the trial will take up to two years or longer.

Belinda is in violation of the terms of the settlement agreement by not paying the money of $11,983.47 to Ralph's trust. This amount that was owed to Ralph's trust was decided in the settlement agreement.

We are also waiting for Belinda to transfer the deeds to the plots in Glenhaven, 13017 Lopez Canyon Rd, Sylmar, CA 91342 L.A, we are also waiting for her to notify the mortuary that both trusts are owners of the properties. We need all records having anything to do about these plots. This was also decided in the settlement agreement that both trusts are owners.

Carole and Belinda are arguing about two savings bonds that they know do not belong in the trust which is also part of the settlement agreement.

The third accounting has been sent to the judge for approval. We are enclosing the copy of the third accounting for all the beneficiaries and also the letters we have sent to Belinda and Carol's lawyer.

We also have the problem of a hidden safe at Ralph and Darlene Struthers home. We were made aware by Belinda that she had/has the combination and keys to this safe. We will be asking a judge how we proceed with this matter and what penalty do they receive for violating the settlement agreement.

We are very anxious to settle the trust, as I am sure you are as well.

Thank you,
Ronda and April

From: Ronda Myers <rondamyers@icloud.com>
Date: May 31, 2021 at 1:58:38 PM PDT
To: April Sharp April Struthers <aprilsharp1@charter.net>
Subject: Here you go

Hello beneficiaries,

We apologize for the missing two-page in the accounting packet. This was because staples didn't print the double-sided page. We enclosed the other side of the Pages That Were not Attached, to the original package. The other concern was there was an amount mark zero this week is correct because we had no losses in the trust. We hired an accountant by a very reputable and knowledgeable probate and trust accountant.

It has come to our attention that we need to clear up some false information. That was put out there to the other beneficiaries.

We had to get a new probate lawyer due to our last one retiring from doing difficult cases. We never hired four probate lawyers that is false we only hired Scott and now Mr. Tuttle

Yes. John did receive his Social Security checks and they were deposited into his checking account which was shown in the accounting.

The Santa Maria $10,254.29 cost is due to closing cost this was our half in the sale. This has to be mark out of the accounting due to we didn't get the full proceeds from the sale due to escrow cost.

We have been informed that there was assets that was not told to the Ralphs trust. This will be going into the probate trust account. As you're aware of the settlement agreement, it states that if Darlene's side does not tell us all of the assets, all those assets will be going to the other party. In this case it would be Ralphs trust and benefit the beneficiaries. We will be investigating this dishonesty thoroughly

Darlene's trust wanted to sell properties in Shingletown for less money than what they were worth. They threaten to file a lawsuit against Ralphs trust for not lower the selling price. We held strong in not lowering the price like they wanted. We sold the lot for asking price and benefited the beneficiaries. The threat of Darlene's trust always wanting to take us to court is costing all beneficiaries but however Ralph Trust has won every case they brought against us and the other thing that's costing us is the constant calls and emails to the attorneys office by a few of the beneficiaries on stuff that is not accurate.

We would like you to be aware of that Belinda is using Darlene's trust funds to pay for her legal fees on her own behalf. Which should be used for Darlene's cost of living only then when she passes to get distribute to all the beneficiaries which we are the beneficiaries of her trust too. By doing this she's costing Ralphs trust legal fees as a beneficiary to Ralph's trust. This is taking away from us as beneficiaries and Darlene's trust this is not legal.

We are not handling the Struthers 1993 trust, we are handling the Ralph Trust 2017 only.

We are doing an excellent job in making sure that the Ralph's trust beneficiaries get their total amount of inheritance that they are entitled to and squashing anything that Darlene's trust Accuse the Ralph trust of doing wrong.

Mr. Pine said that you should be able To distribute The trust Money in September When the Judge decides on. This will give us time to get the assets that were not told to us into the probate case.

Thank you for your patience in this legal proceeding which is by law we need to do.
Ron Ehlers
April Earp

Hello Beneficiaries,

We have mediation on
September 25, 2023 to discuss/determine that Darlene's trust still owes
Ralph's trust $33,464.03.
This is for splitting their estate 50-50, which was agreed upon at our
settlement negotiations and is fair.
The breakdown is as follows;
$6,607.06 for ½ of the community property sold by Belinda Connor;

$11,983.47 trust and non-trust assets, including the Yaris car;

$521.00 an adjustment for purpose of equal division of value of savings
bonds;

 $14,352.50 attorneys fees for trustees' successful "right to remains"
petition.

If we can't agree in September, we will be going to trial.
We will be bringing up issues of Belinda and Julie perjuring themselves,
stating that they  produced the true 1993 Struthers trust.
This is a phony Struthers trust of 1993 which was created by Carol, Belinda
and Julie.
We have proof of this in supporting documents and witnesses by lawyers and
doctors.
We also have proof by family members that know this is not the actual
Struthers trust of 1993 and will be asking them to testify at trial.
We will prove they do not have the power of attorney, or actual trustees,
over Struthers trust of 1993 and also now as Darlene's trust.
Both Belinda and Julie lied in court by swearing under oath that the phony
copy was a true Struthers trust of 1993.

After trial, there won't be much left in the trust to distribute because of
all the fees.
All of the times we have gone in front of a judge, we have won the case.
We are confident that we will also win this.

For the sake of legal fees, we were are going to dismiss the following IF
NOT going to trial-
the hidden safe with contents; the cash funds that disappeared; two Santa
Clarita, a property that Ralph purchased; proceeds from Ralph and Erma's
home that they owned together in which Ralph took his half of the money and
put it in an LLC name to buy the Santa Clarita property known also as Green
Valley and the Shingletown property, pictures, etc.
If we go to court, all these things will be put back on the table in front
of the judge.

We are extremely confident we will prevail in this case, however, at the
expense of the trust.
We are hoping (Darlene's trust )
Struthers trust of 1993 does the right thing and pays what is due to
Ralph Trust so this can be resolved at mediation in September.

Dear Beneficiaries,

We are contacting you to keep you informed of the current status of the trust. As you may already know, we have not been able to finalize our accounting due to the repeated objections by Belinda, Carole, and Julie. We have now paid for five (5) professional accountings because they have objected to all of them based on things like a missing $30 gardening receipt from 2018, an alleged one-day late notice of hearing, a $75 expense, etc.

We cannot end this litigation unilaterally so we must continue to defend the trust against their continued objections. To that end, they have cost the trust _____ in litigation costs thus far.

Notice of upcoming court dates is attached. If we cannot resolve the above-referenced issues before Trial and prevail, we shall seek a court order to require Belinda, Carole, and Julie to reimburse attorneys' fees to the Trust.

Regards,

Steven H. Cross
Law Office of Steven H. Cross
(925) 263-6687
steven@_____.___

Hello, beneficiaries of Ralph Struthers revocable trust.

We decided to be pro-per to save costs on legal fees to benefit the beneficiaries. We have a trial lawyer on standby if we go to trial; his percentage is 98% of the win. We are hopeful that it doesn't come to this. We will Prevail in the trial, and we'll be asking the courts for Belinda and Carol to pay all of our legal fees and expenses by them personally. However, we will be going to court on November 4, 2022, to set a trial date. The trial will take up to two years or longer. We have been waiting for Belinda and Carol to send the correct dismissal form to say "With Prejudice," which Is the only Paper we are willing to sign. If this is signed, Three will Be no trial. However, Belinda needs also to satisfy The settlement agreement, which she is in violation of, which is mentioned it down below.

Belinda violates the terms of the settlement agreement by not paying the due money of $11,983.47 to Ralph's trust. This was decided in the settlement agreement that was owed to the trust.

We are also waiting for Belinda to transfer the property deeds to the plots in Glenhaven, LA, and to notify the mortuary that we need all records that contain anything to do about These property plots.

Carol and Belinda are arguing about two savings bonds they know do not belong in the trust and are stated so in the settlement agreement.

The third accounting has been sent to the judge for approval. We are enclosing the copy of the accounting for all the beneficiaries and the communication back-and-forth to Belinda's and Carol's lawyer

We also have the problem of a hidden safe at the Struthers' house. Belinda informed us that she had/has the combination and keys. We will ask the judge to give us directions on how to Proceed With this problem.

We want to settle the trust, as I am sure you would also like this.

Thank you,
Ronda and April Sharp

To the Beneficiaries of the Ralph C. Struthers Revocable Trust

Certain beneficiaries have indicated that they did not receive the accounting packets mailed out to all the beneficiaries. While we did not receive any packets back from the post office, we are emailing the information to ensure all beneficiaries have received the information.

Certain beneficiaries have asked us to distribute Ralph's estate. We cannot do that at this time for numerous reasons. The first and main reason is that the probate of Ralph's estate has not been finalized. Ralph's trust is the beneficiary of the probate assets and those assets need to be disbursed to the estate in order to make the distribution. Second, we are working with our lawyer and Darlene's lawyer (through her agent, Belinda) on issues surrounding the cemetery plots, a burial insurance policy not disclosed and a second safe located in the Santa Maria home, which we did not become aware of until recently. We are concerned assets belonging to Ralph's estate are missing, like his gun, cash and saving bonds.

We also need to verify the location of all beneficiaries. We understand one beneficiary Christopher Way is deceased but we have not been able to obtain his death certificate yet or speak to him directly (if he is still living) and one beneficiary is in Federal prison Seamus Campbell we have not been provided his updated contact information or Primary residence Address

Once probate is closed and we have marshalled all of Ralph's assets, we will petition the court to approve the distribution of the Ralph C. Struthers Revocable Trust. Upon approval of the court, each beneficiary will receive their share.

Sincerely,

April Sharp and LaRonda Myers, Co-Trustees and Co-Executors

**ADDENDUM TO EXHIBIT AP**

**Plaintiff's Letter Regarding California State Bar Arbitration and Financial Risk Assumption**

This portion of Exhibit AP includes written communication from Plaintiff LaRonda Myers to co-trustee April Sharp and attorney Stephen Cross, explaining that:

- Plaintiff was willing to proceed with California State Bar Arbitration to recover overbilled legal fees from attorneys Kosta Damaris and Scott Shuttleworth.

- Plaintiff explicitly stated that **if no funds were recovered, she would not seek reimbursement from the trust** for arbitration expenses she personally advanced.

- This shows Plaintiff's commitment to protecting the trust and avoiding further depletion of assets, even at her own financial risk.

- Despite these assurances, April Sharp refused to sign the necessary arbitration forms, effectively **blocking any chance of recovery**.

This communication reinforces Plaintiff's integrity and careful handling of trust affairs. It also provides context to support Plaintiff's claim that April Sharp breached her fiduciary duty by obstructing legitimate recovery actions and enabling attorney overbilling.

**Supports:**

- Count 2 – Fiduciary Interference & 14th Amendment Violations

- Count 5 – Mediation Coercion / Trustee Conflict

- Count 7 – Trust Compliance & Reimbursement Barriers

# Urgent – July 11th Hearing and Attorney Representation

Dear April,

I wanted to let you know that I've been actively trying to retain an attorney to represent us for the upcoming hearing scheduled on **July 11th**, which is a very important date for the trust. Unfortunately, due to the holiday week, it's been especially difficult to get in touch with attorneys—many offices are closed or on limited schedules.

Because of that, I am planning to file a **request to continue the hearing** so we have more time to secure proper legal representation. I believe it's in

Because of that, I am planning to file a **request to continue the hearing** so we have more time to secure proper legal representation. I believe it's in both our best interests to have an attorney present for this hearing.

Please get back to me **tonight** and let me know if you want your name included on the filing as co-trustee. I'm currently looking for someone who can represent **both of us**, and I'll keep you updated on that process.

This is time-sensitive, so your quick reply would be appreciated. I plan to file with the court **tomorrow** morning.

Thank you,
LaRonda Myers
Co-Trustee



From: **Ronda Myers**
To: Aprilsharp0824
Bcc: rondamyers7@gmail.com
Today at 10:41AM

# Re: July 11

April

   This situation is concerning. We need to be represented by an attorney, and it's baffling for you to suggest that we shouldn't spend money on one, especially since I'm using my own funds to hire an attorney. I don't understand why you believe legal representation is unnecessary. You know that Kevin Lachona regularly lies to the judge, so we need a lawyer who will defend our case effectively.

Thank you,
Ronda Myers

**Ronda Myers**                    8/29/24

**To:** April Sharp April Struthers  ⟩    🏴

# The arbitration with Kosta

Go ahead and fill out your part that they requested and then send it to me, by scanning it ASAP
and I'll put it together with mine prove to the courts that we were taking care of this matter

https://search.app/
Dh7U58uJ8C6nmNAB9

Thank you,
Ronda myers

**Aprilsharp0824**    Yesterday

To: Ronda Myers ›    

# July 11

# Dear LaRonda,

## I am opposed to any continuance of the July 11th hearing. This date has been scheduled for some time, and further delays only waste more time and trust funds that we simply do not have.

Over a month ago, I clearly communicated my recommendations for legal counsel—Steven Cross or Thomas Smith—**both of whom are experienced, trustworthy, and familiar with our situation.** Instead, you chose to retain yet another attorney, only to fire them when they didn't agree with your position. **This repeated pattern is irresponsible and is damaging the trust and its beneficiaries.**

You cannot continue spending money on attorneys just to disregard their advice when it doesn't align with your views. That is not how co-trustees are expected to act, and it violates our fiduciary duty to preserve trust assets.

**EXHIBIT AQ**
**TITLE:** Family Meeting and Legal Actions Initiated by Carol Campbell – May 10, 2017
**SUPPORTS:**

- **Count 3 – Elder Financial Abuse**

- **Count 4 – Conspiracy to Commit Fraud**

**SUMMARY:**
This exhibit contains a message dated May 10, 2017, from Belinda Connor describing a family meeting involving Carol Campbell, her husband Bill, Belinda, her husband Mike, Darlene Struthers, and Ralph Struthers. Attorney Hannah Johnson was also present. The message explains that:

- Carol coordinated the meeting to review the trust and all assets (bonds, CDs, bank accounts) that were to be included.

- Attorney Hannah Johnson met with the group to discuss simplifying the trust and allegedly advised making the trust irrevocable.

- Belinda describes that during the meeting, Ralph agreed to change the trust to irrevocable — however, Plaintiff later received a phone call from Ralph stating he was **pressured** and **very upset** by what occurred.

- Ralph was still speaking clearly, able to walk with assistance, and was cognitively intact at this time.

- Minor age-related issues (such as trouble getting to the restroom in time) were normal and did not equate to cognitive incapacity.

- This message confirms that the trust changes were coordinated by Carol Campbell, involved multiple family members, and took place without the full, informed consent of Ralph or Darlene Struthers.

- The mention of accessing the family safe without clear authority supports Plaintiff's claims that original trust documents were seized or altered under improper conditions.

This evidence supports the Plaintiff's claims that family members, in conjunction with legal counsel, **exerted undue influence** and **initiated fraudulent changes** to the trust structure while **misrepresenting Ralph's condition and intent**.

c. May 10, 2017 Carole came to visit Dad/Grandpa as he was getting worse. During that visit Carole consulted with Dad/Grandpa to ensure his assets were all listed in the Trust. Grandpa was still speaking, audible and walking with the assistance of a walker during this time. However he was incontinent (pooping/peeing his pants). Given Grandpa's state of health, Carole, Bill, Darlene and Dad/Grandpa toured a care facility in Santa Maria.

d. In addition, Carole found a Trust lawyer name Hannah Johnson. Hannah consulted with Dad/Grandpa, Darlene, Carole & Bill and Mike and I. During that meeting with the lawyer, all accounts, bonds, CD, bank accounts & savings were included in the "Revocable" Trust (revocable means you can make changes to the trust at any time). Upon the legal advice from the Johnson firm, they suggested that the trust be "simplified" (from what I understand, this just meant listing kids and grandkids instead of everyone's name). While preparing to "simplify" the attorney asked whether Dad/Grandpa would like to change the Trust to "Irrevocable" (meaning no changes could be made, by anyone). Grandpa said "yes, Irrevocable!" to everyone in the room, including the attorney

**EXHIBIT AS**
**TITLE: Denial of Trust Binder to Darlene Struthers by Johnson Law Firm**
**SUPPORTS:**

- **Count 3 – Elder Financial Abuse**

- **Count 4 – Civil Conspiracy to Commit Fraud**

- **Count 6 – Systemic Due Process Violations**

**SUMMARY:**
This exhibit documents an incident that occurred in early June 2017, prior to Ralph Struthers' surgery, while he was hospitalized. A medical professional had requested to review Ralph and Darlene Struthers' trust documents to clarify authority in advance of a feeding tube procedure. At the time, Plaintiff LaRonda Myers and Darlene attempted to retrieve the trust binder from Johnson Law Firm, where it had been placed.

When LaRonda asked Darlene why the binder was with the law firm, Darlene stated that Belinda, Julie, and Carol thought she should "make some little changes." When LaRonda reminded her that Ralph was still in the hospital and they had previously stated they did not want to make any changes, Darlene said she still didn't want to make changes.

When Darlene personally entered Johnson Law Firm to retrieve the trust binder, staff refused to release the documents to her. When LaRonda then went in to ask on her behalf, staff responded that the doctor could call the office if information was needed but still would not release the trust. They left empty-handed.

This incident supports several key allegations:

- **Darlene was already showing signs of cognitive decline by this time, as acknowledged by Belinda and Plaintiff in prior statements.**

- **Despite this, Darlene was still being used as a legal instrument to authorize trust changes.**

- **Johnson Law Firm was in physical possession of the trust documents but denied access to both Darlene and Plaintiff.**

- **The refusal to return the trust binder occurred just weeks before the July 7, 2017, incapacity declaration for Ralph and trust takeovers—suggesting pre-coordinated efforts to suppress settlor access and intent.**

- **It also raises serious questions about who gave instructions to deny the binder and why.**

This event further demonstrates a pattern of elder isolation, manipulation, and obstruction of lawful fiduciary oversight.

**EXHIBIT AS**

**TITLE:** Denial of Trust Book to Darlene Struthers by Johnson Law Firm

**SUPPORTS:**

- **Count 3 – Elder Financial Abuse**

- **Count 4 – Civil Conspiracy to Commit Fraud**

- **Count 6 – Systemic Due Process Violations**

**SUMMARY:**

This exhibit contains a firsthand account from Plaintiff LaRonda Myers describing an incident in which **Darlene Struthers was denied access to her own trust documents** by staff at the Johnson Law Firm. The request to retrieve the trust binder was made at the request of **a hospital physician**, who wanted to review the trust while Ralph Struthers was hospitalized.

Upon arriving at the law office, Darlene—who was suffering from cognitive decline—**was refused access** to her trust by staff. When Plaintiff entered the office to insist on its release, she too was denied. The staff told her the doctor could call the firm directly instead of providing the trust to Darlene.

**Key facts from this incident:**

- Darlene verbally stated she **did not want to make changes** to the trust.

- She also expressed **confusion** about why the trust book was no longer in her possession.

- The firm's **unwillingness to return the trust** to Darlene supports the inference that **manipulation or unauthorized revisions** were taking place.

- Julie Hatridge, Belinda Connor, and Carol Campbell had all previously pressured Darlene to alter the trust—this incident occurred shortly after those efforts were disclosed by Darlene herself.

This event occurred shortly before or around the date of the **fraudulent July 7, 2017 incapacity letter** and aligns with testimony and exhibits showing **misuse of legal authority, obstruction of access to records, and efforts to silence the legitimate trustees**.

Darlene and ronda are driving up to get his trust and will

What?

Driving to your house

No up to where his attorney is because we left her original trust with them

Oh...

They need to show the doctor that

**RALPH C STRUTHERS**
**DARLENE L STRUTHERS**
1259 JACKIE LN
SANTA MARIA CA 93454-5928

4068

11 35/1210 CA
4190

7-7-17 Date

Pay To The Order Of  PRestige ASSisted living  $ 1,806 45/xx

one thousand eight Eight Six 45/xx Dollars

**Bank of America** 🇺🇸

ACH R/T 121000358

For_____  Darlene Struthers

⑈121000358⑈ 000121403099⑈4068

PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
FOR DEPOSIT ONLY
PRESTIGE CARE, INC
LANCASTER VENTURES, LLC
LOCATION #51
4150814270

The Struthers Family Revocable Living Trust dated 1995
For Period 07/01/17 Through 3/31/18

Assisted Living - Darlene Struthers

| | | |
|---|---|---|
| 07/12/17 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 4068 | $ 1,806.45 |
| 08/02/17 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 4082 | 2,462.25 |
| 09/05/17 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 4096 | 3,004.04 |
| 10/03/17 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 4108 | 2,075.00 |
| 11/02/17 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 4123 | 3,075.00 |
| 11/28/17 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 4132 | 3,250.00 |
| 01/04/18 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 1003 | 3,250.00 |
| 02/07/18 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 1010 | 3,250.00 |
| 03/05/18 | Assisted Living - Darlene Struthers - Prestige Assisted Living Payment Check number 1013 | 3,250.00 |

$ 25,422.74

Assisted Living - Ralph Struthers

| | | |
|---|---|---|
| 08/11/17 | Ronda's Fee for Taking Care of Ralph | $ 2,000.00 |
| 09/14/17 | Ronda's Fee for Taking Care of Ralph | 2,000.00 |
| 10/13/17 | Ronda's Fee for Taking Care of Ralph Check number 4143 | 2,000.00 |

See Accountants' Compilation Report



| | |
|---|---|
| Account Number | 4136607052 |
| Capture Date | July 07, 2017 |
| Item Number | 32470000097004 |
| Posted Date | July 07, 2017 |
| Posted Item Number | 324797004 |
| Amount | 76,295.37 |
| Record Type | Debit |

**DEBIT** — **CD/IRA WITHDRAWAL**

| PREPARED BY | APPROVED BY | DATE |
|---|---|---|
| | | 7/7/17 |

BRANCH NUMBER: 413

DESCRIPTION: Close out time account

CLIENT NAME: Arlene Lucille Strothers
Darlene Strothers

ACCOUNT NUMBER

4 1 3 6 6 0 7 0 5 2

☐ 051 - Early Distribution
☐ 064 - Beneficiary Withdrawal
☐ 076 - Normal Distribution
☐ 093 - External Transfer W/D
☐ 096 - Internal Transfer W/D
☐ 105 - Dist to Beneficiary
☐ 106 - Trust from Decedent
☐ 131 - ROTH Qualified Dist
☐ 145 - Early ROTH Dist

TOTAL AMOUNT

$ 76 2 9 5 . 37

⑆5086⑈0942⑆

970

# PACIFIC PREMIER BANK

| | |
|---|---|
| Account Number | |
| Capture Date | September 01, 2017 |
| Item Number | 77530000009363 |
| Posted Date | September 01, 2017 |
| Posted Item Number | 244040767 |
| Serial Number | |
| Amount | 75,285.38 |

RALPH STRUTHERS TRUSTEE
DARLENE L STRUTHERS TRUSTEE
STRUTHERS FAMILY 1993 REVOCABLE TRUST
RETURN MAIL 93454-5928

**DEBIT**              **C. D. WITHDRAWAL**
ACCOUNT TITLE

PREPARED BY   APPROVED BY   DATE 9/1/17   PACIFIC PREMIER BANK

CUSTOMER NAME   D. Struthers

CUSTOMER SIGNATURE

DESCRIPTION   Closing CD - moved out of area

ACCOUNT NUMBER   4108301644      TRAN CODE   94      $   75285.38

1:5086"0000:

093117   7753   77530000009363   3222857810   FEE

## New iMessage                    Cancel

To: Belinda Connor

Jul 8, 2017, 6:25 PM

Hey I just wanted to give you a heads up. Darlene resigned her duties as trustee to Julie and I so any financial questions will be addressed by the two of us



**J JOHNSON**
Attorney at Law

**HANNAH E. JOHNSON**
Attorney at Law

928 W. Grand Avenue
Grover Beach, CA 93433
(805) 489-4111
Fax (805) 489-4222

Mailing Address:
P.O. Box 3
Grover Beach, CA 93483

July 7, 2017

April Sharp
1624 Strauss Ln.
Redding, CA 96003

RE: STRUTHERS FAMILY 1993 REVOCABLE TRUST

Dear Ms. Sharp,

My office was trying to help simplify Ralph and Darlene's Trust, not to make any substantive changes.

You can be assured that our office would never have anyone sign anything if they lacked capacity. At this time, the Struthers will not be signing or making any changes to their estate planning.

Sincerely,

Hannah E. Johnson

 AT&T  9:55 PM    27%

Jan 1, 2017, 9:22 AM

I asked Darlene to take a shower again lol. She said she didn't need one. she's funny. Maybe she never does take them. She did say I can take her to get her hair done maybe. I think she's putting powder on I can smell it

Tell her to take a

 

Ronda myers



er to take a
sponge bath and take
care of all her private
er to take a

Lol. I'm thinking she just doesn't do the showers and probably does just sponge baths. She told me don't worry about it. So I'm not going to say anything else

**EXHIBIT AT**

**Title:** Belinda Connor Denies Beneficiaries Access to Darlene Struthers' Financial Accounts
**Supports:** Count Two – Systemic Due Process Violations | Count Three – Elder Financial Abuse
| Count Four – Civil Conspiracy to Commit Fraud | Count Seven – Legal Malpractice &
Fiduciary Breach

This exhibit documents a statement from **Belinda Connor**, in which she asserts that **Plaintiff has no right to access financial records** or expenses related to **Darlene Struthers**. The message reflects Belinda's position that Darlene's financial information is not subject to fiduciary review by other beneficiaries, despite her co-trustee status and obligations under California Probate Code.

This denial of access contradicts the fiduciary duties required of trustees and reflects a broader pattern of obstruction and concealment in the administration of Darlene's share of the trust.

Plaintiff has never received a full accounting of Darlene's trust activity since 2017. This prolonged denial of transparency and refusal to comply with standard disclosure obligations contributes to:

- Systemic due process violations (Count 2)
- Elder financial abuse (Count 3)
- Fraud and misrepresentation by those acting as trustees or fiduciaries (Count 4)
- Fiduciary neglect and abuse of administrative authority (Count 7)

This document serves as evidence of intentional obstruction and control over estate funds, which has materially harmed the trust and beneficiaries.

To: Belinda Connor

**The trust lawyer is advising me. You have absolutely no right to Darlene's expense account and you will not receive that. The trust will be taking the advice of their lawyers. If**

**EXHIBIT AU**

**Title:** May 31, 2017 Text Message – Ralph's Cognitive Awareness, Swallowing Difficulties, and Financial Denial by Darlene
**Supports:** Count Three – Elder Financial Abuse | Count Four – Civil Conspiracy to Commit Fraud

This exhibit includes a text message dated **May 31, 2017**, describing Ralph Struthers' condition at the time. The message notes that Ralph could **nod yes or no**, that he **smiled** and **appeared alert**, but could not speak without difficulty due to swallowing issues. It also states that **Darlene did not want to spend her money on Ralph's care**, despite his vulnerable state.

This communication is relevant because:

- It contradicts claims made later by Belinda Connor and Julie Hatridge that Ralph was incapacitated and unable to make decisions.

- It shows Ralph's awareness and ability to communicate non-verbally.

- It highlights early **neglect and financial resistance by Darlene**, suggesting she was unwilling to fund Ralph's care even when medically necessary.

This exhibit supports the pattern of **elder neglect**, **manipulation**, and **early planning to redirect trust control** away from Ralph's wishes.

You're welcome

May 31, 2017, 10:46 AM

Any news about Dad?
Can he eat yet or talk?

He shakes his head
yes and no but doesn't
try to talk. He smiles
and looks better today.
They got him out of
bed and into a
wheelchair. He's not
eating yet. I don't think
they have figured out
why he can't swallow.
Darlene doesn't want
to spend her money on



Text Message
Fri, Jul 7, 5:31 PM

Belinda Connor

**Just wanted to make sure everyone knew that the July tenth lawyer appointment was cancelled. I think most of you were aware of this. We will use the Struthers original family will and trust.**

**EXHIBIT AV**

**Title:** Proof of $39,275.31 Trust Retention by Attorney Scott Shuttleworth
**Supports:** Count Two – Systemic Due Process Violations | Count Seven – Legal Malpractice & Fiduciary Breach

This exhibit provides documentation confirming that **attorney Scott Shuttleworth** retained **$39,275.31** from the proceeds of the sale of Ralph Struthers' property in 2020. Plaintiff had fully paid Shuttleworth for his legal services and was owed reimbursement. Despite requests, Shuttleworth failed to return the escrowed funds and gave inconsistent justifications, including vague references to "stamped costs."

An independent review by a licensed accountant concluded that the retained funds were not supported by outstanding bills or authorized costs. This retention occurred after the COVID-19 shutdown, during which Shuttleworth withdrew from the case for nearly a year, causing additional delays in resolving trust matters.

This exhibit supports allegations of:

- **Due process violations** stemming from court inaction and lack of enforcement;

- **Legal malpractice and fiduciary breach** for retaining funds without proper accounting;

- **Harm to the trust and beneficiaries**, who were denied rightful distributions due to unjustified withholding of funds.

Shuttleworth Law Offices
Page No.:    4

| 12/18/2020 | MSS | Conf with Myers - re Counter Offer - Prop Agmt of Other Props - Funeral Plots | 1.00 | $350.00 | $350.00 |
| 1/11/2021 | MSS | Phone conference with Client regarding offer on lot 23, request for accounting information, and discuss burial plot - Subject Line "FW: Struthers Trust". Discuss moving forward. | 0.50 | $350.00 | $175.00 |
| 1/12/2021 | MSS | Email from client regarding her addressing issues raised in 3 emails sent to her on 1/11/2021. Subject line "RE: Your emails" - Review accounting for ending balances and draft email regarding client needing to begin accounting for that period. Note file. | 0.40 | $350.00 | $140.00 |

|  | Total Fees | $4,246.45 |
| Total New Charges |  | $4,246.45 |
| Previous Balance |  | $34,275.31 |
| Balance Due |  | $38,521.76 |

| Previous Balance of Client Trust Account |  | $142,245.71 |
| 3/24/2020  Withdrawal from Client Trust Account - Return on deposit on Struthers Tru |  | $-5,000.00 |
| 3/24/2020  Withdrawal from Client Trust Account - Sales proceeds minus balance due |  | $-97,970.40 |
| New Balance of Client Trust Account |  | $39,275.31 |

**A/R Aging**

| Current | Current | 30 Days | 60 Days | 90 Days | 120 and Over | Total |
|---|---|---|---|---|---|---|
| $4,246.45 | $0.00 | $0.00 | $0.00 | $34,275.31 | $0.00 | $38,521.76 |

Any payments received after the invoice date will be reflected on the next bill. If you have any questions regarding this bill, please do not hesitate to call our office.

Thank you for choosing Shuttleworth Law Offices

**EXHIBIT AW – Declaration of LaRonda Myers**

**Counts:** Count 2 – Systemic Due Process Violations; Count 3 – Elder Financial Abuse; Count 7 – Legal Malpractice & Fiduciary Breach

**Summary:** This exhibit includes the sworn declaration of Plaintiff LaRonda Myers, detailing her firsthand knowledge, fiduciary efforts, and personal experiences related to the trust disputes, legal obstruction, elder abuse, and systemic court misconduct. It affirms the factual basis for the claims asserted in the Complaint and reflects Plaintiff's good-faith intent to protect the interests of the Ralph C. Struthers Trust and all legitimate beneficiaries.

Included topics:

- Efforts to obtain legal records, accountings, and recover trust funds.

- Ralph Struthers' true estate intentions and coercive actions taken by others.

- Inconsistent trustee appointments and document alterations.

- Abuse and misrepresentation of Darlene Struthers' authority.

- Coercion surrounding the mediation and court suppression of filings.

- Attempts to obtain legal counsel and court barriers faced while pro se.

This declaration has been relocated here as Exhibit AW to reduce length within the body of the Complaint and to maintain structural clarity while preserving all facts and evidence. It is submitted under penalty of perjury.

**Executed on July 11, 2025**

LaRonda Myers
Plaintiff, In Pro Se

**Exhibit AW**

## XIV.  DECLARATION OF LARONDA MYERS

I, LaRonda Myers, declare as follows:

I am the Plaintiff in the above-captioned matter. I make this declaration in support of my federal complaint and the relief requested therein. I have personal knowledge of the facts stated and, if called to testify, could and would competently testify thereto.

I am a co-trustee and beneficiary of the Ralph C. Struthers Revocable Trust dated October 22, 2017, and a beneficiary of the Struthers Family Trust dated June 4, 1993. I have been actively involved in administering these trusts since 2017.

Despite numerous attempts, I have been obstructed in my efforts to fulfill my fiduciary obligations and obtain truthful information about the trusts. I submitted proper accountings, served beneficiary notices, and advanced my own funds for trust-related legal costs—all in good faith. In return, I faced procedural delays, misrepresentations, and retaliatory threats in court.

From 2017 to 2023, I developed serious concerns about the authenticity and legality of trust documents being used in court. I was repeatedly told that suspicion alone wasn't enough—I needed hard proof. In 2023, I conducted independent research at the Sacramento Law Library and discovered that it is unlawful for an attorney to notarize a declaration of incapacity before a formal medical diagnosis has been made. This directly implicated the July 7, 2017 declaration, notarized by J. Johnson (Jay Johnson), which falsely claimed that my father, Ralph Struthers, was incapacitated.

At the time J. Johnson signed and notarized that document, no doctor had evaluated my father. Medical letters were not created until July 10 and July 11—both by doctors who never saw him in person. Those letters were not even received by J. Johnson's office until July 12. Meanwhile, my father was hospitalized six hours away, recovering from a MRSA infection he had contracted at a rest home where he had been placed without consent. This makes the July 7 incapacitation declaration legally and ethically invalid, and a central piece of the manipulation.

That same July 7 document also claimed that Darlene Struthers resigned as trustee and handed over medical and financial authority to Belinda Connor and Julie Hatridge. This was not only untrue—it was completely out of character. Darlene had long-standing personal issues with Julie Hatridge, and would not have willingly given her any authority. My father also deeply distrusted Julie. Darlene was already experiencing cognitive decline at the time and would not have understood what she was signing.

Following this, Belinda and Julie used Darlene's name and diminished mental state to close joint accounts, remove my father's name, and redirect trust funds. They selectively used Darlene's signature and identity to authorize legal filings, withdraw money, and file court documents. She was like a child—going along with what they told her. Eventually, even Darlene's name was removed from accounts. Their behavior was coercive, deceptive, and amounted to elder financial abuse.

To make matters worse, I discovered that in or around October 2017, Darlene Struthers personally signed a check to J. Johnson's law firm, with the memo line reading "Struthers Trust." This was after the July 7 document claimed she had resigned her financial authority. If Darlene had truly been removed, she should not have been signing trust checks. If she was still acting in a financial role, then the July 7 resignation was fraudulent. Jay Johnson's acceptance of that check

shows clear inconsistency in how the trust structure was being enforced—and ignored—to suit the needs of Belinda and Julie.

In addition to misusing Darlene's identity, Julie Hatridge and Belinda Connor also misused my father Ralph Struthers' name by filing a lawsuit against me in Los Angeles County in November 2017, falsely accusing me of elder abuse and seeking to remove me as a beneficiary of the June 4, 1993 Trust. This lawsuit was filed under the names of Ralph and Darlene Struthers as plaintiffs—without their knowledge or consent. My father and I were both shocked when I was served with the papers. Ralph told me directly that he never approved the filing, had no idea it had been submitted in his name, and was furious when he realized what Belinda and Julie had done.

Ironically, at the time the lawsuit was filed, Ralph had already executed a new trust—the Ralph C. Struthers Trust dated October 22, 2017—to reflect his true wishes, including replacing Julie and Belinda in trustee roles and confirming my position as co-trustee. Belinda and Julie were completely unaware that the 2017 Trust had been signed just weeks earlier. Ralph had to leave the 1993 Trust in place on Darlene's side because she was too cognitively impaired to legally amend or revoke her trust, and he remained trustee over that portion out of necessity. But he created the 2017 Trust to ensure his own financial and estate wishes were protected from the kind of manipulation he had already experienced.

The court ultimately dismissed the Los Angeles elder abuse lawsuit, after determining that my father was living with me voluntarily and had never been abused. Two independent social workers visited our home and confirmed that Ralph was well cared for, mentally competent, and had made his own decision to reside with me. The judge saw through the false claims and refused to intervene. However, this lawsuit itself is further evidence that Julie and

Belinda repeatedly exploited the identities of vulnerable elders to pursue control and retaliate against me, including fabricating legal authority to act in both Ralph and Darlene's names.

From 2017 through 2023, I also learned through independent research that estate funds and trust funds must be kept separate, and that using estate money to pay for legal fees in trust disputes is unlawful. I was never told this by my attorneys or the court. In fact, in 2024, I came to realize that the court-appointed mediator, who was also a licensed attorney claiming expertise in probate law, failed to apply basic legal standards. The mediator pressured my co-trustee and me into signing an agreement that contained illegal terms, including special needs trust requirements that no longer applied—and allowed prohibited legal fees to be paid from estate funds. I now believe our attorney at the time was also unfamiliar with this area of law and failed to protect the trust and beneficiaries during mediation.

During Belinda Connor's 2024 deposition, I also learned for the first time that she had moved to Florida and was no longer residing in California. This important fact was never disclosed by her or by opposing counsel Kevin Lachona. At the same time, I learned that Darlene had been moved to a lower-level care facility resembling a halfway house without family oversight or supervision. The concealment of both Darlene's vulnerable condition and Belinda's relocation across state lines severely limited my ability to protect Darlene or legally challenge the actions taken in her name.

For several years, I did not know where Darlene was living, or whether she was even alive. Belinda actively blocked me from seeing or speaking to her and refused to provide any information. I made repeated attempts to check on Darlene's well-being, all of which were denied. It was not until Belinda's 2024 deposition that I finally learned the truth.

Several of my siblings initially recognized and supported my role as caregiver and fiduciary, acknowledging that I had stepped in to help my father when others did not. But over time, Belinda manipulated their perception, and some began to believe I was withholding their inheritance—despite the fact that I was following legal procedures and waiting for court approval. This has caused deep divisions in my family and made communication nearly impossible, particularly since Belinda and Carole Campbell remain listed as beneficiaries under the disputed trust.

In June 2025, I discovered that Kevin Lachona submitted an ex parte request to redeem three U.S. Savings Bonds from the 1993 Trust, even though trustee authority was under active court challenge. I filed a written objection, but Commissioner Jacques approved the redemption without a hearing or fiduciary verification. The bonds were worth approximately $51,988.00, and this transaction violated both federal bond redemption rules under 31 C.F.R. §§ 315.45–47 and Darlene's rights as a cognitively impaired elder.

I, LaRonda Myers, declare under penalty of perjury that I filed an ex parte motion to initiate arbitration to recover excessive attorney fees billed by Costa Damaris and Scott Shuttleworth. I requested that this matter be kept between co-trustees and sealed from the general docket because it was an administrative action—not a dispute with opposing counsel. However, my request was denied, ignored, or mishandled by court staff. I later discovered that Kevin Lachona had been allowed to object to the arbitration effort, despite having no legal authority to intervene in internal fiduciary matters. I believe this was a violation of my rights and a betrayal by the Court. I was doing what was right for the trust, trying to recover thousands of dollars lost to overbilling. Instead, my co-trustee refused to sign the arbitration agreement, and the Court's failure to shield the process allowed opposing parties to exploit internal conflict to delay

resolution and weaken my standing. This harmed the beneficiaries, the trust, and my ability to fulfill my duties in good faith.

Plaintiff's good-faith effort to arbitrate legal overbilling and recover misused trust funds was used against her by both opposing counsel and the Court. Kevin Lachona repeatedly cited the arbitration filing and internal trustee conflict as justification to remove Plaintiff as co-trustee—despite Plaintiff's consistent efforts to act in the best interests of all beneficiaries. This weaponization of fiduciary oversight by the Court and opposition reflects retaliatory and unethical legal tactics. It punished Plaintiff for protecting the trust and enabled continued financial harm to beneficiaries.

When I tried to request a continuance of a complex evidentiary hearing in July 2025, I was denied by the court clerk for not meeting the 15-day rule—even though attorneys regularly receive continuances on much shorter notice. I have previously attempted to request continuances ex parte and was publicly scolded by the judge for doing so. This unequal procedural treatment has repeatedly denied me fair access to the court system due to my status as a pro per litigant.

I have spoken directly with both attorney Don Gravalec and notary Anne Ridyard. Each of them has verbally confirmed that the version of the June 4, 1993 Struthers Family Trust currently being used in court is not the version they respectively drafted or notarized.

I have not asked either of them to provide written declarations at this stage to avoid any appearance of witness tampering or undue influence. Both individuals have expressed a willingness to testify at the evidentiary hearing or at trial, and I intend to rely on their sworn testimony in those proceedings.

This statement is made in good faith based on firsthand knowledge and communication

I have always acted in good faith, advanced my own funds when necessary, and worked to protect both Ralph and Darlene Struthers from abuse and exploitation. I submit this declaration to affirm the truth of my complaint and to respectfully request that the Court take action to correct the wrongs described herein.

I, LaRonda Myers, declare under penalty of perjury that I have consistently acted in good faith as co-trustee of the Ralph C. Struthers Trust. In contrast, my co-trustee April Sharp has repeatedly failed to fulfill basic fiduciary duties and has instead chosen to act in ways that I believe jeopardize the trust and its beneficiaries.

I am concerned that April may attempt to discredit me in court without factual documentation to support her claims. I have personally witnessed instances where she has made misleading or factually incorrect statements with great confidence, which may be perceived as credible despite the lack of supporting records.

I respectfully ask the Court to weigh my concerns seriously and to scrutinize all factual claims by both co-trustees with a consistent evidentiary standard. I am prepared to support my statements with documentation, bank records, declarations, and transcripts wherever necessary, and I invite the same level of scrutiny to be applied to my co-trustee's statements.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on July, 10, 2025

Auburn, California

LaRonda Myers, Plaintiff in Pro Se